## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Plaintiff,**<br><br>**v.**<br><br>**MOHAMMED ABDUL RASHEED**<br>**QURAISHI, MOHAMMED ABDUL**<br>**QAYIUM QURAISHI and MOHAMMED**<br>**ABDUL AZIZ QURAISHI**<br>**Defendant.** | **Civil Action No. 04-10345-NMG** |

## PETITION OF BANK OF AMERICA, N.A.
## PURSUANT TO 21 U.S.C. § 853(n)

Petitioner Bank of America, N.A. (the "Petitioner"), as successor in interest to Fleet

National Bank, states its interest in the real property located at 80 Walnut Street, Unit 401,

Canton, Massachusetts (the "Canton Property") and 38 Kevin Clancy Way, Stoughton,

Massachusetts (the "Stoughton Property"),[1] and all buildings, appurtenances and improvements

thereon (collectively, the "Defendant Properties") and hereby petitions the Court pursuant to 21

U.S.C. § 853(n) for a hearing to adjudicate its interest therein. In support hereof, the Petitioner

states the following:

1.    Following the admission by defendants Mohammed Abdul Rasheed Quraishi

("Rasheed") and Mohammed Abdul Aziz Quraishi ("Aziz") that the Defendant Properties are

subject to forfeiture under 18 U.S.C. § 982(a)(6)(A), on or about February 28, 2006, the Court

---

[1] At the time of filing hereof, the Motion of the United States to Partially Vacate Preliminary Order of Forfeiture with respect to Aziz was pending. The purpose of the motion is to remove the Stoughton Property from the Preliminary Order of Forfeiture, presumably with respect to both Aziz and Rasheed. In the event the motion is allowed, and the Notice of Lis Pendens recorded against the Stoughton property on December 8, 2004, is removed, this petition will be moot as to the Stoughton Property only.

issued with respect to Aziz a Preliminary Order of Forfeiture of the Defendant Properties. On the same date, the Court issued with respect to Rasheed an identical Preliminary Order of Forfeiture with respect to the Defendant Properties.

2.      Abdul A. Quiraishi is the record owner of the Stoughton Property by virtue of a deed from Gary Beineke, Trustee of the Great White Realty Trust, dated May 8, 2001, and recorded with the Norfolk County Registry of Deeds in Book 15107, Page 403.

3.      Abdul Aziz Quaraishi is the record owner of the Canton Property by virtue of a deed from Jeffrey J. Brothers dated September 2000 and recorded with the Norfolk County Registry of Deeds in Book 14423, Page 104.

4.      On information and belief, Aziz is also known as Abdul A. Guiraishi and Abdul Aziz Quaraishi, all of whom are one and the same person.

5.      On or about October 22, 2003, Aziz executed and delivered to Fleet National Bank ("Fleet") a Consumer Note and Security Agreement (the "Stoughton Note") in the principal amount of $241,000. A true and accurate copy of the Stoughton Note is attached hereto as Exhibit A.

6.      The Stoughton Note was secured by a Mortgage (the "Stoughton Mortgage") executed and delivered to Fleet by Aziz, which mortgage was dated October 22, 2003, and recorded with the Norfolk County Registry of Deeds on February 4, 2004, in Book 20526, Page 517. A true and accurate copy of the Stoughton Mortgage is attached hereto as Exhibit B.

7.      On or about January 15, 2003, Aziz executed and delivered to Fleet a Consumer Note and Security Agreement (the "Canton Note") in the principal amount of $90,472.00. A true and accurate copy of the Canton Note is attached hereto as Exhibit C.

8.      The Canton Note was secured by a Mortgage (the "Canton Mortgage") executed

2

and delivered to Fleet by Aziz, which mortgage was dated January 15, 2003, and recorded with the Norfolk County Registry of Deeds on March 5, 2003, in Book 18362, Page 177. A true and accurate copy of the Canton Mortgage is attached hereto as Exhibit D.

9.    The Petitioner is the current holder of the Stoughton Note and Stoughton Mortgage as successor by merger to Fleet on June 13, 2005.

10.    The Petitioner is the current holder of the Canton Note and Canton Mortgage as successor by merger to Fleet on June 13, 2005.

11.    The current amount of principal, interest and fees owed to the Petitioner under the Stoughton Note is $ 193,957.18, as of May 1, 2006, as reflected in the statement attached hereto as Exhibit E, plus interest accruing after said date and attorneys' fees and costs.

12.    The current amount of principal and interest owed to the Petitioner under the Canton Note is $ 82,974.12, as of May 1, 2006, as reflected in the statement attached hereto as Exhibit F, plus interest accruing after said date and attorneys' fees and costs.

13.    The Petitioner had no knowledge of any wrongdoing by Aziz or Rasheed and thus was without cause to believe that the Defendant Properties were subject to forfeiture.

WHEREFORE, the Petitioner requests that the Court find pursuant to 21 U.S.C. § 853(n)(6) that the Petitioner has a legal right, title, or interest in the Defendant Properties, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the Petitioner rather than the Defendants Mohammed Abdul Rasheed Quraishi and Mohammed Abdul Aziz Quraishi or was superior to any right, title, or interest of the Defendants at the time of the commission of the acts which gave rise to the forfeiture of the property.

**BANK OF AMERICA, N.A.**

By its attorney,


_____/s/ Bruce D. Berns_____
Bruce D. Berns (BBO# 551010)
Abendroth, Berns & Warner, LLC
47 Church Street, Suite 301
Wellesley, MA 02482
Date: April 18, 2006                          (718) 237-9188


## VERIFICATION

I, Steven Murray, state that I am an officer of Bank of America, N.A., that I have read the foregoing Petition of Bank of America, N.A. Pursuant to 21 U.S.C. 853(n), and that the contents thereof are true to the best of my knowledge, information and belief.

Signed under the pains of perjury this 13th day of April 2006.


_____/s/ Steven Murray_____
Steven Murray

# EXHIBIT A

**FLEET BANK**
**CONSUMER NOTE AND SECURITY AGREEMENT**
**FIXED RATE SIMPLE INTEREST**

(CT, FL, MA, ME, NH, NJ, NY, PA and RI only)

$ _241,000.00_
Principal Loan Amount    Finance Charge Accrual As Of OCTOBER 27, 2003    Account # 75620032320197
Date: _OCTOBER 27, 2003_

In this Note and Security agreement ("Note"), "I", "me", and "my" mean each and all of the persons who sign as Borrower or Co-Borrower. "You", "your", and "Bank" mean:

Name of Bank:    FLEET NATIONAL BANK, PRINCIPALLY LOCATED IN RHODE ISLAND
Address for Notices:    Consumer Loan Operations
315-317 Court Street, P.O. Box 3092
Utica, NY 13502

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE (The cost of my credit as a yearly rate.) | FINANCE CHARGE (The dollar amount the credit will cost me.) | Amount Financed (The amount of credit provided to me or on my behalf.) | Total Of Payments (The amount I will have paid after I have made all payments as scheduled.) |
|---|---|---|---|
| 4.870 % | $ 63,906.80 | $241,000.00 | $ 304,906.80 |

### PAYMENT SCHEDULE

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 120 | $2,540.89 | The 27TH day of each month beginning NOVEMBER, 2003 |

SECURITY: I am giving a security interest in the following property (list location, if real estate):

38 KEVIN CLANCY WAY NORFOLK STOUGHTON, MA
02072

FILING FEES AND TAXES. $ _n/a_

REQUIRED DEPOSIT. If this loan is secured by a pledge of a deposit account, the annual percentage rate does not take into account the pledged deposit.

CANCELLATION. For CT, FL, MA, NH, NJ, PA and RI Borrowers: if I pay off early, I will not be entitled to a refund of any prepaid finance charge. If I cancel my loan within the first _24_ months I will pay you $ 250.00.
For NY Borrowers: When I opened my Account, I paid no closing costs to Fleet Bank or to a third party. If I ask you to close my Account within 36 months after it is opened, I will not be entitled to a refund of any prepaid finance charge, and I will be required to reimburse you $ ___ representing a portion of the New York mortgage tax that you paid on my behalf when I opened my loan.

ASSUMPTION. If this Note is secured, a person who buys the collateral cannot assume the remainder of this loan obligation on its original terms.

LATE CHARGE. If I make a payment late, I will be charged the late charge permitted by law, indicated below:

☐ the lesser of 5% of the payment or $5, if the payment is at least 10 days overdue.

☐ the lesser of 5% of the payment or $10, if the payment is at least 10 days overdue.

☐ the lesser of 5% of the payment or $35, if the payment is at least 10 days overdue.

☐ the greater of 7% of the payment or $13.50, if the payment is at least 10 days overdue.

☐ 2% of any payment that is at least 15 days overdue.

☒ 3% of any payment that is at least 15 days overdue.

☐ 5% of any payment that is at least 15 days overdue.

☐ 5% of any payment or $5 whichever is less on any payment that is more than 10 days overdue.

CONTRACT TERMS. I will read the rest of this Note and any mortgage or other agreement securing it for additional information about nonpayment, default, any required payment in full before the scheduled date, prepayment refunds and penalties.

NOTICE TO CONSUMER: (1) Do not sign this Note before you read it. (2) You are entitled to a copy of this Note.

By signing below, I agree to all of the terms of this Note, including the terms on each page of this Note. I also acknowledge receiving a completed copy of this Note and of all other documents and disclosures relating to this Note. If EXECUTED UNDER SEAL as of the date set forth at the top of this Note.

This Note is secured by my home and I am not using the loan proceeds to purchase or construct that home. I am also acknowledging receipt of two copies of the Notice of Right to Cancel.

Borrower: _ABDUL IRO CORAISHI_    Co-Borrower: _____

Address: _38 KEVIN CLANCY WAY STOUGHTON, MA_    Address: _____
020723888

## ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| 1. Loan proceeds.................................................................. | $ 186.94 |
| 2. Prepaid Finance Charge..................................................... | $ 0.00 |
| 3. Net amount paid directly to me (1-2)................................... | $ 186.94 |
| 4. Amount applied to any existing debt to you........................ | $ 240,813.06 |
| 5. Amount paid to others on my behalf.................................. | $ 0.00 |

consisting of:

| | | | | |
|---|---|---|---|---|
| $ | n/a to public officials (mortgage tax) | $ | n/a to title insurance | |
| $ | n/a to public officials (mortgage filing fee) | $ | n/a to title examination | |
| $ | n/a to public officials (UCC or certificate of title filing fee) | $ | n/a to documentary preparation | |
| $ | n/a to (name) | $ | n/a to notary fee | |
| $ | n/a to (name) | | | |
| $ | n/a to documentary stamp tax | | | |
| $ | n/a to intangible tax | | | |
| $ | n/a to appraisal fee | | | |

| | |
|---|---|
| 6. Amount Financed (3+4+5)................................................ | $ 241,000.00 |
| 7. Prepaid Finance Charge................................................... | $ 0.00 |
| 8. Principal Loan Amount (6+7)............................................ | $ 241,000.00 |

## CONSENT TO SECURITY AGREEMENT

In consideration of making this loan, the undersigned hereby grants the Bank a security interest in the Collateral described in the "Security" section of the Note and agrees to be bound by all the terms of the Note applicable to the Collateral. Unless the undersigned signs this Note as a Guarantor, the undersigned is not personally obligated to pay this Note.

The undersigned acknowledges receipt of a completed copy of this Note.    Owner or Co-owner: _____

Date: _____

Owner or Co-owner: _____    Owner or Co-owner: _____

Date: _____    Date: _____

80204 Rev. 9/2003    Page 1 of 3

**Bank Copy**

**USE OF LOAN PROCEEDS.** I will use the proceeds of this Note primarily for the following purpose:

**REFINANCE**

**PROMISE TO PAY.** To repay my loan, I promise to pay you, or to your order, the Principal Loan Amount plus interest and other charges provided for in this Note and in any mortgage or other agreement securing this Note.

**PAYMENTS.** I agree to pay the Principal Loan Amount and interest by making the payments shown above in the Payment Schedule. Any amount not paid sooner is due and payable in full on ___**10/27/13**___ (the "Maturity Date"). Because interest is charged on each day's balance, late payments increase the amount I owe, while early payments decrease that amount. My final payment will be adjusted to reflect any greater or lesser amount I owe as the result of the actual dates on which I make payments.

**INTEREST.** I agree to pay interest on the daily balance of the Principal Loan Amount until paid in full, including after default and acceleration, at a simple annual interest rate of **4.870%**. Interest will be computed on the basis of a 365-day year and the actual number of days elapsed.

If checked here ☐, the interest rate stated in the preceding paragraph will be effective on the day of the sixth (6th) payment due date. Until that interest rate becomes effective, I agree to pay interest at a simple interest rate of _____ %.

**SECURITY.** My loan will be secured according to the description checked below.

☐ This Note is unsecured.

☒ This Note is secured by a mortgage on the real estate described above in the disclosure section entitled "Security."

☐ I hereby pledge to you the following deposit account, and any additions to, renewals of, or replacements for such account, to secure this Note:
Fleet Account # _____

So long as I am not in default on this Note, I or any other joint owner of the deposit account may make withdrawals from the account, provided the remaining balance of the account equals at least the principal balance of this Note plus an amount you determine, in your sole discretion, to cover accruing interest.

☐ I hereby grant you a security interest in the following personal property, and in any proceeds from, additions to, or replacements for the property to secure this Note:
Make: _____ Model: _____
Year: _____ V.I.N.: _____
Other: _____

Location of Property: _____

All of the property described in this "Security" provision is referred to in this Note as "Collateral."

**NATURE OF MY RESPONSIBILITIES.** If more than one person signs this Note, each is jointly and severally liable. This means that each person who signs this Note is fully and personally obligated to pay the full amount owed and keep all of the other promises in this Note. You can enforce this Note against any one or more of us or against any of our heirs, executors, or legal representatives. I may not assign this Note to anyone. You may assign this Note and any mortgage or other agreement securing it to another party.

**LATE PAYMENTS.** If I fail to make a payment on time, you may charge me a late payment penalty as provided in the disclosure section of this Note entitled "Late Charge."

**CANCELLATION/THIRD PARTY FEE REIMBURSEMENT.** I may prepay this Note, in whole or in part at any time. If I prepay this Note in full, I will not be entitled to a refund of any prepaid finance charges. You may charge me a cancellation fee for closing my account early. If I am a New York Borrower, I agree that I will repay you for certain third party costs that you paid at the time I opened my account. The amount that I will repay represents a portion of the New York mortgage tax and appears in the Disclosure Section of this Note entitled "Cancellation". If I prepay in part, I must continue to make regular payments until the Note is paid in full.

**RETURNED CHECK CHARGE.** If a check or other instrument with which I make a payment on this Note is returned to you unpaid for any reason, I will be charged $ **10.00**. You will waive this fee if my check is drawn on a Fleet Bank deposit account.

**MISCELLANEOUS FEES.** You may charge me additional fees for extra services, such as providing research and copies of documents.

**PROPERTY INSURANCE.** I must keep any Collateral that is not in your possession insured to your satisfaction. I may obtain insurance, including any required single interest insurance, from anyone I want that is acceptable to you. I agree to name you as the party to be paid in the event of a loss. You may settle claims and endorse my name on any settlement checks you receive. I hereby assign to you any unearned premiums or refunded premiums for this insurance.

**WARRANTIES WITH RESPECT TO COLLATERAL.** For the term of this Note I warrant that:

(a) I own and will keep the Collateral free from all liens (except as disclosed in writing);

(b) if the Collateral is a motor vehicle or a titled boat, I will be the registered owner and your security interest will be the only lien shown on any certificate of title issued now or in the future;

(c) I will not transfer all or any interest in the Collateral to anyone else or permit anyone else to obtain an interest in it;

(d) I will keep the Collateral in good repair and pay all taxes, insurance, and assessments on it;

(e) I will keep the Collateral insured with coverage, including comprehensive, fire, theft and collision, that is satisfactory to you.

(f) I will not use the Collateral or permit anyone else to use it illegally;

(g) I will notify you in writing if I move or if the Collateral suffers any loss or damage;

(h) I will not relocate the Collateral at any time without your prior written consent;

(i) I will permit you to inspect the Collateral at any time; and

(j) I will sign any documents you consider to be necessary or appropriate to protect your interest in the Collateral.

**YOUR RIGHT TO PROTECT THE COLLATERAL.** If I do not pay the taxes or insurance premiums due on the Collateral, maintain the Collateral in good condition or repair, or promptly remove any claim against it, you may (but do not have to) do so and charge me the cost. I agree to pay any such amounts immediately on demand. So long as any such amounts remain unpaid, they shall be considered to be additional principal under this Note. My obligation to pay such amounts shall be secured by your interest in the Collateral and I agree to pay interest on such amounts at the rate stated in this Note.

**DEFAULT.** To the extent permitted under applicable law, I will be in default under this Note if: (1) I fail to make any payment within 10 days of its due date (60 days, if I paid any prepaid finance charge and this Note is secured by a secondary mortgage on a 1 to 4 family dwelling located in Connecticut); (2) I break any of the promises or agreements in this Note or in any mortgage or other agreement securing it; (3) I have made any false or misleading statements in connection with this Note; (4) a petition is filed by or against me under any bankruptcy or insolvency law; (5) I die or become unable to manage my affairs; (6) the value of the Collateral is significantly impaired; (7) anything else happens that you reasonably believe affects my ability to repay this Note; (8) I fail to furnish any updated financial statement or other credit information you request from time to time; or (9) I fail to permit you, at your request, to inspect or appraise the Collateral from time to time. An event of default by or applicable to any borrower, co- borrower, or guarantor shall constitute an event of default by all of them.

**SET-OFF.** You have the right to set off if I am in default on this Note. Having a right of set-off means that, to the extent permitted by law, you may (but do not have to) apply any balance in any account I maintain with you to satisfy or reduce the balance due under this Note.

**CONSEQUENCES OF DEFAULT.** If I default, you will have the right to require immediate payment of everything I owe, subject to any notification or cure periods required under applicable law. You will also have the right to enforce any security interest or mortgage you have in my property. If you repossess any personal property that is part of the Collateral, I will notify you by registered mail promptly (but in any event by not more than 3 days after you take possession of the Collateral) if I claim that the property you repossessed included any property that was not part of the Collateral. If you agree with my claim, I will retake possession of such property within 48 hours or you will consider me to have abandoned it. You may sell Collateral consisting of personal property after repossession at public or private sale. You will give me reasonable notice of the time and place set for any public sale or of the time after which any private sale or other intended disposition of the Collateral is to be made. Unless otherwise required by law, you shall be deemed to have given me reasonable notice if you have mailed written notice to me or to any other person entitled to receive notice at least 10 days before the date on which the sale or other disposition of the Collateral is scheduled to occur. The proceeds of any sale will be applied first to your collection costs and attorneys' fees and the costs of repossessing the Collateral, storing it, preparing it for sale, and selling it. Any remaining proceeds will be applied to the unpaid balance of principal, interest, and other charges due under this Note. If the proceeds of the sale are not sufficient to pay all that I owe, I must pay the deficiency to the extent permitted by law. If the proceeds of the sale exceed the amount I owe, the surplus will be paid to me or to any other person legally entitled to it.

**COLLECTION COSTS.** To the extent permitted by law, I will pay all of your reasonable collection costs, including court costs and attorneys' fees. If the property securing the Note is in Florida, I agree to pay, in the event of default, all costs and expenses incurred in collection or foreclosure, including attorney's fees equal to ten percent (10%) of the principal sum or such larger amount as may be reasonable and just, and also all costs, expenses and attorney's fees incurred in any appellate and bankruptcy proceedings. If I am successful in asserting any partial defense, set-off, or counterclaim against you, the court may withhold payment of part or all of your attorneys' fees. New Hampshire and New York Residents Only: If I prevail in any action brought by me or the Bank with respect to this Note, I may be awarded reasonable attorneys' fees. Maine Residents Only: I will not be required to pay your attorneys' fees unless this Note is secured by real estate. Pennsylvania Residents Only: If this Note is secured by real estate, I will pay all of your reasonable attorneys' fees which are actually incurred in connection with foreclosure or other legal action and up to $50.00 for your reasonable attorney's fees which are actually incurred prior to commencement of foreclosure or other legal action.

**TAX DEDUCTIBILITY.** I should consult a tax advisor regarding the deductibility of interest and other charges paid on this Note.

**FL. DOCUMENTARY STAMPS.** State of Florida Documentary Stamps in the amount required by law are affixed to the mortgage securing this Note and cancelled pursuant to law.

**WAIVERS AND RELEASES.** You can waive or delay enforcing any right under this Note without losing that right or any other. You can waive or delay enforcing a right as to one of us without waiving it as to any other. You can release any Collateral or release one of us from responsibility under this Note without releasing others. You can file financing statements on my behalf (for which purpose I hereby appoint you my attorney in fact). If the Collateral is a motor vehicle or titled boat, you may take any action you think is necessary or appropriate to ensure that your security interest is shown on the certificate of title. Your failure to do any of these things shall not affect my obligations to pay all amounts due under this Note. You do not have to give anyone notice of any waiver, delay, or release, nor do you have to notify me of any default by any other person who is responsible for payment of this Note. This Note contains the entire agreement between you and me (except when the Collateral is real estate and a mortgage is given). It may be changed only in a writing signed by you and me.

**APPLICABLE LAW.** Notes Secured by Real Estate: If I reside in ME, NH, PA or RI, this Note is governed by federal law and the law of the state where the Bank is principally located. Rhode Island except as to matters directly related to the Bank's lien and its ability to enforce its lien on the real property securing this Note where the law of the state where the property is located will govern. If I reside in CT, FL, MA, NH or NY, this Note is governed by the law of the state where I reside except as to matters directly related to the Bank's lien and its ability to enforce its lien on the real property securing this Note where the law of the state where the property is located governs. Notes Secured by Collateral other than Real Estate: If I reside in ME, NH, PA or RI and this Note is not secured by real estate, this Note is governed by federal law and the law of the state where the Bank is principally located. Rhode Island except as to matters relating to the Bank's lien on or its ability to enforce its lien on collateral securing this Note in which case the law of the state where the collateral is located will govern. If I reside in CT, FL, MA, NH or NY and this Note is not secured by real estate, this Note is governed by the law of the state where I reside except as to matters relating to the Bank's lien on or its ability to enforce its lien on collateral securing this Note in which case the law of the state where the collateral is located will govern.

To the extent that federal law preempts state law, this Note is governed by federal law. If any provision of this Note conflicts with any existing or future law, it shall be deemed modified to the extent necessary to comply with such law, and the validity of the remaining terms of this Note shall not be affected.

**DOCUMENTATION.** I agree to execute or re-execute any document, including a revised version of this Note, that you request in order to correct any error or omission in the original Note, security instrument, or other loan documents.

**NOTICE.** Except for any notice required under applicable law to be given in another manner: (a) any notice required or permitted to be given to me under this Note shall be sent by regular mail, addressed to me at the address set forth below my signature on this Note; and (b) any notice required or permitted to be given to the Bank under this Note shall be sent by regular mail addressed to you at the Address for Notices identified at the beginning of this Note. Either party may change its address to which the other party is to send notices by giving the other party notice of the new address in accordance with this paragraph. Any notice provided for in this Note shall be in writing and shall be deemed to have been given when mailed, postage prepaid, addressed in the manner designated herein.

---

## NOTICE TO CO-SIGNER

**You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.**

**You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.**

**The bank can collect this debt from you without first trying to collect from the borrower. The lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.**

**This notice is not the contract that makes you liable for the debt.**

## NEW YORK NOTICE TO CO-SIGNER

You agree to pay the debt identified below although you may not personally receive any property, services, or money. You may be sued for payment although the person who receives the property, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorneys' fees, or other charges that may be stated in the Note or contract. You will also have to pay some or all of these costs and charges if the Note or contract, the payment of which you are guaranteeing, requires the borrower to pay such costs and charges.

This notice is not the Note, contract, or other writing that obligates you to pay the debt. Read the Guaranty, below, for the exact terms of your obligation.

Name of Debtor: _____    Name of Creditor: _____

Date of Debt: _____

Type of Debt: _____    Total of Payments: _____

By signing below, you acknowledge that you have been given a completed copy of this Notice and of the Note (which obligates the debtor) and of the Guaranty (which obligates you).

Guarantor: _____    Guarantor: _____

Date: _____    Date: _____

---

## GUARANTY

To induce the Bank to make this loan, each of the undersigned ("Guarantor") unconditionally guarantees the payment when due of all money owed under the Note and any mortgage or other agreement securing it. Each guarantor is jointly and severally liable with the Borrower. This means that the Bank does not have to try to collect from anyone or repossess any Collateral before collecting from a Guarantor. The Bank may take any action permitted under the Note or security instrument without notifying the Guarantor or releasing the Guarantor from responsibility. The Guarantor agrees to pay any expenses the Bank incurs in enforcing this Guaranty, including reasonable attorneys' fees and court costs. The Bank does not have to notify any Guarantor of the Bank's acceptance of this Guaranty. Any capitalized term not defined in this Guaranty has the same meaning as in the Note.

Each Guarantor agrees to the terms of this Guaranty and acknowledges receipt of a completed copy of the Note, this Guaranty, and of all other documents and disclosures given to the Borrower.

Guarantor: _____    Guarantor: _____
(Co-signer)    (Co-signer)

Date: _____    Date: _____

Witness: _____    Witness: _____

# EXHIBIT B

**Fleet Bank**

Mortgage
(for use in CT, FL, MA, ME, NH, PA and RI)

7566003232019 (KD)

Bk 20526 Pg517 #25135
04-21-2004 @ 03:45p

| | |
|---|---|
| **Principal Loan Amount:** U.S. $ | **Maturity Date:** |
| $241,000.00 | 10/27/13 |
| **Borrower(s)/Mortgagor(s):** | |
| ABDUL A. QURAISHI | |

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA
CERTIFY

*Willie P O'Donnell*
WILLIAM P O'DONNELL REGISTER

| | |
|---|---|
| **Property Address:** | **Mailing Address:** |
| 38 KEVIN CLANCY WAY     STOUGHTON, | 38 KEVIN CLANCY WAY STOUGHTON, MA |
| MA 02072 | 020723888 |

THIS MORTGAGE is between each Mortgagor signing below ("Borrower") and the following Mortgagee ("Lender"):

Name of Lender:        FLEET NATIONAL BANK, PRINCIPALLY LOCATED IN RHODE ISLAND

Lender's Address for Notices:    CONSUMER LOAN OPERATIONS
315-317 COURT STREET
P.O. BOX 3092
UTICA, NY 13502

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note in favor of Lender in the Principal Loan Amount set forth above, which note was dated the same date as this Mortgage and is due and payable in full by the Maturity Date set forth above (the "Note"), together with interest thereon and all renewals, extensions, and conversions of or modifications to the Note; the payment of all other sums provided in the Note or advanced to protect the security of this Mortgage; and the performance of all other covenants and agreements of Borrower contained herein and in the Note, for consideration paid, Borrower hereby mortgages, grants, and conveys to Lender, its successors and assigns forever, with statutory power of sale (if applicable) and with mortgage covenants, the property described in Exhibit A to this Mortgage (the "Property"). This Mortgage is given on the statutory condition (except in Florida). If the Property is located in New York, Lender's rights under this Mortgage are in addition to, and not exclusive of, rights conferred under Sections 254, 271, 272 and 291-F of the New York Real Property Law.

PROPERTY UNDER MORTGAGE

The Property includes: all improvements erected on the Property; all of Borrower's rights and privileges to all land, water, streets, and roads next to and on all sides of the Property (called "easements, rights, and appurtenances"); all rents from the Property; all proceeds (to the extent necessary to repay the amount Borrower owes) from the Property, including insurance proceeds and proceeds from the taking of all or any part of the Property by a government agency or anyone else authorized by law; and all property and rights described above that Borrower acquires in the future.

OWNERSHIP OF PROPERTY

Borrower promises that Borrower lawfully owns the Property and has the right to mortgage, grant and convey the Property, and that there are no claims or charges (called "encumbrances") against the Property, except for encumbrances disclosed to Lender. Borrower is fully responsible for any losses Lender suffers because someone other than the Borrower has some of the rights in the Property that the Borrower claims, and Borrower will defend Borrower's ownership of the Property against any such claim of rights.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, and Other Charges.** Borrower shall promptly pay, when due, the principal and interest indebtedness secured by the Mortgage and any other charges due under the Note. (PA customers only; including a late fee in the amount of $ _____ for each late payment.)

Recording Copy

21000 Rev. 11/2002
QURAISHI, ABDUL A

Record and Return To:
Integrated Loan Services
27 Inwood Road
Rocky Hill, CT 06067

1 of 6

2.    **Application of Payments.** Unless otherwise provided in the Note or required by applicable law, all payments received by Lender shall be applied first to interest accrued through the date of payment, then to principal due to the date of payment, then to other charges, if any, that have not been added to principal and, finally, to principal that is not yet due.

3.    **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage, including Borrower's covenants to make payments when due, and will not incur any additional indebtedness under any such mortgage, deed of trust or other security agreement. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property that may attain priority over this Mortgage, and any leasehold payments or ground rents. Borrower will notify all prior mortgagees of Lender's Mortgage.

4.    **Hazard and Flood Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require. Borrower shall maintain coverage in an amount equal to the smallest of: (a) the amount of any obligation having priority over this Mortgage, plus one hundred ten percent (110%) of the unpaid balance of principal and interest on the Note; or (b) the maximum insurable value of the Property, but in no event shall such amount be less than that amount necessary to satisfy any co-insurance requirement contained in the insurance policy; or (c) the maximum amount permitted by applicable law. If the Property is located in an area identified by federal officials as having special flood hazards and where flood insurance is available under the National Flood Insurance Act, Borrower will keep Property insured against loss by flood.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender, provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgagee clause in favor of, and in a form acceptable to, Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Mortgage.

5.    **Preservation and Maintenance of Property; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property. If this Mortgage is on a unit in a condominium or planned unit development, Borrower shall perform all of the Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents. Borrower shall promptly pay, when due, all assessments imposed by the owners' association or other governing body of any condominium project of which the Property is a part, pursuant to the provisions of the declaration, by-laws, regulations or other constituent document of the condominium project. As long as the owners' association or other governing body maintains a "master" or "blanket" policy on the condominium project that provides insurance coverage against fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then Borrower's obligations under paragraph 4 to maintain hazard insurance coverage on the Property is deemed satisfied and the provisions of paragraph 4 regarding application of hazard insurance proceeds shall be superseded by any provisions of the declaration, by-laws, regulations or other constituent document of the project or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss of the Property, whether to the unit or to common elements, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Mortgage, with the excess, if any, paid to Borrower.

If the Property is part of a condominium project, Borrower shall not, except after notice to Lender and with Lender's prior written consent, partition or subdivide the Property, or consent to: (a) the abandonment or termination of the project, except for abandonment or termination provided by law in the case of a taking by condemnation or eminent domain; (b) any material amendment of the declaration, by-laws or regulations of the owners' association or other governing body, or equivalent constituent document of the project, including, but not limited to, any amendment that would change the percentage interests of the unit owners in the project; or (c) the effectuation of any decision by the owners' association, or other governing body to terminate professional management and assume self-management of the project.

**6. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced that materially affects Lender's interest in the Property, the Lender, at Lender's option, on notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as Lender deems necessary to protect its interest. Any amounts disbursed by Lender pursuant to this paragraph 6 shall become additional principal indebtedness of Borrower secured by this Mortgage and Borrower shall pay interest on such amounts at the rate in effect from time to time under the Note. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder, and any action taken by Lender hereunder shall not be a waiver of, or preclude the exercise of, any of the rights or remedies accorded to Lender.

**7. Inspection.** Lender may make or cause to be made reasonable entries on and inspection of the Property, provided that Lender shall give Borrower notice prior to such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**8. Condemnation.** The process of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, is hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage.

**9. Borrower Not Released; Forbearance By Lender Not A Waiver.** Extension of the time for payment or modification of any of the other terms of payment of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify the terms of payment of the sums secured by the Mortgage by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**10. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to the benefit of, the respective successors and assigns of Lender and Borrower. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signed this Mortgage, but does not execute the Note: (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage; (b) is not personally obligated to pay the sums secured by this Mortgage; and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forebear or make any other accommodations with regard to the terms of this Mortgage and the Note without the Borrower's consent and without releasing the Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**11. Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice required or permitted to be given to Borrower under this Mortgage shall be sent to Borrower by regular mail addressed to Borrower at the address for notices specified in the Note; and (b) any notice required or permitted to be given to Lender under this Mortgage shall be sent to Lender by regular mail addressed to Lender at Lender's Address for Notices identified at the beginning of this Mortgage. Either party may change its address to which the other party is to send notices by giving the other party notice of the new address in accordance with this paragraph 11. Any notice provided for in this Mortgage shall be in writing and shall be deemed to have been given when mailed, postage prepaid, addressed in the manner designated herein.

Recording copy

**12.   Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. Notwithstanding the foregoing, nothing herein shall limit the applicability of federal law to this Mortgage. In the event that any provision of this Mortgage or the Note conflicts with applicable law, the conflicting provision shall be deemed to be amended to afford the Lender the maximum rights allowed by law. No conflict with applicable law shall affect other provisions of this Mortgage or the Note that can be given effect without the conflicting provision and, to this end, the provisions of this Mortgage or the Note are declared to be severable.

**13.   Borrower's Copy.** Borrower shall be furnished a conformed copy of this Mortgage at the time of execution or after recordation hereof.

**14.   Events of Default.** Borrower shall be in default under this Mortgage if: (1) Borrower fails to make any payment due under the Note or this Mortgage within 10 days of its due date (60 days, if you paid any prepaid finance charge and this is a secondary residence on a 1- to 4-family dwelling located in Connecticut); (2) Borrower breaks any of the promises or agreements in the Note or in this Mortgage; (3) Borrower has made any false or misleading statements in connection with the Note or this Mortgage; (4) a petition is filed by or against any person liable on the Note under any bankruptcy or insolvency law; (5) any person liable on the Note dies or becomes unable to manage his or her affairs; (6) the value of the Property is significantly impaired; (7) anything else happens that Lender reasonably believes affects Borrower's ability to repay the Note; (8) Borrower fails to furnish any updated financial statement or other credit information Lender requests from time to time; or (9) Borrower fails to permit Lender, at Lender's request, to inspect or appraise the Property from time to time.

**15.   Acceleration; Remedies.** On default, Lender may declare all sums secured by this Mortgage immediately due and payable, and Lender may invoke any of the remedies permitted under applicable law, including the STATUTORY POWER OF SALE, if any. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 15, including, but not limited to, reasonable attorneys' fees to the extent permitted by law. If the Property is located in Florida, Lender shall be entitled to collect all costs and expenses incurred in collection or foreclosure, including attorneys' fees equal to ten percent (10%) of the principal sum or such larger amount as may be reasonable and just, and also all costs, expenses and attorneys' fees incurred in any appellate and bankruptcy proceedings. If Lender invokes a STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage in such order as Lender may determine; and (c) the excess, if any, to the person or persons legally entitled thereto.

**16.   Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 15 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable. On acceleration under paragraph 15 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter on, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

**17.   Waiver of Homestead; Dower and Curtesy.** When applicable, and as permitted by law, Borrower hereby waives all rights of homestead in the Property and relinquishes all rights of dower and curtesy in the Property.

**18.   Release.** This Mortgage shall be deemed to be satisfied, and Lender shall give Borrower a discharge therefor, when all sums secured by this Mortgage have been paid in full, and Borrower has paid Lender for the recording cost of filing the satisfaction of mortgage.

**19.   New York Lien Law.** If the Note and Mortgage are governed by New York law, the Borrower (a) will receive all amounts advanced under the Note subject to the trust fund provisions of Section 13 of the New York Lien Law and agrees to use any money received from Lender under the Note for the purpose of paying the cost of any improvements made to the Property before using the money for any other purpose; and (b) hereby requests exemption pursuant to Section 253 (2) of the New York Tax Law, if applicable.

## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien that has priority over this Mortgage to give notice to Lender, at Lender's address set forth at the beginning of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

**NOTICE TO CONSUMER: 1. Do not sign this Mortgage before you read it.**
**2. You are entitled to a copy of this Mortgage.**

**IN WITNESS WHEREOF**, each of the undersigned has executed this Mortgage under seal this __22ND__ day of ____**OCTOBER**_____ (month), __2003__ . WE AGREE AND ACKNOWLEDGE THAT WE HAVE RECEIVED TRUE COPIES OF THIS MORTGAGE AND ANY RIDER.

_____
(Signature of Witness One)
Printed Name: _SETH TENENBAUM_

(Mortgagor/Borrower Signature)
Printed Name: **ABDUL A. QURAISHI**

_____
(Signature of Witness Two)
Printed Name:

_____
(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name:

_____
(Signature of Witness Two)
Printed Name:

_____
(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name:

_____
(Signature of Witness Two)
Printed Name:

_____
(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name:

_____
(Signature of Witness Two)
Printed Name:

_____
(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name:

_____
(Signature of Witness Two)
Printed Name:

STATE/COMMONWEALTH OF ___MASSACHUSETTS_____, COUNTY ___NORFOLK___ , SS.                                    Date: _10/22/03_

Then personally appeared before me **ABDUL A. QURAISHI**
_MADL 521830977  Ex 4/5/05_
known by me (or satisfactorily proven) to be the Mortgagor(s) named in the foregoing instrument, and acknowledged the execution of such instrument for the purposes contained therein to be his/her/their [circle one] free act and deed. **Florida Only:** The foregoing instrument was acknowledged before me this _22 nd_ day of _OCTOBER   2003_ , by _ABDUL A. QURAISHI_ , who is personally known to me or has produced _MASS DRIVERS LICENSE_ as identification.

_Agatha F. Morasco_                                    [Seal]
Notary Public
Print Name: _Agatha F. Morasca_
My Commission Expires: _August 22, 2008_
**Florida Only:** Notary Public State of Florida Commission Number: _____

21000D Rev. 11/2002

# EXHIBIT A
# TO
# MORTGAGE

**Date of Mortgage:**
10/22/03

**Borrower(s)/Mortgagor(s):**
ABDUL A. QURAISHI

**Mortgagee:**
FLEET NATIONAL BANK,
PRINCIPALLY LOCATED IN RHODE ISLAND

**Property Address:**
38 KEVIN CLANCY WAY      STOUGHTON, MA
02072

The Property is located in __STOUGHTON_____ (city/town), __NORFOLK_____ (county),

__MASSACHUSETTS_____(state) and is bounded and described as follows:

(See "Schedule A" attached hereto and made a part hereof.)

Remit all Legal Documents to: --------------- Fleet Bank
                                           Consumer Loan Operations
                                           315-317 Court Street
                                           P.O. Box 3092
                                           Utica, NY 13502

## Pennsylvania Certification of Residence

I hereby certify that the precise residence of the Mortgagee, _____ ,

is: _____

| Printed Name and Address of Person Who Prepared This Mortgage: | Name |
| Name: | |
| Address: | Title |
| City, ST, Zip: | |

Recording Copy
Page 6 of 6

21000E Rev. 11/2002

# SCHEDULE A

NAME: ABDUL A. QURAISHI

THAT CERTAIN PIECE OF PARCEL OF LAND, AND THE
BUILDINGS AND IMPROVEMENTS THEREON

IN THE TOWN OF STOUGHTON
COUNTY OF           NORFOLK
AND STATE OF    MASSACHUSETTS
AND BEING MORE PARTICULARLY DESCRIBED IN A DEED
RECORDED IN BOOK  1501  , PAGE 403

SCHEDA REV 01/2001

# EXHIBIT C

**FLEET BANK**
**CONSUMER NOTE AND SECURITY AGREEMENT**
**FIXED RATE SIMPLE INTEREST**

(CT, FL, MA, ME, NH, NJ, NY, PA and RI only)

$ __90,472.00__    Finance Charge Accrual As Of JANUARY 15, 2003    Account # 75620022316805
Principal Loan Amount                                                    Date: __JANUARY 15, 2003__

In this Note and Security agreement ("Note"), "I", "me", and "my" mean each and all of the persons who signs as Borrower or Co-Borrower. "You", "your", and "Bank" mean:

Name of Bank:    FLEET NATIONAL BANK, PRINCIPALLY LOCATED IN RHODE ISLAND
Address for Notices:    Consumer Loan Operations
315-317 Court Street, P.O. Box 3092
Utica, NY 13502

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE (The cost of my credit as a yearly rate.) | FINANCE CHARGE (The dollar amount the credit will cost me.) | Amount Financed (The amount of credit provided to me or on my behalf.) | Total Of Payments (The amount I will have paid after I have made all payments as scheduled.) |
|---|---|---|---|
| 5.990 % | $ 64,964.00 | $90,472.00 | $ 155,436.00 |

**PAYMENT SCHEDULE**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | $647.65 | The 15TH day of each month beginning FEBRUARY , 2003 |

**SECURITY.** I am giving a security interest in the following property (list location, if real estate).

80 WALNUT ST NORFOLK CANTON, MA 02021

**FILING FEES AND TAXES.** $ n/a

**REQUIRED DEPOSIT.** If this loan is secured by a pledge of a deposit account, the annual percentage rate does not take into account the pledged deposit.

**CANCELLATION.** If I pay off early, I will not be entitled to a refund of any prepaid finance charge if I pay off within __2__ year(s) of the date of this Note, I will be required to pay an early cancellation fee of $ __250.00__.

**ASSUMPTION.** If this Note is secured, a person who buys the collateral cannot assume the remainder of this loan obligation on its original terms.

**LATE CHARGE.** If I make a payment late, I will be charged the late charge permitted by law, indicated below:

☐ the lesser of 5% of the payment or $5, if the payment is at least 10 days overdue.

☐ the lesser of 5% of the payment or $10, if the payment is at least 10 days overdue.

☐ the lesser of 5% of the payment or $35, if the payment is at least 10 days overdue.

☐ the greater of 7% of the payment or $12.50, if the payment is at least 10 days overdue.

☐ 1% of any payment that is at least 15 days overdue.

☒ 3% of any payment that is at least 15 days overdue.

☐ 5% of any payment that is at least 15 days overdue.

**CONTRACT TERMS.** I will read the rest of this Note and any mortgage or other agreement securing it for additional information about nonpayment, default, any required payment in full before the scheduled date, prepayment refunds and penalties.

**NOTICE TO CONSUMER:** (1) Do not sign this Note before you read it.
(2) You are entitled to a copy of this Note.

By signing below, I agree to all of the terms of this Note, including the terms on each page of this Note. I also acknowledge receiving a completed copy of this Note and of all other documents and disclosures relating to this Note. If EXECUTED UNDER SEAL as of the date set forth at the top of this Note.

this Note is secured by my home and I am not using the loan proceeds to purchase or construct that home, I am also acknowledging receipt of two copies of the Notice of Right to Cancel.

Borrower: __ABDUL AI QURAISHI__    Co-Borrower: _____

Address: __38 KEVIN CLANCY WAY STOUGHTON, MA__    Address: _____
__020723866__

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1. Loan proceeds | $ | 0.00 |
| 2. Prepaid Finance Charge | $ | 0.00 |
| 3. Net amount paid directly to me (1-2) | $ | 0.00 |
| 4. Amount applied to my existing debt to you | $ | 0.00 |
| 5. Amount paid to others on my behalf | $ | 90,472.00 |

consisting of:

| | | | | | |
|---|---|---|---|---|---|
| a. $ | n/a | to public officials (mortgage tax) | $ | n/a | title insurance |
| b. $ | n/a | to public officials (mortgage filing fee) | $ | n/a | title examination |
| c. $ | n/a | to public officials (UCC or certificate of title filing fee) | $ | n/a | documentary preparation |
| d. $(e) | 90,472.00 | to (name) WASHINGTON MUTUAL | $ | n/a | notary fee |
| e. $ | n/a | to (name) | | | |
| f. $ | n/a | to (name) | | | |
| g. $ | n/a | documentary stamp tax | | | |
| h. $ | n/a | intangible tax | | | |
| i. $ | n/a | appraisal fee | | | |

| | | |
|---|---|---|
| 6. Amount Financed (3+4+5) | $ | 90,472.00 |
| 7. Prepaid Finance Charge | $ | 0.00 |
| 8. Principal Loan Amount (6+7) | $ | 90,472.00 |

† (e) indicates estimated

### CONSENT TO SECURITY AGREEMENT

In consideration of making this loan, the undersigned hereby grants the Bank a security interest in the Collateral described in the "Security" section of the Note and agrees to be bound by all the terms of the Note applicable to the Collateral. Unless the undersigned signs this Note as a Guarantor, the undersigned is not personally obligated to pay this Note.

The undersigned acknowledges receipt of a completed copy of this Note.    Owner or Co-owner: _____

Date: _____

Owner or Co-owner: _____    Owner or Co-owner: _____

Date: _____    Date: _____

10164 Rev. 11/2002    Page 1 of 3

Bank Copy

**USE OF LOAN PROCEEDS.** I will use the proceeds of this Note primarily for the following purpose:

**REFINANCE**

**PROMISE TO PAY.** To repay my loan, I promise to pay you, or to your order, the Principal Loan Amount plus interest and other charges provided for in this Note and in any mortgage or other agreement securing this Note.

**PAYMENTS.** I agree to pay the Principal Loan Amount and interest by making the payments shown above in the Payment Schedule. Any amount not paid sooner is due and payable in full on ___01/15/23___ (the "Maturity Date"). Because interest is charged on each day's balance, late payments increase the amount I owe, while early payments decrease that amount. My final payment will be adjusted to reflect any greater or lesser amount I owe as the result of the actual dates on which I make payments.

**INTEREST.** I agree to pay interest on the daily balance of the Principal Loan Amount until paid in full, including after default and acceleration, at a simple annual interest rate of ___5.990___%. Interest will be computed on the basis of a 365-day year and the actual number of days elapsed.

If checked here ☐, the interest rate stated in the preceding paragraph will be effective on the day of the sixth (6th) payment due date. Until that interest rate becomes effective, I agree to pay interest at a simple interest rate of _____%.

**SINGLE INTEREST INSURANCE.** If checked here ☐, I must obtain Single Interest Insurance to protect your interest in the Collateral. This insurance is for your sole protection and my interest is not covered. Coverage is available through you. If I obtain this insurance through you, the premium for the full term of the Note will be the amount disclosed in the Itemization of Amount Financed.

**SECURITY.** My loan will be secured according to the description checked below.

☐ This Note is unsecured.

☒ This Note is secured by a mortgage on the real estate described above in the disclosure section entitled "Security."

☐ I hereby pledge to you the following deposit account, and any additions to, renewals of, or replacements for such account, to secure this Note:

Fleet Account # _____

So long as I am not in default on this Note, I or any other joint owner of the deposit account may make withdrawals from the account, provided the remaining balance of the account equals at least the principal balance of this Note plus an amount you determine, in your sole discretion, to cover accruing interest.

☐ I hereby grant you a security interest in the following personal property, and in any proceeds from, additions to, or replacements for the property to secure this Note:

Make: _____ Model: _____
Year: _____ V.I.N.: _____

Other: _____

Location of Property: _____

All of the property described in this "Security" provision is referred to in this Note as "Collateral."

**NATURE OF MY RESPONSIBILITIES.** If more than one person signs this Note, each is jointly and severally liable. This means that each person who signs this Note is fully and personally obligated to pay the full amount owed and keep all of the other promises in this Note. You can enforce this Note against any one or more of us or against any of our heirs, executors, or legal representatives. I may not assign this Note to anyone. You may assign this Note and any mortgage or other agreement securing it to another party.

**LATE PAYMENTS.** If I fail to make a payment on time, you may charge me a late payment penalty as provided in the disclosure section of this Note entitled "Late Charge."

**CANCELLATION.** I may prepay this Note, in whole or in part, at any time. If I prepay this Note in full, I will not be entitled to a refund of any prepaid finance charges, and you may charge me an early cancellation fee as provided in the disclosure section of this Note entitled "Cancellation." If I prepay in part, I must continue to make regular payments until the Note is paid in full.

**RETURNED CHECK CHARGE.** If a check or other instrument with which I make a payment on this Note is returned to you unpaid for any reason, I will be charged $___10.00___. You will waive this fee if my check is drawn on a Fleet Bank deposit account.

**MISCELLANEOUS FEES.** You may charge me additional fees for extra services, such as providing research and copies of documents.

**PROPERTY INSURANCE.** I must keep any Collateral that is not in your possession insured to your satisfaction. I may obtain insurance, including any required single interest insurance, from anyone I want that is acceptable to you. I agree to name you as the party to be paid in the event of a loss. You may settle claims and endorse my name on any settlement checks you receive. I hereby assign to you any unearned premiums or refunded premiums for this insurance.

**WARRANTIES WITH RESPECT TO COLLATERAL.** For the term of this Note I warrant that:

(a) I own and will keep the Collateral free from all liens (except as disclosed in writing);

(b) if the Collateral is a motor vehicle or a titled boat, I will be the registered owner and your security interest will be the only lien shown on any certificate of title issued now or in the future;

(c) I will not transfer all or any interest in the Collateral to anyone else or permit anyone else to obtain an interest in it;

(d) I will keep the Collateral and pay all taxes, insurance, and assessments on it;

(e) I will keep the Collateral insured with coverage, including comprehensive, fire, theft and collision, that is satisfactory to you.

(f) I will not use the Collateral or permit anyone else to use it illegally;

(g) I will notify you in writing if I move or if the Collateral suffers any loss or damage;

(h) I will not relocate the Collateral at any time without your prior written consent;

(i) I will permit you to inspect the Collateral at any time; and

(j) I will sign any documents you consider to be necessary or appropriate to protect your interest in the Collateral.

**YOUR RIGHT TO PROTECT THE COLLATERAL.** If I do not pay the taxes or insurance premiums due on the Collateral, maintain the Collateral in good condition or repair, or promptly remove any claim against it, you may (but do not have to) do so and charge me the cost. I agree to pay any such amounts immediately on demand. So long as any such amounts remain unpaid, they shall be considered to be additional principal under this Note. My obligation to pay such amounts shall be secured by your interest in the Collateral and I agree to pay interest on such amounts at the rate stated in this Note.

**DEFAULT.** To the extent permitted under applicable law, I will be in default under this Note if: (1) I fail to make any payment within 10 days of its due date (60 days, if I paid any prepaid finance charge and this Note is secured by a secondary mortgage on a 1- to 4- family dwelling located in Connecticut); (2) I break any of the promises or agreements in this Note or in any mortgage or other agreement securing it; (3) I have made any false or misleading statements in connection with this Note; (4) a petition is filed by or against me under any bankruptcy or insolvency law; (5) I die or become unable to manage my affairs; (6) the value of the Collateral is significantly impaired; (7) anything else happens that you reasonably believe affects my ability to repay this Note; (8) I fail to furnish any updated financial statement or other credit information you request from time to time; or (9) I fail to permit you, at your request, to inspect or appraise the Collateral from time to time. An event of default by or applicable to any borrower, co- borrower, or guarantor shall constitute an event of default by all of them.

**SET-OFF.** You have the right to set off if I am in default on this Note. Having a right of set-off means that, to the extent permitted by law, you may (but do not have to) apply any balance in any account I maintain with you to satisfy or reduce the balance due under this Note.

**CONSEQUENCES OF DEFAULT.** If I default, you will have the right to require immediate payment of everything I owe you, subject to any notification or cure periods required under applicable law. You will also have the right to enforce any security interest or mortgage you have in my property. If you repossess any personal property that is part of the Collateral, I will notify you by registered mail promptly (but in any event by not more than 3 days after you take possession of the Collateral) if I claim that the property you repossessed included any property that was not part of the Collateral. If you agree with my claim, I will retake possession of such property within 48 hours or you will consider me to have abandoned it. You may sell Collateral consisting of personal property after repossession at a public or private sale. You will give me reasonable notice of the time and place set for any public sale or of the time after which any private sale or other intended disposition of the Collateral is to be made. Unless otherwise required by law, you shall be deemed to have given me reasonable notice if you have mailed written notice to me or to any other person entitled to receive notice at least 10 days before the date on which the sale or other disposition of the Collateral is to occur. The proceeds of any sale will be applied first to your collection costs and attorneys' fees and the costs of repossessing the Collateral, storing it, preparing it for sale, and selling it. Any remaining proceeds will be applied to the unpaid balance of principal, interest, and other charges due under this Note. If the proceeds of the sale are not sufficient to pay all that I owe, I must pay the deficiency to the extent permitted by law. If the proceeds of the sale exceed the amount I owe, the surplus will be paid to me or to any other person legally entitled to it.

**COLLECTION COSTS.** To the extent permitted by law, I will pay all of your reasonable collection costs, including court costs and attorneys' fees. If the property securing the Note is in Florida, I agree to pay, in the event of default, all costs and expenses incurred in collection or foreclosure, including attorney's fees equal to ten percent (10%) of the principal sum or such larger amount as may be reasonable and just, and also all costs, expenses and attorney's fees incurred in any appellate and bankruptcy proceedings. If I am successful in asserting any partial defense, set-off, or counterclaim against you, the court may withhold payment of part or all of your attorneys' fees. **New Hampshire and New York Residents Only:** If I prevail in any action brought by me or the Bank with respect to this Note, I may be awarded reasonable attorneys' fees. **Maine Residents Only:** I will not be required to pay your attorneys' fees unless this Note is secured by real estate. **Pennsylvania Residents Only:** If this Note is secured by real estate, I will pay all of your reasonable attorneys' fees which are actually incurred in connection with foreclosure or other legal action and up to $50.00 for your reasonable attorney's fees which are actually incurred prior to commencement of foreclosure or other legal action.

**TAX DEDUCTIBILITY.** I should consult a tax advisor regarding the deductibility of interest and other charges paid on this Note.

**FL. DOCUMENTARY STAMPS.** State of Florida Documentary Stamps in the amount required by law are affixed to the mortgage securing this Note and cancelled pursuant to law.

**WAIVERS AND RELEASES.** You can waive or delay enforcing any right under this Note without losing that right or any other. You can waive or delay enforcing a right as to one of us without waiving it as to any other. You can release any Collateral or release one of us from responsibility under this Note without releasing others. You can file financing statements on my behalf (for which purpose I hereby appoint you my attorney in fact). If the Collateral is a motor vehicle or titled boat, you may take any action you think is necessary or appropriate to ensure that your security interest is shown on the certificate of title. Your failure to do any of these things shall not affect my obligations to pay all amounts due under this Note. You do not have to give anyone notice of any waiver, delay, or release, nor do you have to notify me of any default by any other person who is responsible for payment of this Note. This Note contains the entire agreement between you and me (except when the Collateral is real estate and a mortgage is given). It may be changed only in a writing signed by you and me.

**APPLICABLE LAW.** Notes Secured by Real Estate: If I reside in ME, NY, NJ, PA, or RI, this Note is governed by federal law and the law of the state where the Bank is principally located, Rhode Island except as to matters directly related to the Bank's lien and its ability to enforce its lien on the real property securing this Note where the law of the state where the property is located will govern. If I reside in CT, MA, FL, or NH, this Note is governed by the law of the state where I reside except as to matters directly related to the Bank's lien and its ability to enforce its lien on the real property securing this Note where the law of the state where the property is located governs. Notes Secured by Collateral other than Real Estate: If I reside in ME, NY, NJ, RI or PA and this Note is not secured by real estate, this Note is governed by federal law and the law of the state where the Bank is principally located, Rhode Island except as to matters relating to the Bank's lien on or its ability to enforce its lien on collateral securing this Note in which case the law of the state where the collateral is located will govern. If I reside in CT, MA, FL, or NH and this Note is not secured by real estate, this note is governed by the law of the state where I reside except as to matters relating to the Bank's lien on or its ability to enforce its lien on collateral securing this Note in which case the law of the state where the collateral is located will govern.

To the extent that federal law preempts state law, this Note is governed by federal law. If any provision of this Note conflicts with any existing or future law, it shall be deemed modified to the extent necessary to comply with such law, and the validity of the remaining terms of this Note shall not be affected.

**DOCUMENTATION.** I agree to execute or re-execute any document, including a revised version of this Note, that you request in order to correct any error or omission in the original Note, security instrument, or other loan documents.

**NOTICE.** Except for any notice required under applicable law to be given in another manner: (a) any notice required or permitted to be given to me under this Note shall be sent by regular mail, addressed to me at the address set forth below my signature on this Note; and (b) any notice required or permitted to be given to the Bank under this Note shall be sent by regular mail addressed to you at the Address for Notices identified at the beginning of this Note. Either party may change its address to which the other party is to send notices by giving the other party notice of the new address in accordance with this paragraph. Any notice provided for in this Note shall be in writing and shall be deemed to have been given when mailed, postage prepaid, addressed in the manner designated herein.

---

### NOTICE TO CO-SIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The bank can collect this debt from you without first trying to collect from the borrower. The lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

### NEW YORK NOTICE TO CO-SIGNER

You agree to pay the debt identified below although you may not personally receive any property, services, or money. You may be sued for payment although the person who receives the property, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorneys' fees, or other charges that may be stated in the Note or contract. You will also have to pay some or all of these costs and charges if the Note or contract, the payment of which you are guaranteeing, requires the borrower to pay such costs and charges.

This notice is not the Note, contract, or other writing that obligates you to pay the debt. Read the Guaranty, below, for the exact terms of your obligation.

Name of Debtor: _____    Name of Creditor: _____

Date of Debt: _____

Type of Debt: _____    Total of Payments: _____

By signing below, you acknowledge that you have been given a completed copy of this Notice and of the Note (which obligates the debtor) and of the Guaranty (which obligates you).

Guarantor: _____    Guarantor: _____

Date: _____    Date: _____

---

### GUARANTY

To induce the Bank to make this loan, each of the undersigned ("Guarantor") unconditionally guarantees the payment when due of all money owed under the Note and any mortgage or other agreement securing it. Each guarantor is jointly and severally liable with the Borrower. This means that the Bank does not have to try to collect from anyone or repossess any Collateral before collecting from a Guarantor. The Bank may take any action permitted under the Note or security instrument without notifying the Guarantor or releasing the Guarantor from responsibility. The Guarantor agrees to pay any expenses the Bank incurs in enforcing this Guaranty, including reasonable attorneys' fees and court costs. The Bank does not have to notify any Guarantor of the Bank's acceptance of this Guaranty. Any capitalized term not defined in this Guaranty has the same meaning as in the Note.

Each Guarantor agrees to the terms of this Guaranty and acknowledges receipt of a completed copy of the Note, this Guaranty, and of all other documents and disclosures given to the Borrower.

Guarantor: _____    Guarantor: _____
(Co-signer)    (Co-signer)

Date: _____    Date: _____

Witness: _____    Witness: _____

**EXHIBIT D**

BK18362PG177   Fleet Bank

## Mortgage



Record and Return for:
Integrated Loan Services
St. Inwood Rd
Rocky Hill, CT 06867

QURAISHI, ABDUL A

in CT, FL, MA, ME, PA and RI)

**Principal Loan Amount:** U.S. $

$90,472.00

**Borrower(s)/Mortgagor(s):**

ABDUL A. QURAISHI

756200322316806

**Maturity Date:**

01/15/23

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA

CERTIFY

William P. O'Donnell

WILLIAM P. O'DONNELL, REGISTER

**Property Address:**

80 WALNUT ST    CANTON, MA 02021

**Mailing Address:**

38 KEVIN CLANCY WAY STOUGHTON, MA
020723888

THIS MORTGAGE is between each Mortgagor signing below ("Borrower") and the following Mortgagee ("Lender"):

Name of Lender:          FLEET NATIONAL BANK, PRINCIPALLY LOCATED IN RHODE ISLAND

Lender's Address for Notices:    CONSUMER LOAN OPERATIONS
315-317 COURT STREET
P.O. BOX 3092
UTICA, NY 13502

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note in favor of Lender in the Principal Loan Amount set forth above, which note was dated the same date as this Mortgage and is due and payable in full by the Maturity Date set forth above (the "Note"), together with interest thereon and all renewals, extensions, and conversions of or modifications to the Note; the payment of all other sums provided in the Note or advanced to protect the security of this Mortgage; and the performance of all other covenants and agreements of Borrower contained herein and in the Note, for consideration paid, Borrower hereby mortgages, grants, and conveys to Lender, its successors and assigns forever, with statutory power of sale (if applicable) and with mortgage covenants, the property described in Exhibit A to this Mortgage (the "Property"). This Mortgage is given on the statutory condition (except in Florida). If the Property is located in New York, Lender's rights under this Mortgage are in addition to, and not exclusive of, rights conferred under Sections 254, 271, 272 and 291-F of the New York Real Property Law.

PROPERTY UNDER MORTGAGE

The Property includes: all improvements erected on the Property; all of Borrower's rights and privileges to all land, water, streets, and roads next to and on all sides of the Property (called "easements, rights, and appurtenances"); all rents from the Property; all proceeds (to the extent necessary to repay the amount Borrower owes) from the Property, including insurance proceeds and proceeds from the taking of all or any part of the Property by a government agency or anyone else authorized by law; and all property and rights described above that Borrower acquires in the future.

OWNERSHIP OF PROPERTY

Borrower promises that Borrower lawfully owns the Property and has the right to mortgage, grant and convey the Property, and that there are no claims or charges (called "encumbrances") against the Property, except for encumbrances disclosed to Lender. Borrower is fully responsible for any losses Lender suffers because someone other than the Borrower has some of the rights in the Property that the Borrower claims, and Borrower will defend Borrower's ownership of the Property against any such claim of rights.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, and Other Charges.** Borrower shall promptly pay, when due, the principal and interest indebtedness secured by the Mortgage and any other charges due under the Note. (PA customers only; including a late fee in the amount of $_____ for each late payment).

Recording Copy

21000 Rev. 11/2002

Page 1 of 6

052651 04/127    03 MAR -5 AM 10:28

**2.   Application of Payments.** Unless otherwise provided in the Note or required by applicable law, all payments received by Lender shall be applied first to interest accrued through the date of payment, then to principal due to the date of payment, then to other charges, if any, that have not been added to principal and, finally, to principal that is not yet due.

**3.   Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage, including Borrower's covenants to make payments when due, and will not incur any additional indebtedness under any such mortgage, deed of trust or other security agreement. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property that may attain priority over this Mortgage, and any leasehold payments or ground rents. Borrower will notify all prior mortgagees of Lender's Mortgage.

**4.   Hazard and Flood Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require. Borrower shall maintain coverage in an amount equal to the smallest of: (a) the amount of any obligation having priority over this Mortgage, plus one hundred ten percent (110%) of the unpaid balance of principal and interest on the Note; or (b) the maximum insurable value of the Property, but in no event shall such amount be less than the amount necessary to satisfy any co-insurance requirement contained in the insurance policy; or (c) the maximum amount permitted by applicable law. If the Property is located in an area identified by federal officials as having special flood hazards and where flood insurance is available under the National Flood Insurance Act, Borrower will keep Property insured against loss by flood.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender, provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgagee clause in favor of, and in a form acceptable to, Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Mortgage.

**5.   Preservation and Maintenance of Property; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property. If this Mortgage is on a unit in a condominium or planned unit development, Borrower shall perform all of the Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents. Borrower shall promptly pay, when due, all assessments imposed by the owners' association or other governing body of any condominium project of which the Property is a part, pursuant to the provisions of the declaration, by-laws, regulations or other constituent document of the condominium project. As long as the owners' association or other governing body maintains a "master" or "blanket" policy on the condominium project that provides insurance coverage against fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then Borrower's obligations under paragraph 4 to maintain hazard insurance coverage on the Property is deemed satisfied and the provisions of paragraph 4 regarding application of hazard insurance proceeds shall be superseded by any provisions of the declaration, by-laws, regulations or other constituent document of the project or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss of the Property, whether to the unit or to common elements, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Mortgage, with the excess, if any, paid to Borrower.

If the Property is part of a condominium project, Borrower shall not, except after notice to Lender and with Lender's prior written consent, partition or subdivide the Property, or consent to: (a) the abandonment or termination of the project, except for abandonment or termination provided by law in the case of a taking by condemnation or eminent domain; (b) any material amendment of the declaration, by-laws or regulations of the owners' association or other governing body, or equivalent constituent document of the project, including, but not limited to, any amendment that would change the percentage interests of the unit owners in the project; or (c) the effectuation of any decision by the owners' association or other governing body to terminate professional management and assume self-management of the project.

**6.   Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced that materially affects Lender's interest in the Property, the Lender, at Lender's option, on notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as Lender deems necessary to protect its interest. Any amounts disbursed by Lender pursuant to this paragraph 6 shall become additional principal indebtedness of Borrower secured by this Mortgage and Borrower shall pay interest on such amounts at the rate in effect from time to time under the Note. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder, and any action taken by Lender hereunder shall not be a waiver of, or preclude the exercise of, any of the rights or remedies accorded to Lender.

**7.   Inspection.** Lender may make or cause to be made reasonable entries on and inspection of the Property, provided that Lender shall give Borrower notice prior to such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**8.   Condemnation.** The process of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, is hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage.

**9.   Borrower Not Released; Forbearance By Lender Not A Waiver.** Extension of the time for payment or modification of any of the other terms of payment of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify the terms of payment of the sums secured by the Mortgage by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**10.   Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to the benefit of, the respective successors and assigns of Lender and Borrower. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signed this Mortgage, but does not execute the Note: (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage; (b) is not personally obligated to pay the sums secured by this Mortgage; and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forebear or make any other accommodations with regard to the terms of this Mortgage and the Note without the Borrower's consent and without releasing the Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**11.   Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice required or permitted to be given to Borrower under this Mortgage shall be sent to Borrower by regular mail addressed to Borrower at the address for notices specified in the Note; and (b) any notice required or permitted to be given to Lender under this Mortgage shall be sent to Lender by regular mail addressed to Lender at Lender's Address for Notices identified at the beginning of this Mortgage. Either party may change its address to which the other party is to send notices by giving the other party notice of the new address in accordance with this paragraph 11. Any notice provided for in this Mortgage shall be in writing and shall be deemed to have been given when mailed, postage prepaid, addressed in the manner designated herein.

Recording copy

Page 3 of 6

**12.  Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. Notwithstanding the foregoing, nothing herein shall limit the applicability of federal law to this Mortgage. In the event that any provision of this Mortgage or the Note conflicts with applicable law, the conflicting provision shall be deemed to be amended to afford the Lender the maximum rights allowed by law. No conflict with applicable law shall affect other provisions of this Mortgage or the Note that can be given effect without the conflicting provision and, to this end, the provisions of this Mortgage or the Note are declared to be severable.

**13.  Borrower's Copy.** Borrower shall be furnished a conformed copy of this Mortgage at the time of execution or after recordation hereof.

**14.  Events of Default.** Borrower shall be in default under this Mortgage if: (1) Borrower fails to make any payment due under the Note or this Mortgage within 10 days of its due date (60 days, if you paid any prepaid finance charge and this is a secondary mortgage on a 1- to 4-family dwelling located in Connecticut); (2) Borrower breaks any of the promises or agreements in the Note or in this Mortgage; (3) Borrower has made any false or misleading statements in connection with the Note or this Mortgage; (4) a petition is filed by or against any person liable on the Note under any bankruptcy or insolvency law; (5) any person liable on the Note dies or becomes unable to manage his or her affairs; (6) the value of the Property is significantly impaired; (7) anything else happens that Lender reasonably believes affects Borrower's ability to repay the Note; (8) Borrower fails to furnish any updated financial statement or other credit information Lender requests from time to time; or (9) Borrower fails to permit Lender, at Lender's request, to inspect or appraise the Property from time to time.

**15.  Acceleration; Remedies.** On default, Lender may declare all sums secured by this Mortgage immediately due and payable, and Lender may invoke any of the remedies permitted under applicable law, including the STATUTORY POWER OF SALE, if any. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 15, including, but not limited to, reasonable attorneys' fees to the extent permitted by law. If the Property is located in Florida, Lender shall be entitled to collect all costs and expenses incurred in collection or forclosure, including attorneys' fees equal to ten percent (10%) of the principal sum or such larger amount as may be reasonable and just, and also all costs, expenses and attorneys' fees incurred in any appellate and bankruptcy proceedings. If Lender invokes a STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage in such order as Lender may determine; and (c) the excess, if any, to the person or persons legally entitled thereto.

**16.  Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 15 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable. On acceleration under paragraph 15 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter on, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

**17.  Waiver of Homestead; Dower and Curtesy.** When applicable, and as permitted by law, Borrower hereby waives all rights of homestead in the Property and relinquishes all rights of dower and curtesy in the Property.

**18.  Release.** This Mortgage shall be deemed to be satisfied, and Lender shall give Borrower a discharge therefor, when all sums secured by this Mortgage have been paid in full, and Borrower has paid Lender for the recording cost of filing the satisfaction of mortgage.

**19.  New York Lien Law.** If the Note and Mortgage are governed by New York law, the Borrower (a) will receive all amounts advanced under the Note subject to the trust fund provisions of Section 13 of the New York Lien Law and agrees to use any money received from Lender under the Note for the purpose of paying the cost of any improvements made to the Property before using the money for any other purpose; and (b) hereby requests exemption pursuant to Section 253 (2) of the New York Tax Law, if applicable.

BK 18362 PG 181

## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien that has priority over this Mortgage to give notice to Lender, at Lender's address set forth at the beginning of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

**NOTICE TO CONSUMER:** **1. Do not sign this Mortgage before you read it.**
**2. You are entitled to a copy of this Mortgage.**

**IN WITNESS WHEREOF,** each of the undersigned has executed this Mortgage under seal this __15TH__ day of _____ **JANUARY** _____ (month), _2003_ . WE AGREE AND ACKNOWLEDGE THAT WE HAVE RECEIVED TRUE COPIES OF THIS MORTGAGE AND ANY RIDER.

_____
(Signature of Witness One)
Printed Name: _SEAN TENENBAUM_

_____
(Mortgagor/Borrower Signature)
Printed Name: ABDUL A. QURAISHI

_____
(Signature of Witness Two)
Printed Name:

_____
(Signature of Witness One)
Printed Name:

_____
(Mortgagor/Borrower Signature)
Printed Name:

_____
(Signature of Witness Two)
Printed Name:

_____
(Signature of Witness One)
Printed Name:

_____
(Mortgagor/Borrower Signature)
Printed Name:

_____
(Signature of Witness Two)
Printed Name:

_____
(Signature of Witness One)
Printed Name:

_____
(Mortgagor/Borrower Signature)
Printed Name:

_____
(Signature of Witness Two)
Printed Name:

_____
(Signature of Witness One)
Printed Name:

_____
(Mortgagor/Borrower Signature)
Printed Name:

_____
(Signature of Witness Two)
Printed Name:

STATE/COMMONWEALTH OF __ _MASSACHUSETTS_ _____ , COUNTY
__ _NORFOLK_ ____ , SS.                                     Date: _01/15/03_

Then personally appeared before me ABDUL A. QURAISHI

known by me (or satisfactorily proven) to be the Mortgagor(s) named in the foregoing instrument, and acknowledged the execution of such instrument for the purposes contained therein to be his/her/their [circle one] free act and deed. **Florida Only:** The foregoing instrument was acknowledged before me this _15TH_ day of _JANUARY_ , _2003_ , by _ABDUL A. QURAISHI_ , who is personally known to me or has produced ___ _MDL_ ____ as identification.

_____ (Seal)
Notary Public
Print Name: _THOMAS A. CAREY_
My Commission Expires: _10/24/03_
**Florida Only:** Notary Public State of Florida Commission
Number: _____

21000D Rev. 11/2002

EXHIBIT A
TO
MORTGAGE

**Date of Mortgage:**
01/15/03

**Borrower(s)/Mortgagor(s):**
ABDUL A. QURAISHI

**Mortgagee:**
FLEET NATIONAL BANK,
PRINCIPALLY LOCATED IN RHODE ISLAND

**Property Address:**
80 WALNUT ST          CANTON, MA 02021

The Property is located in __CANTON_____(city/town), __NORFOLK_____(county),

__MASSACHUSETTS_____(state) and is bounded and described as follows:


(See "Schedule A" attached hereto and made a part hereof.)



Remit all Legal Documents to: -------------- Fleet Bank
Consumer Loan Operations
315-317 Court Street
P.O. Box 3092
Utica, NY 13502



Pennsylvania Certification of Residence

I hereby certify that the precise residence of the Mortgagee, _____,

is: _____


Printed Name and Address of Person Who Prepared This Mortgage

Name:

Address:

City, ST, Zip:

Name

Title



Recording Copy
Page 6 of 6

21000E Rev. 12/2002

BK18362PG183

# SCHEDULE A

NAME: ABDUL A. QURAISHI _____

THAT CERTAIN PIECE OF PARCEL OF LAND, AND THE
BUILDINGS AND IMPROVEMENTS THEREON, KNOWN AS

80 Walnut St.

IN THE TOWN OF CANTON _____
COUNTY OF      NORFOLK _____
AND STATE OF   MASSACHUSETTS _____
AND BEING MORE PARTICULARLY DESCRIBED IN A DEED
RECORDED IN BOOK  14423 ___, PAGE  104 _____

# EXHIBIT E

```
PAY4 3911868784 AS OF 05/01/06   PAYOFF CALCULATION TOTALS  04/12/06  12:01:30
NAME AA QURAISHI CONTACT NAME ABDUL A QURAISHI
------------------------------------------------------------------------------
PRINCIPAL BALANCE        192,979.99        ---------- RATE CHANGES ----------
INTEREST 05/01/06            901.19     INT FROM     RATE        AMOUNT
PRO RATA MIP/PMI                .00     03/27/06   4.87000       901.19
ESCROW ADVANCE                  .00     05/02/06
ESCROW BALANCE                  .00
SUSPENSE BALANCE                .00
HUD BALANCE                     .00
REPLACEMENT RESERVE             .00
RESTRICTED ESCROW               .00
TOTAL-FEES                    76.00
ACCUM LATE CHARGES              .00
ACCUM NSF CHARGES               .00
OTHER FEES DUE                  .00
PENALTY INTEREST                .00
FLAT/OTHER PENALTY FEE          .00     TOTAL INTEREST            901.19
CR LIFE/ORIG FEE RBATE          .00     TOTAL TO PAYOFF       193,957.18
RECOVERABLE BALANCE             .00   NUMBER OF COPIES: 1   PRESS PF1 TO PRINT
------------------------------------------------------------------------------

------------------------------------------------------------------------------
```

----- 1ST MORT PERDIEM INTEREST - ASSESS WAIVE ------- ADDITIONAL FEES -------

| FROM | RATE | AMOUNT | | | | | |
|------|------|--------|---|---|---|------|------|
| 05/01/06 | 04.87000 | 25.75 | N | N 1 | 76.00 | RECORDING FEES - PYO |
| | | | Y | N 2 | .00 | EXPEDITED DELVRY FAX |
| | | | N | N 3 | .00 | |
| | | | Y | N 4 | .00 | |
| | | | N | Y 5 | .00 | STATEMENT FEE |
| | | | N | N 6 | .00 | |
| | | | | N | .00 | ACCUM LATE CHARGES |
| | | | | N | .00 | ACCUM NSF CHARGES |
| | | | | N | .00 | OTHER FEES DUE |

-------------------------------- MEMO ITEMS -------------------------------
PAYMENT L/C   76.23               TYP 13 ST 20 CNTY 021    INV X71 001
-------------------------------------------------------- PF4:  FEE COMMENTS
PF9:  1ST LN LEVEL PREPAY PEN & DESC

-----------------------------------------------------------------------------

# EXHIBIT F

NAME AA QURAISHI CONTACT NAME ABDUL A QURAISHI

```
-----------------------------------------------------------------------
PRINCIPAL BALANCE          82,263.61      ---------- RATE CHANGES ----------
INTEREST 05/01/06             634.51      INT FROM     RATE        AMOUNT
PRO RATA MIP/PMI                 .00      03/15/06   5.99000       634.51
ESCROW ADVANCE                   .00      05/02/06
ESCROW BALANCE                   .00
SUSPENSE BALANCE                 .00
HUD BALANCE                      .00
REPLACEMENT RESERVE              .00
RESTRICTED ESCROW                .00
TOTAL-FEES                     76.00
ACCUM LATE CHARGES               .00
ACCUM NSF CHARGES                .00
OTHER FEES DUE                   .00
PENALTY INTEREST                 .00
FLAT/OTHER PENALTY FEE           .00         TOTAL INTEREST            634.51
CR LIFE/ORIG FEE RBATE           .00         TOTAL TO PAYOFF        82,974.12
RECOVERABLE BALANCE              .00   NUMBER OF COPIES: 1   PRESS PF1 TO PRINT
-----------------------------------------------------------------------
```

Case 1:04-cr-10345-NMG    Document 84-2    Filed 04/18/2006    Page 30 of 30

```
----- 1ST MORT PERDIEM INTEREST - ASSESS WAIVE ------- ADDITIONAL FEES -------
   FROM        RATE       AMOUNT      N    N 1      76.00   RECORDING FEES - PYO
 05/01/06    05.99000      13.50      Y    N 2       .00    EXPEDITED DELVRY FAX
                                      N    N 3       .00
                                      Y    N 4       .00
                                      N    Y 5       .00    STATEMENT FEE
                                      N    N 6       .00


                                           N        .00    ACCUM LATE CHARGES
                                           N        .00    ACCUM NSF CHARGES
                                           N        .00    OTHER FEES DUE
------------------------------- MEMO ITEMS ---------------------------------
PAYMENT L/C     19.43              TYP 13 ST 20 CNTY 021      INV X71 001
-------------------------------------------------------- PF4:  FEE COMMENTS
```