UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| MOHAMMED ABDUL RASHEED | ) |
| QURAISHI, MOHAMMED ABDUL | )    Cr. No.  04-10345-MLW |
| QAYIUM QURAISHI, MOHAMMED | ) |
| ABDUL AZIZ QURAISHI, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DECLARATION OF SUZANNE HASTINGS**

I, Suzanne Hastings, hereby declare and state the following:

1.   I am the Senior Deputy Assistant Director of the Correctional Programs Division for the Federal Bureau of Prisons (BOP).  I have held this position since January 2007.  I have been employed with the BOP since 1988.

2. 18 U.S.C. § 3622 allows the BOP to, on a discretionary basis, temporarily release inmates from their custody.  18 U.S.C. § 3622 (a) specifies that an inmate may be released to:

visit a designated place for a period not to exceed thirty days, and then return to the same or another facility, for the purpose of--

(1) visiting a relative who is dying;

(2) attending a funeral of a relative;

(3) obtaining medical treatment not otherwise

1

available;

(4) contacting a prospective employer;

(5) establishing or reestablishing family or community ties; or

(6) engaging in any other significant activity consistent with the public interest.

3.   Inmates Mohammed Abdul Aziz Quraishi, Federal Register Number 80471-038, and Mohammed Abdul Qayium Quraishi, Federal Register Number 80470-038, are currently serving 10-month sentences for violations of 8 U.S.C. § 1324(a)1)(A)(iv), Encouraging and Inducing Aliens to Come to, Enter and Reside in the United States, and 18 U.S.C. § 1512(b)(3), Witness Tampering.  <u>See</u>, Attachment A, BOP Data.  Both inmates currently have projected release dates of March 10, 2008, via full term releases.  <u>Id</u>. They are serving their current sentences of imprisonment at the Big Spring Correctional Center (BSCC), a contract facility operated by Cornell Corrections, Inc.  <u>Id</u>.  BSCC maintains physical custody of these inmates pursuant to a contract agreement between the BOP and Cornell Corrections, Inc.  Under the agreement, BSCC and Cornell agree to operate BSCC under all applicable BOP policies and procedures.  Inmates confined at BSCC must also abide by and follow all applicable BOP policies and procedures.

4.   Program Statement 5538.04, Escorted Trips, contains the BOP policies and procedures governing the request and execution of escorted trips by federal inmates.[1]  This Program Statement specifies that federal inmates may request emergency non-medical escorted trips for the purpose of allowing an inmate to make a bedside visit to a member of an inmate's immediate family.  See 28 C.F.R. § 570.42.  Emergency non-medical escorted trips of this nature must be requested by the inmate through his unit staff at the institution which he is currently designated.  The Warden of the institution at which the inmate is located may approve an inmate for an emergency non-medical escorted trip, except as provided in 28 C.F.R. § 570.43.  28 C.F.R. § 570.43 specifies that only a Bureau of Prisons Regional Director may approve a non-medical escorted trip (either emergency or non-emergency) for an inmate determined to require a high degree of control and supervision.  Program Statement 5538.04 defines the phrase "a high degree of control and supervision" as being applicable to inmates classified as "MAXIMUM" custody or "IN" custody.[2]

---

[1] All Bureau of Prisons Program Statements may be accessed via the Internet at www.bop.gov.  Program Statement 5538.04 expands upon the codified federal regulations concerning the escorted trips of federal inmates located at 28 C.F.R. §§ 570.40, et. seq.  A copy of this Program Statement may be found at Attachment B to this declaration.

[2] Program Statement 5100.08, Inmate Security and Designation and Custody Classification, defines "IN" custody as:

The second highest custody level assigned to an inmate which

3

Program Statement 5538.04 further specifies that the Regional

Director, when making a decision as to the approval of an

emergency or non-emergency escorted trip of a "MAXIMUM" or "IN"

custody inmate, will consider a favorable Warden's recommendation

and his determination that the escorted trip is warranted in

addition to all relevant information (e.g., inmate's sentence,

time in custody, adjustment, as well as the nature of the

request).

5.  Inmate's Mohammed Abdul Qayium Quraishi and Mohammed Abdul

Aziz Quraishi were assigned IN custody classification by the BOP

on April 20, 2007. See, Attachment A.

6.  To my knowledge the first time that the Quraishis formally

requested an emergency non-medical escorted trip to see their

mother, who they state is in failing health was on January 3,

2008. See Attachment D.  The Quraishis made their requests via

their caseworker at BSCC.  The Quraishis have made their requests

pursuant to BOP Program Statement 5280.08, Furloughs.  However,

28 C.F.R. § 570.34 specifies that a Warden may grant a furlough

_____

        requires the second highest level of security and staff
        supervision.  An inmate who has IN custody is assigned to
        regular quarters and is eligible for all regular work
        assignments and activities under a normal level of
        supervision.  Inmates with IN custody are not eligible for
        work details or programs outside the institution's secure
        perimeter.

See, Attachment C.

only to an inmate with "COMMUNITY" custody.[3]  Due to the

Quaraishi's classification as "IN" custody, their request was

reviewed under Program Statement 5538.04.

7.  Pursuant to 28 C.F.R. § 570.42 (b)(1), the government assumes

the salary expenses for the first eight hours of each day.  All

other expenses, including transportation costs, are assumed by

the inmate, the inmate's family, or other appropriate source

approved by the Warden.  Program Statement 5538.04 also specifies

that the necessary funds for the trip must be deposited to the

inmate's trust fund account prior to the trip.

8.  On December 28, 2007, the Honorable Nathaniel M. Gorton,

United States District Court Judge, issued an Order in U.S. v.

Mohammed Abdul Rasheed Quraishi, et al., Case No. 04-10345-NMG,

in response to the Quraishi's Emergency Motion for Early Release

or in the Alternative for Temporary Release. See, Docket at Doc.

143.  In this Order Judge Gorton ordered the following:

_____

    [3] Program Statement 5100.08, Inmate Security and Designation
and Custody Classification, defines "COMMUNITY" custody as:

    The lowest custody level assigned to an inmate which affords
    the lowest level of security and staff supervision.  An
    inmate who has "COMMUNITY" custody may be eligible for the
    least secure housing, including any which is outside the
    institution's perimeter, may work on outside details with
    minimal supervision, and may participate in community-based
    program activities if other eligibility requirements are
    satisfied.

Emergency motion for early release is denied; emergency motion for temporary release is allowed for a period not to exceed four (4) days and provided that, upon temporary release from Bureau of Prisons custody, defendants shall, at their own expense, proceed forthwith to Massachusetts and return to the designated Bureau of Prisons facility within the allotted time of release.

9. On January 3, 2008, the Honorable Chief Judge Mark L. Wolf held a hearing concerning the Quraishi's Emergency Motion to Compel Enforcement of This Court's Order and for Contempt. Judge Wolf ordered that the Director of the Bureau of Prisons file an affidavit stating whether or not he will, as an exercise of his discretion under 18 U.S.C. § 3622 authorize the immediate temporary release of the defendants in this case on the conditions established by Judge Nathaniel Gorton in his December 28, 2007 Order, or on substantially similar conditions. Judge Wolf also ordered that if the Director of the BOP is not willing to release the inmates he should file an affidavit and memorandum seeking to show cause why he should not be held in civil contempt for failing to obey the December 28, 2007 Order of Judge Gorton.

10. The Regional Director for the South Central Region of the BOP has considered the request of the Quraishi's and has approved their request as long as it is in conformity with all applicable BOP Program Statements, policies, and relevant laws. As long as

the Quraishi's agree to provide funds to pay for an escorted trip, pursuant to Program Statement 5538.04, the Bureau of Prisons authorizes an escorted trip for inmates Mohammed Abdul Qayium Quraishi and Mohammed Abdul Aziz Quraishi from BSCC to Massachusetts to visit the bedside of their mother in conformity with Judge Gorton's December 28, 2007 Order.  The total estimated cost for this trip for both inmates is $10,500.  This estimated total is subject to changes in the price of airline tickets.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 4th day of January 2008 in Washington, D.C.

_____
Suzanne Hastings
Senior Deputy Assistant Director
Correctional Programs Division
Federal Bureau of Prisons

7

**U.S. Department of Justice**
**Federal Bureau of Prisons**

# Program Statement

|  |  |
|---|---|
| **OPI:** | CPD/CPB |
| **NUMBER:** | P5100.08 |
| **DATE:** | 9/12/2006 |
| **SUBJECT:** | Inmate Security Designation and Custody Classification |

1.  **PURPOSE AND SCOPE.**  This Program Statement provides policy and procedure regarding the Bureau of Prisons inmate classification system.  The classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society.

The Bureau's classification, designation and redesignation procedures are consistent with the statutory authority contained in 18 U.S.C. § 3621(b).  All classification, designation and redesignation decisions are made without favoritism given to an inmate's social or economic status.

2.  **PROGRAM OBJECTIVES.**  The expected results of this Program Statement are:

   a.  Each inmate will be placed in a facility commensurate with their security and program needs through an objective and consistent system of classification which also allows staff to exercise their professional judgement; and,

   b.  Staff will systematically and objectively review an inmate's classification making the environment in which they are housed safer for both inmates and staff while protecting the public from undue risk.

3.  **SUMMARY OF CHANGES.**  This revision incorporates Executive Staff decisions 03-04-05 and 99-03-03, as well as other procedural changes such as the movement of most designation/redesignation functions (04-08-17) to the Designation and Sentence Computation Center (DSCC), Grand Prairie, Texas.

   a.  The scoring item "Type of Prior Commitment" has been replaced with "Criminal History Score."  (Chapter 4, Page 8 and Chapter 6, Page 5)

P5100.08
9/12/2006
Page 2

b.  A new scoring item for inmate "Age" has been added. (Chapter 4, Page 12 and Chapter 6, Page 8)

c.  A new scoring item for "Education Level" has been added. (Chapter 4, Page 12 and Chapter 6, Page 8)

d.  The "Drug/Alcohol Abuse" scoring item has been added to the BP-337 and has moved from Section C (Custody Scoring) of the BP-338 to Section B (Base Scoring) of the BP-338. (Chapter 4, Page 13 and Chapter 6, Page 9)

e.  The "Mental/Psychological Stability" scoring item has been discontinued.

f.  The "Responsibility Demonstrated" scoring item has been replaced with "Living Skills" and "Program Participation." (Chapter 6, Page 10)

g.  Instructions for scoring the "Family/Community Ties" scoring item have been clarified.  (Chapter 6, Page 13)

h.  The floor for the Violent Behavior PSF has been reduced from High to Low Security. (Chapter 5, Page 9)

i.  New cutpoints and a new Custody Variance Table have been developed.  (Chapter 1, Page 2 and Chapter 6, Page 15)

j.  An expiration date for the Greater Security Management Variable has been added.  (Chapter 5, Page 5)

k.  The criteria for the Deportable Alien PSF has been clarified.   (Chapter 5, Page 9)

l.  Text has been added that formalizes the Bureau's past and current practice of continually assessing the effectiveness of its inmate classification process. (Program Statement Section 6)

m.  Text has been added that encourages DSCC staff to consider using a Management Variable when designating inmates where age is largely the contributing factor in the inmate's placement. (Chapter 5, Page 5)

n.  Text has been revised that requires the entry of supporting information in the BP-337 "REMARKS SECTION" when there is Pre-Sentence Investigation Report information relevant to that scoring item. (Chapter 4, Page 13)

o. The DSCC Administrator will ensure that designation/ redesignation decisions are applied consistently on a bureau-wide basis. (Chapter 4, Page 14)

p. DSCC staff must contact the sentencing court if a Statement of Reasons is not received at the time a request for designation is made. (Chapter 3, Page 1)

q. Inmates who currently qualify for unescorted transfer may be transported by family members via POV from one camp to another camp. (Chapter 7, Page 8)

r. The appendices on Sentence Procedures, Institutions Missions and Parolable Institutions have been removed from the manual, but will be available on the CPB website.

s. The Offense Severity Scale, Definition of Roles involved in Drug Offenses and the Special Instructions appendices have been combined into one appendix.

t. All transfer requests under codes 309 - Disciplinary and 323 - Close Supervision will be directed to the Designation and Sentence Computation Center. "W REDES C" has been eliminated and "W REDES D" has been changed to "W REDES R" to reflect routine redesignations. (Chapter 7, Page 2)

u. The female versions of the BP-337 and BP-338 have been discontinued although certain policies and procedures specific to female offenders are maintained i.e. security levels, cutpoints, Public Safety Factors and Management Variables.

v. The "Release on Own Recognizance" scoring item has been discontinued. (Chapter 4, Page 5)

w. The description of Management Variable "U" has been revised to include all long-term detainees. It no longer applies solely to Mariel Cuban Detainees. (Chapter 5, Page 4)

x. The medical transfer code descriptions were revised to include "Level of Care" language. (Chapter 7, Pages 21-22)

y. The criteria for the Prison Disturbance PSF has been clarified. (Chapter 5, Page 10)

4. **DIRECTIVES AFFECTED**

   a. **Directive Rescinded**

      P5100.07  Security Designation and Custody Classification Manual (9/3/99)

   b. **Directives Referenced**

      P5070.10  Responses to Judicial Recommendations and U.S. Attorney Reports (6/30/97)
      P5070.11  Study and Observation Report (12/31/97)
      P5110.15  Notifications of Release to State and Local Law Enforcement Officials (8/30/00)
      P5111.03  Mariel Cuban Detainees (10/25/99)
      P5140.35  Transfer of a Prisoner to State Custody Prior to Release from the Federal Sentence (9/12/01)
      P5141.02  Sex Offender Notification and Registration (12/14/98)
      P5180.04  Central Inmate Monitoring System (8/16/96)
      P5215.05  Youth Corrections Act (YCA), Inmates and Programs (3/17/99)
      P5216.05  Juvenile Delinquents (9/1/99)
      P5264.07  Telephone Regulations for Inmates (1/31/02)
      P5270.07  Inmate Discipline and Special Housing Units (12/29/87)
      P5280.08  Furloughs (2/4/98)
      P5553.07  Escapes/Deaths Notifications (2/10/06)
      P5800.13  Inmate Systems Management Manual (6/28/02)
      P7310.04  Community Corrections Center (CCC) Utilization and Transfer Procedure (12/16/98)

5. **STANDARDS REFERENCED**

   a.  American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies:  2-CO-4B-01

   b.  American Correctional Association 4th Edition Standards for Adult Correctional Institutions: 4-4132, 4-4296, 4-4300, 4-4306, and 4-4444

   c.  American Correctional Association 4th Edition Performance-Based Standards for Adult Local Detention Facilities: 4-ALDF-1A-10, 4-ALDF-2A-31, and 4-ALDF-2A-37

P5100.08
9/12/2006
Page 5

6.  **ACTION.**  All inmate classification decisions and related actions will be made in accordance with the procedures in this Program Statement and are effective immediately.  Implementation for each inmate shall occur in accordance with his or her next regularly scheduled custody review.  Those cases that have a security level increase as a direct result of the initial implementation of this policy will not ordinarily be transferred to a higher security facility.  Bureau institutions may submit lists of these inmates to the DSCC in lieu of a Request for Management Variable for application of an appropriate Management Variable.

In accordance with the procedures set forth in this manual, a Transfer Request/Application of Management Variable must be submitted to the DSCC for those cases that have a security level decrease, for transfer to a lesser security level facility or application of an appropriate Management Variable.

This Program Statement authorizes the continuation of the Bureau's Inmate Classification Workgroup under the direction of the Assistant Director, Correctional Programs Division or his/her designee.  The Assistant Director (CPD) will select and replace workgroup members, on an as-needed basis, with subject matter experts in inmate classification and related disciplines who represent institutions, Regional Offices and the Central Office.

The Inmate Classification Workgroup or its subgroups will meet or video conference at least annually to assess the overall effectiveness of the inmate classification system and report as appropriate their findings and recommendations to the Director and the agency's Executive Staff.  Consideration may be given to include institutional staff with experience at various security and custody levels.

/s/
Harley G. Lappin
Director

P5100.08
9/12/2006
Table of Contents

## TABLE OF CONTENTS

Introduction . . . . . . . . . . . . . . . . . . Chapter 1

Definitions . . . . . . . . . . . . . . . . . . . Chapter 2

Security Designation Procedures for New Commitments . . Chapter 3

Inmate Load and Security Designation Form, BP-337  . . Chapter 4

Management Variables and Public Safety Factors . . . . Chapter 5

Custody Classification Form Instructions, BP-338 . . . Chapter 6

Inmate Transfer . . . . . . . . . . . . . . . . . Chapter 7

Offense Severity Scale/Definition of Roles involved in
Drug Offenses/Special Instructions . . . . . . . . Appendix A

Waiver for Misdemeanants . . . . . . . . . . . . Appendix B

Standard Abbreviations/Terms (BP-337) . . . . . . . Appendix C

Request for Transfer/Application of Management . . . Appendix D
Variable (409)

The Sentence Procedures Appendix, Institution Missions Appendix and the Parolable Institutions Appendix can be found on the Correctional Programs Branch (CPB) web page.  Quarterly updates will be made based upon submissions by the respective regions to the DSCC Administrator.

## INTRODUCTION

Bureau of Prisons (BOP) institutions are classified into one of
five security levels: **MINIMUM, LOW, MEDIUM, HIGH,** and
**ADMINISTRATIVE** based on the level of security and staff
supervision the institution is able to provide.

An institution's level of security and staff supervision is based
on the following factors:

- mobile patrol;
- towers;
- perimeter barriers;
- detection devices;
- internal security;
- type of inmate housing;
- inmate-to-staff ratio; and,
- any special institutional mission.

Similarly, BOP inmates are classified based on the following
factors:

- The level of security and supervision the inmate
  requires; and,

- The inmate's program needs, i.e., substance abuse,
  educational/vocational training, individual counseling,
  group counseling, or medical/mental health treatment,
  etc.

In summary, the initial assignment (designation) of an inmate to
a particular institution is based primarily upon:

- The level of security and supervision the inmate
  requires;

- The level of security and staff supervision the
  institution is able to provide; and,

- The inmate's program needs.

Additional factors that are also considered when designating an
inmate to a particular institution include, but are not limited
to:

- The inmate's release residence;

- The level of overcrowding at an institution;

- Any security, location or program recommendation made
  by the sentencing court;

- Any Central Inmate Monitoring issues (see Program Statement <u>Central Inmate Monitoring Program</u>);

- Any additional security measures to ensure the protection of victims/witnesses and the public in general; and,

- Any other factor(s) which may involve the inmate's confinement; the protection of society; and/or the safe and orderly management of a BOP facility.

Initial designations to BOP institutions are initiated, in most cases by staff at the Designation and Sentence Computation Center (DSCC), Grand Prairie, Texas, who assess and enter information from the sentencing court, U.S. Marshals Service, U.S. Attorneys Office or other prosecuting authority and the U.S. Probation Office about the inmate into a computer database (SENTRY). SENTRY then calculates a point score for that inmate which (for example, 18 points) is then matched with a commensurate security level institution.

| Security Level | Custody Level | Male | Female |
|---|---|---|---|
| MINIMUM | COMMUNITY and OUT | 0-11 points | 0-15 points |
| LOW | OUT and IN | 12-15 points | 16-30 points |
| MEDIUM | OUT and IN | 16-23 points | * |
| HIGH | IN and MAXIMUM | 24+ points | 31+ points |
| ADMINISTRATIVE | All custody levels | All point totals | All point totals |

An inmate's security point score is not the only factor used in determining a commensurate security level for an inmate. The application of a PSF or MGTV could effect placement at either a higher or lower level institution than the specified point total indicates. (SEE CHAPTER 5 FOR MORE DETAILED INFORMATION)

**NOTE:**     A security level cannot be assigned by SENTRY without completing an Inmate Load and Security Designation Form. If an inmate has not been assigned a security level, SENTRY will automatically assign "UNKNOWN" as the security level.

\* Female security level institutions are classified as Minimum, Low, High and Administrative.

Once all necessary information has been entered into the SENTRY database, a DSCC or Medical Designations Officer, (hereafter, Designator) selects an institution for service of sentence based on all the previously mentioned factors.

Redesignations (transfers) from one Bureau institution to another are considered in much the same manner using many of the same factors used at the time of initial designation. In addition, the inmate's institutional adjustment and program performance are also carefully reviewed when redesignation is considered.

Finally, an initial custody level (COMMUNITY, IN, OUT, MAXIMUM) is also assigned to the inmate that is consistent with the institutions mission. (See previous chart). An inmate's custody level within any given security level institution is routinely reviewed and may change for various reasons during the period of incarceration.

$$\boxed{\textbf{DEFINITIONS}}$$

**ADMINISTRATIVE INSTITUTION.**  An institution with a special mission, where inmates are assigned based on factors other than security and/or staff supervision (for example, medical/mental health, pretrial and holdover).  Administrative institutions are designed to house all security level inmates.

**CENTRAL INMATE MONITORING (CIM).**  The Bureau monitors and controls the transfer, temporary release, and community activities of certain inmates who present special needs for management.  Such inmates, known as Central Inmate Monitoring cases, require a higher level of review prior to any movement outside the institution.

**CLASSIFICATION.**  The systematic subdivision of inmates into groups based on their security and program needs.

**COMMUNITY CUSTODY.**  The lowest custody level assigned to an inmate which affords the lowest level of security and staff supervision.  An inmate who has **COMMUNITY** custody may be eligible for the least secure housing, including any which is outside the institution's perimeter, may work on outside details with minimal supervision, and may participate in community-based program activities if other eligibility requirements are satisfied.

**CONTRACT FACILITY.**  A state or local prison, institution, facility, jail, or other non-federal enterprise that contracts with the Bureau to house federal inmates (i.e., Community Corrections Center).  Contract facilities are contracted and supervised by the CCMs.

**CRIMINAL HISTORY POINTS.**  Criminal History Points are used to calculate the Bureau's Criminal History Score.  The Criminal History Points is the calculation, as specified by the U.S. Sentencing Commission Guidelines (Guidelines Manual, Chapter 4), which assigns a numerical value based on the individuals entire criminal record of convictions.  Ordinarily, the Criminal History Points are calculated by the United States Probation Office.

**CRIMINAL HISTORY SCORE (CHS).**  The CHS is one of the factors used to calculate the inmate's security point total.  The CHS is derived from the Criminal History Points whereby the Criminal History Points fall into one of six categories.

**CURRENT OFFENSE.**  For classification purposes, the current offense is the most severe documented instant offense behavior regardless of the conviction offense.

**CUSTODY CLASSIFICATION.**  The review process to assign a custody level based on an inmate's criminal history, instant offense, and institutional adjustment.  A custody level (i.e., **COMMUNITY, OUT, IN**, and **MAXIMUM**) dictates the degree of staff supervision required for an individual inmate.

**DESIGNATION.**  An order from the DSCC indicating the initial facility of confinement for an inmate.

**DESIGNATION FACILITY (DFCL).**  Each of the separate missions within an institution for designation purposes.  Each DFCL is shown as a separate line on the Population Report and has its own security level and destination (DST) assignment.  Designations are made to a DFCL code rather than to a facility (FACL) code.

**JUDGMENT.**  The official court document (e.g., Judgment and Commitment Order or Judgment in a Criminal Case) which is signed by the Judge.  The Judgment contains the offense(s) for which the court imposes its sentence, which ordinarily includes a financial, confinement and supervision obligation.

**HISTORY.**  The inmate's entire background of criminal convictions (excluding the current offense) and institutional disciplinary findings used to assess points related to his/her history of violence and/or history of escape.

**IN CUSTODY.**  The second highest custody level assigned to an inmate which requires the second highest level of security and staff supervision.  An inmate who has **IN** custody is assigned to regular quarters and is eligible for all regular work assignments and activities under a normal level of supervision.  Inmates with **IN** custody are not eligible for work details or programs outside the institution's secure perimeter.

**LEGAL RESIDENCE.**  The inmate's local and state address as reported by the United States Probation Office at the time of conviction.

**LONG-TERM DETAINEE.**  A non-U.S. citizen (alien) who has:

- finished serving a local, state, or federal sentence;

- completed immigration proceedings that have resulted in an order of deportation, exclusion, or other means of

removal by either the Executive Office for Immigration
Review (EOIR), or the Bureau of Immigration and Customs
Enforcement (ICE), formerly the Immigration and
Naturalization Service (INS); and,

- cannot be removed from the country for various reasons.

**MANAGEMENT SECURITY LEVEL (MSL).** Management Security Level is
the security level assigned by the DSCC Administrator or designee
to an inmate upon application of any of the following Management
Variables:

- PSF Waived;

- Greater Security; and,

- Lesser Security.

Based on these Management Variables, the Management Security
Level will normally be one security level greater or lesser than
the scored security level.

**MANAGEMENT VARIABLE.** A Management Variable (MGTVs) reflects and
supports the professional judgment of Bureau staff to ensure the
inmate's placement in the most appropriate level institution. A
Management Variable(s) is required when placement has been made
and/or maintained at an institution level inconsistent with the
inmate's security score — a score which may not completely/
accurately reflect his or her security needs.

**MAXIMUM CUSTODY.** The highest custody level assigned to an inmate
requiring the highest level of security and staff supervision.
An inmate with **MAXIMUM** custody requires ultimate control and
supervision. This classification is for individuals who, by
their behavior, have been identified as assaultive, predacious,
riotous, serious escape risks, or seriously disruptive to the
orderly running of an institution. Accordingly, quarters and
work assignments are assigned to ensure maximum control and
supervision. A custody change to or from **MAXIMUM** custody must be
justified thoroughly on the BP-338 form and maintained
permanently in the Inmate Central File.

**MISDEMEANANT.** An inmate convicted of an offense for which the
maximum penalty is one year or less. Such inmates may not be
transferred to a High security institution without first signing
a waiver. 18 U.S.C. § 4083 prohibits placement of such inmates
in "penitentiaries" without their consent; however, the Bureau
broadens that prohibition to include any High security
institution. A sample of the waiver is provided in Appendix B.

**OUT CUSTODY.**  The second lowest custody level assigned to an inmate requiring the second lowest level of security and staff supervision.  An inmate who has **OUT** custody may be assigned to less secure housing and may be eligible for work details outside the institution's secure perimeter with a minimum of two-hour intermittent staff supervision.

**PAROLE, MANDATORY RELEASE, OR SPECIAL PAROLE TERM VIOLATOR.** Violators are inmates who were released from Bureau custody to the supervision of a D.C. or U.S. Probation Officer (USPO) and have violated the conditions of their release.  These violators are returned to Bureau custody and are required to have a parole hearing within certain time limits.  The purpose of this is to provide the inmate with an in-person hearing before the U.S. Parole Commission (USPC) to determine if the inmate has violated the conditions of parole, mandatory release, or special parole. Therefore it is necessary to temporarily place these individuals at parolable institutions in order to conduct parole hearings.

**PRIVATIZED FACILITY.**  A prison, institution, or other correctional facility that is operated or supervised by a non-governmental entity.  Privatized facilities are managed by private organizations or individuals with oversight provided by Bureau staff.

**PUBLIC SAFETY FACTOR.**  There are certain demonstrated behaviors which require increased security measures to ensure the protection of society.  There are nine Public Safety Factors (PSFs) which are applied to inmates who are not appropriate for placement at an institution which would permit inmate access to the community (i.e., MINIMUM security).  The application of a PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate, based on his or her demonstrated current or prior behavior.

**REDESIGNATION.**  The reassignment of an inmate from one institution to another after initial designation.  Unit staff submit a request to the DSCC, and the inmate's case is reviewed for possible transfer.  Approval of a redesignation results in an order from DSCC staff indicating a correctional institution to which an inmate is to be transferred.  The actual movement of an inmate from one institution or facility to another is referred to as a transfer.

**RELEASE RESIDENCE.**  The verifiable destination to which an inmate realistically plans to reside upon release from Bureau custody. The inmate must provide proof of residence to his or her unit staff.  Staff will rely upon the following references to assist in verification: Presentence Investigation Report/USPO

verification; telephone and visiting lists; and, incoming and
outgoing mail.

**SECONDARY DESIGNATION.**   The second part of a two part
designation, usually after a temporary designation to receive
medical/mental health treatment or to participate in a specific
institutional program or parole hearing.

**SECURITY LEVEL.**   Used to describe the structural variables and
inmate-to-staff ratio provided at the various types of Bureau
institutions (i.e., Minimum, Low, Medium, High).   It also
identifies the institution type required to house inmates based
on their histories, institutional adjustment, and Public Safety
Factors as well as the physical security of the institution to
include mobile patrols, gun towers, perimeter barriers, housing,
detection devices, inmate-to-staff ratio, and internal security.

**STATEMENT OF REASONS.**   The Statement of Reasons (SOR) is an
attachment to the criminal judgment (Judgment and Commitment
Order; Judgment in a Criminal Case) which indicates the reason
for the court's final sentence, and other sentencing related
issues (e.g., resolution of disputed issues, changes in scoring,
statements of court intent, etc.).   It is required in every
felony case where the sentencing range exceeds 24 months, or
whenever there is a departure from the U.S. Sentencing Guidelines
range.   The court may complete an SOR even if not required.

**STUDY CASE.**   A study case is an inmate who is committed for a
period of study and observation pursuant to 18 U.S.C. §§ 3552(b)
or (c)), 4241(b) or (d), 4242(a), 4243(a) or (b), 4244(b),
4245(b), 4246(b), or 4247(b) or (c)).   An inmate committed for a
study and observation will be referred to the Central Office
Medical Designator in the Office of Medical Designations and
Transportation (OMDT) for designation to a facility that can
complete the study, considering any specific medical or
psychiatric issues which should be addressed.   The Central Office
Medical Designator should attempt to place the inmate in the most
suitable facility compatible with the offender's security and
custody needs, closest to the court and available resources.

## SECURITY DESIGNATION PROCEDURES FOR NEW COMMITMENTS

The Designation and Sentence Computation Center will ordinarily complete the initial designation within three working days of receiving all the necessary documentation from the U.S. Marshals Service (USMS) and the U.S. Probation Officer (USPO) which includes the following:  the Presentence Investigation Report (PSR), Judgment, Statement of Reasons (SOR), and Central Inmate Monitoring (CIM) documentation (in cases where a CIM assignment is necessary).

   The DSCC will refer all requests for initial designation with potential medical/mental health concerns to the Office of Medical Designations and Transfers (OMDT), Health Services Division, Washington, D.C. no later than the following work day.

## 1.   DESIGNATION PROCEDURES

The following is the normal chronology of an initial designation.

   a.   The inmate is sentenced.

   b.   The Clerk of the Court transmits the Judgment and Commitment Order (old law cases) or Judgment in a Criminal Case (new law cases) to the USMS.

   c.   The USMS makes a request to the DSCC advising that the inmate is now ready for designation to a facility.

   d.   If it has not already been provided, DSCC staff must contact the necessary officials (USPO or USMS) for the following: two copies of the PSR, a copy of the Judgment, to include the SOR, and the Individual Custody and Detention Report (USM-129).

If the SOR is not provided with the Judgment, DSCC staff will make a reasonable effort to obtain a copy by contacting the Court or USPO.  If no SOR was prepared for the case or cannot be obtained, DSCC staff will note this in the "Remarks" section of the BP-337 and proceed with the designation process.  These procedures will ensure the Bureau is following the intentions of the Court when designating a facility, as the SOR may contain information which overrides the PSR and may affect scoring decisions.

Based on a review of the data, DSCC staff will determine whether a non-federal facility should be designated.  If a PSR has not been prepared, DSCC staff will complete a National Crime

Information Center (NCIC) and National Law Enforcement
Telecommunication System (NLETS) criminal history check to obtain
background information.  DSCC staff will then load appropriate
information on the SENTRY Update Security Designation screen with
a notation that no PSR was available.  DSCC staff will contact
the USPO and request that a Postsentence Investigation Report be
prepared, and forwarded to the designated facility.  DSCC staff
will document this contact on the SENTRY Update Security
Designation Screen.

Frequently, in cases involving Reentry after Deportation,
Presentence/Postsentence Investigation Reports are not prepared.
In those particular cases, a Magistrate Information Sheet may be
used.  A Magistrate Information Sheet is a document prepared by
U.S. law enforcement officials.  This document contains a summary
of the facts related to the defendant's arrest and prior
criminal/personal history.  This information is primarily
obtained through the arresting officer's report, the FBI Rap
Sheet and an interview with the defendant.

If more than six months has elapsed since the PSR was prepared,
DSCC staff will contact the USPO to determine if there is any new
or significant information that should be considered.  If the
offender was a study case before final sentencing, DSCC staff
will take into consideration the results of that study in
completing the designation request.  The result of the study may
be obtained from a PSR, a summary report, or any other
information available.

If offense or background information is not available prior to
designation, an inmate must be designated to at least a Low
security level institution.  When information is obtained, the
institution may request redesignation, if appropriate.

   e.  The DSCC uses classification material and SENTRY to
determine if Central Inmate Monitoring (CIM) precautions need to
be taken.  This includes a name search to determine if the
offender was previously confined under the current or previous
register number.  If new to the Bureau, the inmate must be loaded
into SENTRY and "admitted" to the DSCC "facility," with any
appropriate CIM assignment(s) entered.  DSCC staff will identify
the documents used to support CIM assignments and forward the
documents to the designated institution.

   f.  DSCC staff will complete and enter into SENTRY an Inmate
Load and Security Designation form (BP-337) on all cases with
terms exceeding 30 days.  The DSCC staff member loading the data
has the discretion to complete a hard copy version or may enter
the information directly into SENTRY.

DSCC staff must determine if there is a break in custody when the inmate is transferring to federal custody after service of a state sentence.  The DSCC usually has access to this type of information for jail credit purposes.  If there is no physical release from custody, DSCC staff will consider the state offense as part of the current term of confinement for classification purposes and will not assign any history points for the state offense.

   g.  Each work day, DSCC Designation Officers determine which cases require designation by displaying a SENTRY Daily Log for a listing of those cases entered the previous day (also to include weekends and holidays).  The Designator displays the Initial Designation Data screen and follows the prompts on the screen.  This will lead the Designator through a display of the "CIM Clearance and Separatee Data" screen and "Update Security Designation" screen.  A list of the appropriate security level facilities will appear in order of proximity to the inmate's legal residence (based on mileage calculated by SENTRY).  The final screen in this series requires that the reason for designation be entered, as well as any clearance remarks by the DSCC Designator.

The objective of inmate classification is to place each inmate in the most appropriate facility for service of sentence.  To accomplish this, the Designator must consider all relevant information regarding the inmate.

In accordance with Rule 38(b) of the Federal Rules of Criminal Procedure, when the court of conviction recommends that the inmate be retained in a place of confinement which will allow the inmate to participate in the preparation of the appeal, the Bureau will make every effort to place the inmate in such a facility.  If a reason exists for not placing the inmate in that facility, the matter is called to the attention of the court and an attempt is made to arrive at an acceptable place of confinement.

   h. SENTRY provides information on the capacity and inmate population in each institution.  Specifically, for each facility and each Designation Facility (DFCL), SENTRY provides the Rated Capacity, the Designation Capacity, and the percentage of each that the facility or DFCL currently houses.

- The Rated Capacity is a measure of the capacity for which each DFCL was designed.

- The Designation Capacity is the equitable proportion of the inmates in a particular security level that each

P5100.08
9/12/2006
Chapter 3, Page 4

designation facility having that security level should house.

The Designation Capacity of each DFCL is based on the rated capacities and population totals of all the DFCLs that have the same security level.  The Rated Capacity and Designation Capacity for a facility are calculated as the total Rated Capacity and Designation Capacity of all the DFCLs that exist within that facility.

Designators will ordinarily use the Designation Capacity as a guide for maintaining population balance and an equitable distribution of inmates.  However, for newly activating institutions, Designators may designate that institution for a percentage of initial designations.

   i.  The Designator assigns a facility, which may include a privately managed facility, and will make every effort to accommodate recommendations from the courts, ie. RDAP, locality, etc.

   j.  Upon completion of the initial designation by the DSCC Designator or Central Office Medical Designator, staff in the following areas will make note of the designation by monitoring SENTRY Destination Daily Logs:

   (1) The receiving institution;

   (2) The federal facility (MCC, Detention Center, etc.) holding the inmate being designated;

   (3) The U.S. Marshals Prisoner Transportation Division in Kansas City, Kansas; and,

   (4) The DSCC staff in cases where a medical/mental health inmate has been referred to OMDT.

DSCC staff will inform the USMS who has custody of the inmate of the designation by whatever means is appropriate.

If the inmate is a former study case, DSCC staff must also inform, via GroupWise, the Warden of the institution that completed the study of the designation.  This alerts that facility to forward the Inmate Central File and other records to the institution designated.

If there is a secondary designation (e.g., Parole, Special Parole Term, Mandatory Release Violator Hearing, or following medical treatment), DSCC staff (or Central Office Medical Designator for

medical cases) will notify the Warden of the secondary
institution.  This will alert the secondary institution that the
inmate is designated and will be transported after the program or
medical treatment is completed.  No other designation notation is
needed for a secondary designation.

   k.  When a designation is made, DSCC staff will forward all
supporting documents to the designated institution within two
working days.  If DSCC staff believe that the inmate will arrive
at the institution in less than five calendar days, the
supporting documentation will be sent to the institution by
overnight mail, facsimile, or electronically, within one working
day of the designation.

   l.  The Case Management Coordinator (CMC) will monitor all
pending arrivals at that facility.  However, if the institution
has separate DFCLs for specialized programs (i.e., RDAP, Sex
Offender Treatment Program, Life Connections, etc.) or for a
satellite camp, then the CMC may delegate this responsibility to
staff assigned to those specialized programs or populations.
Staff will monitor the Daily Log for that facility, and will
print a hard copy of each designation and maintain a copy on file
for 120 calendar days.  In certain facilities other methods may
be just as effective in monitoring pending arrivals.  For
example, institutions with a large holdover or pretrial
population can be monitored more effectively by running a daily
pipeline roster filtering out all "A-HLD"s and "A-PRE"s.

Staff will also monitor the arrival of classification material,
and if such material has not arrived within 10 calendar days
following the designation, the DSCC will be contacted to
determine the status of that material.  Upon arrival of the
classification material, the CMC, or designee, will review that
material and verify the scoring of the Inmate Load and Security
Designation form (BP-337).  If a scoring issue and/or error is
discovered, the CMC will contact the DSCC Administrator via
GroupWise.  The CMC may need to fax certain pages of the
Presentence Investigation Report to the DSCC so the case can be
appropriately reviewed.  If the CMC and DSCC agree that an error
has been made, the error will be corrected by the DSCC.  If the
CMC and DSCC do not agree that an error has been made, the
Central Office, Correctional Programs Administrator, will make
the final determination.

The DSCC will also be advised of any non-scoring errors or
concerns.  In either circumstance, if the correction requires a
new designation, the DSCC will make any necessary changes and
will enter a new designation into SENTRY.  The DSCC will then
notify the appropriate USMS office(s) of the designation change.

P5100.08
9/12/2006
Chapter 3, Page 6

If the original designation is changed, the CMC will forward the
classification material to the newly designated institution.

   m.  The CMC has oversight responsibilities for monitoring the
timely arrival of a newly designated inmate.  If an inmate
serving a term of one year or more has not arrived at the
designated institution within 120 calendar days from the date of
the designation, or if an inmate serving a term of less than one
year has not arrived after 30 calendar days, staff will use
SENTRY to determine the inmate's current location:

   (1)  If the inmate is in a Bureau facility, staff will contact
that facility to expedite movement or ascertain the reason for
delay, and will verify whether the designation continues to be
valid; and,

   (2)  If the inmate is not in a Bureau facility, staff will
contact the DSCC.  Upon notification, DSCC staff will contact the
appropriate authorities and ascertain why the inmate has not
arrived at the designated institution.  If DSCC staff decides the
designation is no longer valid, the DSCC will cancel the original
designation.

   If the designation is canceled, the packet will be returned to
the DSCC, who then will return the documentation to the
originating agency.  Prior to canceling a designation, the DSCC
will enter a comment on the "CIM Clearance and Separatee Data"
screen to document the reason(s) for this action.  This comment
will be the only retrievable documentation available to answer
future questions regarding the processing of the case.  It may be
necessary to administratively admit the inmate in order to enter
the comment.  The DSCC will also delete the associated DST
assignment.

Staff will maintain records of their efforts to monitor
designations.  These records will be maintained for a period of
120 calendar days from the date of initial designation.

   n.  The release to the general public of an inmate's
designation or redesignation information is prohibited, for
security reasons, until the inmate has arrived at the designated
facility.  An inmate confined in a Bureau facility however, may
be advised of the destination but will not be advised of the date
or time of the transfer.  However, caution should be exercised in
advising inmates of their destination.  The Warden may define
cases where the designation will not be disclosed to the inmate.
Officials such as Judges and members of Congress may be advised
of designations in response to official inquiries for their
official use.

## 2.  NON-ROUTINE DESIGNATION PROCEDURES

In certain cases, non-routine designation procedures for new
commitments are required.  Listed below are specific examples of
non-routine designations.

   a.  **Study Cases.**  The DSCC will complete an Inmate Load and
Security Designation form (BP-337) and enter it into SENTRY.  The
DSCC will then notify the Central Office Medical Designator via
GroupWise requesting designation.  The Central Office Medical
Designator will designate an appropriate institution for the
study.  After completion of the study and final sentencing by the
court, the DSCC will enter a new Inmate Load and Security
Designation form (BP-337) into SENTRY, based on the actual
sentence imposed or other new information.

   b.  **Medical or Mental Health.**  The DSCC is responsible for
receiving and evaluating information pertaining to an initial
designation.  DSCC staff must attempt to ascertain whether an
inmate requires medical or mental health evaluation or treatment.
This information is ordinarily obtained from the Presentence
Investigation Report or other source documents.  If medical or
mental health concerns are apparent, DSCC staff will provide
comments in the "Remarks" section of the  BP-337 and enter Y
(yes) in the OMDT REF item.  DSCC staff will fax portions of the
Presentence Investigation Report pertaining to the medical or
mental health concerns, and the Judgment in a Criminal Case, if
it includes any judicial recommendations, to the Central Office
Medical Designator.

Upon review of the daily log for W DESIG M cases, the Central
Office Medical Designator will access the Inmate Load and
Security Designation form (BP-337) in SENTRY and make a
designation based on the available information, ordinarily within
three working days.  If the Central Office Medical Designator
determines there are no medical or mental health concerns
affecting placement, the DSCC will be advised.  The DSCC will
then complete the designation to an appropriate institution.

   Only the OMDT will make designations for study cases or for
cases requiring medical or psychiatric evaluation or treatment.
Designation may be made to any Bureau facility having resources
to meet the inmate's needs.  The Central Office Medical
Designator will ensure that whenever a designation is made to an
DFCL inconsistent with the inmate's security level, the
appropriate Management Variable is entered.  Administrative
facilities are excluded from this requirement.

c. **Military Prisoners**. The Bureau cooperates with the Security, Force Protection and Law Enforcement Division of the Armed Services for the transfer of military prisoners into the Bureau's custody. These cases are coordinated through the DSCC, in accordance with the provisions contained in Chapter 7, Section 17(d).

d. **Parole, Mandatory Release or Special Parole Term Violator Hearing**. For designation purposes, the U.S. Parole Commission (USPC) provides the revocation packet and a copy of the alleged violator's Presentence Investigation Report to the DSCC. The DSCC will complete an initial designation to a violator hearing site, and a secondary designation to a post-hearing institution for service of the violator term. The Security Designation Data screen will indicate the inmate is to be housed as a holdover at the violator hearing site.

Once the designation has been completed, the DSCC will notify the U.S. Marshals Office of the designated institution, and mail the violator packet to that institution. The USPC will receive notification via Groupwise.

If after the hearing, new information causes a change in the secondary designation (i.e., short-term parole date), institution staff will contact the DSCC for appropriate action.

- In cases where the projected release date (PRD) is between 60 to 120 days from the date of hearing, the DSCC will consider changing the secondary designation to the nearest appropriate facility.

- In cases where the PRD is 60 days or less from the date of hearing, hearing facility staff will consider having the inmate remain at the hearing facility for release processing purposes.

- If a change in designation is not necessary, institution staff may process the inmate's transfer to the secondary designation.

Procedures for violators requiring medical treatment are referenced in Chapters 3 and 7. Once the information is reviewed and evaluated by the DSCC, and it is determined that medical or psychiatric treatment is required, the request for designation will be entered into SENTRY and referred to the Central Office Medical Designator for designation. The DSCC will notify the appropriate USMS Office of the inmate's designated institution, and mail the violator packet to that institution. The USPC will receive notification via LAN.

Local revocation hearings will be conducted at a site
determined by the USPC, normally within commuting distance of
where the alleged violation occurred.  The USPC may request, in
writing, to the DSCC Administrator that an alleged violator be
moved to a Bureau institution.  Violators who have received their
local revocation hearing will not be transported until the USPC
Notice of Action has been received and a designation has been
determined.  In some instances, violators who are granted a
short-term release date should be considered for placement in a
contract facility.

   e.  **Long-term Detainees**.  The Detention Services Branch (DSB),
Correctional Programs Division, Central Office, is responsible
for the initial designation of long-term detainees.  Requests for
placement into the BOP from the U.S. Immigration and Customs
Enforcement (ICE) are sent directly to DSB, where they are
completed.  If a medical or mental health placement is needed,
DSB will refer it to the Central Office Medical Designator.

Long-term detainees are no longer serving a sentence but their
detention is indeterminate and they will not, in all probability,
be repatriated to their home country.

Long-term detainees are from countries, such as Cuba, that refuse
to accept their return from the U.S. government.  The Detention
Services Branch, Correctional Programs Division, will advise when
changes in applicable countries occur.  This does not include
citizens from countries that take a significant amount of time to
accept its citizens.  Travel orders can be obtained and they are
eventually returned.  ICE requests the placement of long-term
detainees into the BOP and they are ordinarily designated into a
general population.

Long-term detainees include:

- Mariel Cubans, detainees who entered the United States
  during the Mariel boatlift between April 15, 1980 and
  October 31, 1980;

- Cubans who entered the United States from other
  countries, or from Cuba other than during the Mariel
  boatlift; and,

- Detainees from counties that ICE has identified that
  refuse to receive its citizens.

Designation procedures for long-term detainees are unique because
the detainees are not serving a sentence.  Refer to the current

Program Statement <u>Mariel Cuban Detainees</u> for the designation procedures.

## 3.  DESIGNATIONS TO NON-FEDERAL FACILITIES

   The DSCC may designate a federal inmate to a non-federal facility in accordance with the criteria below.  An updated Security Designation form (BP-337) will be completed and entered into SENTRY for any sentence exceeding 30 days.  When the USMS takes custody of an inmate from state or local custody to begin serving a federal sentence, the same procedures for new commitments will be followed.

When designating an inmate to a non-federal facility for an inmate, Designators shall consider the inmate's religious beliefs, if known as one of the factors in making a designation decision.  If possible, a non-federal facility where the inmate's religious beliefs can be accommodated will be designated.  If necessary, Designators may consult with Central Office chaplaincy staff in making this designation decision.

## 4.  TYPES OF COMMITMENTS

   a.  **Juvenile Commitments.**  All inmates committed under the Juvenile Justice and Delinquency Prevention Act (JJDPA) and all inmates under the age of 18 will be designated and housed in accordance with the requirements of Program Statement <u>Juvenile Delinquents, Juvenile Justice and Delinquency Prevention Act</u>.

The CCM will complete a BP-337 for juvenile offenders housed in contract juvenile facilities; however, the CCM does not need to complete the BP-338 while the juvenile is housed there unless it is helpful to do so.

   b.  **Jail Commitments.**  When funds and appropriate jail space are available, the DSCC may designate a contract jail or detention facility for an inmate who is generally sentenced to one year or less.  If funds and appropriate jail space are not available or if an inmate has special needs, a federal institution will be designated through the DSCC.  Prior to placement, DSCC staff must determine whether any PSF(s) or other circumstances would contradict a jail designation.  If so, the lowest security level dictated by the applicable PSF must be satisfied.

However, such designations should also take into consideration underpopulated Bureau facilities prior to placement in a contract facility.

P5100.08
9/12/2006
Chapter 3, Page 11

c.  **Youth Corrections Act (YCA)/District of Columbia Youth Rehabilitation Act (DCYRA) Offenders**.  Although the YCA statutes were repealed effective October 12, 1984 (see 18 U.S.C. §§ 5005 through 5026 (repealed)), an offender originally committed under these statutes could be returned to custody as a parole violator. Ordinarily, DCYRA inmates will not be initially designated to non-federal facilities.

d.  **State Prisoners**.  18 U.S.C. § 5003 enables the Director, Bureau of Prisons, to establish contracts to accept state prisoners for boarding in federal institutions.  The term "State" as used in this section includes any state, territory, or possession of the United States.  The statute does not permit the Bureau to contract placement of state prisoners in third party custody.  This includes CCC placements.

When there is a compelling reason for placing a state prisoner in a non-federal facility, institution staff will contact the DSCC Administrator, who may suggest to officials of the state that they may want to make their own direct placement in a non-federal facility.

Once an inmate is accepted into Bureau custody, occasionally, there may be a reason to return the inmate to the original state. In this instance, institutional staff will contact the DSCC Administrator.  If the DSCC Administrator determines that it would be appropriate for the inmate to be returned, they will contact state officials.

P5100.08
9/12/2006
Chapter 4, Page 1

```
INMATE LOAD AND SECURITY DESIGNATION FORM INSTRUCTIONS (BP-337)
```

## INMATE LOAD DATA

The Inmate Load Data section (Items 1 to 25) of the Inmate Load and Security Designation form (BP-337) records the physical and demographic information of inmates entered into SENTRY (the Bureau of Prisons' on-line database).  In practice, inmates are entered into SENTRY whether or not the inmate's security level is scored (e.g., pre-trial detainees, material witnesses, etc.).  Therefore, when the initial security designation data is entered into SENTRY it is essential that the load data is compared to the information contained in the Presentence Investigation Report (PSR), and that the information is updated or reconciled as appropriate.

| | | | |
|---|---|---|---|
| 1. REGISTER NUMBER | | | |
| 2. LAST NAME | 3. FIRST NAME | 4. MIDDLE | 5. SUFFIX |
| 6. RACE  7. SEX | 8. ETHNIC ORIGIN | 9. DATE OF BIRTH | |
| 10. OFFENSE/SENTENCE | | | |
| | | | |
| 11. FBI NUMBER | | 12. SSN NUMBER | |
| 13. STATE OF BIRTH | 14. OR COUNTRY OF BIRTH | 15. CITIZENSHIP | |
| 16. ADDRESS-STREET | | | |
| | | | |
| 17. CITY | 18. STATE | 19. ZIP | 20. OR FOREIGN COUNTRY |
| 21. HEIGHT:FT ___ IN ___ | 22. WEIGHT: | 23. HAIR COLOR | 24. EYE COLOR |
| 25. ARS ASSIGNMENT | | | |

1.    **REGISTER NUMBER.**  The U.S. Marshals Service (USM) assigns an eight-digit register number to each inmate with the last three digits denoting the U.S. Marshals' judicial code.  The format is five digits, hyphen, three digits.

2.    **LAST NAME.**  Twenty-four spaces are provided for the inmate's last name, which must match the name on the Judgment.  The first character must be a letter.  Each subsequent character must be a letter, space, hyphen, or apostrophe.

3.    **FIRST NAME.**  Twelve spaces are provided for the inmate's first name.

      **NOTE:**  Only the inmate's committed name (as it appears in

the Judgment) will be entered on the "Load Inmate" transaction.  All other names (e.g., true name, aliases, nicknames, maiden name, etc.) will be entered into SENTRY using the "Update Nicknames and Aliases" transaction.

4.  **MIDDLE.**  Eight spaces are provided for the inmate's middle name.

5.  **SUFFIX.**  Three spaces are provided for any name suffixes (i.e., Jr., Sr., II).  Suffix codes are found in the Name Suffix Code section of the SENTRY General Use Technical Reference Manual (TRM).

6.  **RACE.**  Standards for the Classification of Federal Data on Race and Ethnicity are set by the Office of Management and Budget.  Enter the appropriate code:

| CODE | RACE | DEFINITION |
|------|------|------------|
| A | Asian | A person having origins in any of the Pacific Islands or any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam. |
| B | Black or African American | A person having origins in any of the black racial groups of Africa. |
| I | American Indian or Alaska Native | A person having origins in any of the original peoples of North and South America (including Central America), and who maintains tribal affiliation or community attachment. |
| W | White | A person having origins in any of the original peoples of Europe, the Middle East, or North Africa. |

7.  **SEX.**  Enter M = Male or F = Female.

8.  **ETHNIC ORIGIN.**  Enter the appropriate code.

P5100.08
9/12/2006
Chapter 4, Page 3

| CODE | ETHNIC ORIGIN | DEFINITION |
|------|---------------|------------|
| H | Hispanic or Latino | A person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race. |
| O | Not Hispanic or Latino | A person who does not meet the above definition. |

9.   **DATE OF BIRTH.**  Ten spaces are provided for the inmate's birth date (MM-DD-YYYY); (e.g., July 2, 1981 = 07-02-1981). If the inmate's birth date is unknown or not available, enter 01-01-1800.

10.  **OFFENSE/SENTENCE.**  The offense(s), sentence imposed, and docket number (as specified in the Judgment) should be entered in the space provided.  Additionally, if the inmate is admitted to another SENTRY facility, care should be taken to preserve existing information.

11.  **FBI NUMBER.**  Nine spaces are provided for the Federal Bureau of Investigation (FBI) number.  The FBI number can be any combination of letters and numbers and must be entered without spaces or dashes.  It cannot duplicate an existing FBI number in SENTRY.  This field must be left blank if the FBI number is unknown at the time the inmate is loaded.

12.  **SOCIAL SECURITY NUMBER (SSN).**  Nine spaces are provided for the inmate's SSN.  The number must be entered without dashes or spaces.  It cannot duplicate an existing SSN in SENTRY. If the SSN is unknown, or the inmate has never been issued a SSN this field must be left blank.  In cases where the inmate will not be issued a SSN (i.e., illegal aliens) a back slash may be entered.

13.  **STATE OF BIRTH.**  Two spaces are provided for the state code for the state in which the inmate was born.  If entered, it must be a valid code from the State and Possession Code Table in the SENTRY General Use TRM.

14.  **COUNTRY OF BIRTH.**  If entered, it must be a valid code from the Country Code Table in the SENTRY General Use TRM.

   **NOTE:**      SENTRY will not allow "US" to be entered if a "state of birth" is entered (Item 13 above).

15. **CITIZENSHIP.** Enter the country code that corresponds to the inmate's citizenship. This must be a valid code from the Country Code Table in the SENTRY General Use TRM. Do not rely on the inmate's current place of residence to determine citizenship. Special emphasis must be placed on the accuracy of citizenship at the time of the inmate's admission.

16. **ADDRESS - STREET.** At least twenty-eight spaces are provided for the inmate's street number and name as listed in the PSR as "legal address." Enter any combination of alphanumeric characters.

17. **CITY.** Fifteen spaces are provided for the inmate's city of residence as listed in the PSR as "legal address." If entered, a state or foreign country must be entered.

18. **STATE.** Two spaces are provided for the state code. If entered, it must be a valid state code found under State Possession Code, SENTRY General Use TRM. Enter country code under Item 20 if residence is not in the United States or one of its territories or commonwealths.

19. **ZIP CODE.** Five spaces are provided for the zip code. It must be entered when a state code has been entered. If not available, the city, state, and zip code of the USMS Office assigning the register number will be entered. An accurate zip code is important because it is used by SENTRY to determine mileage between the inmate's legal residence and designated institution.

20. **FOREIGN COUNTRY.** Two spaces are provided for the country code. If entered, it must be a valid country code from the Country Code Table of the SENTRY General Use TRM. "US" may not be entered as the country code. This field must be completed if a state or zip code is not entered in the address field (see Items 18 & 19 above).

21. **HEIGHT.** Height must be entered in a measurement of feet and inches. Values in feet (FT) must be 1 through 9. Values in inches (IN) must be 00 through 11.

22. **WEIGHT.** Weight values must be 001-999 and represent pounds.

23. **HAIR.** Two spaces are provided for the color code. If entered, it must be a valid code found under the Hair Color Code, SENTRY General Use TRM.

24. **EYES.** Two spaces are provided for the color code.  If entered, it must be a valid code found under the Eye Color Code, SENTRY General Use TRM.

25. **ARS ASSIGNMENT.**  Use a valid SENTRY category assignment, SENTRY General Use TRM.

| SECURITY DESIGNATION DATA |
|---|

The Security Designation Data section (Items 1 to 18) of the Inmate Load and Security Designation form (BP-337) records sentencing, programing recommendations, and background information from the Judgment, the Statement of Reasons (SOR), and the PSR.  This information is used to determine the inmate's security level.

| 1. JUDGE | 2. REC FACILITY | 3. REC PROGRAM | 4. USM OFFICE |
|---|---|---|---|

1. **JUDGE.**  Enter the sentencing Judge's last name.

2. **RECOMMENDED FACILITY.**  The court may recommend a specific institution or a geographical region for a newly committed inmate.  Enter the name of the recommended institution or region. If a specific SENTRY facility code is entered, that facility will appear at the top of the list presented to the Designator for consideration.

3. **RECOMMENDED PROGRAM.**  Enter the name or type of any program recommended by the sentencing Judge.

4. **USM OFFICE.**  Enter the location of the USM Office (e.g., E/VA-NOR).

5. **VOLUNTARY SURRENDER**

| 5. VOLUNTARY SURRENDER     **0** = NO      **(-3)** = YES |  |
|---|---|
| IF YES, MUST INDICATE: 5a. VOLUNTARY SURRENDER DATE: _____ and 5b. VOLUNTARY SURRENDER LOCATION: _____ |  |

This item allows for the subtraction of three points from the Security Point Total, Item 15, when the Judgment indicates the inmate was allowed to voluntarily surrender.  For purposes of this item, voluntary surrender means the inmate was not escorted by a law enforcement officer to either the U.S. Marshals Office or the place of confinement.  Additionally, this item applies only to post-sentencing voluntary surrender, and does not include cases where the inmate surrendered to the U.S. Marshals on the same day as sentencing.  Voluntary Surrender Credit may only be

applied to the initial term of confinement; it may not be applied
to any subsequent Supervised Release, Mandatory Release or parole
Violation return to custody.

5a.  **VOLUNTARY SURRENDER DATE.**  If the court has provided for
voluntary surrender, enter the date of the voluntary surrender in
this block.  If the court provided for voluntary surrender but
did not provide a specific date for the surrender, the DSCC will
contact the court to establish a mutually agreeable date.

**NOTE:**     In cases where the court allows the inmate to
              voluntarily surrender but the inmate will not receive
              (-3) points on this item the date will still be entered
              on this item.

5b.  **VOLUNTARY SURRENDER LOCATION.**  The DSCC will note whether
the inmate is to voluntarily surrender to the USMS or to the
designated institution.

6.  **MONTHS TO RELEASE**

| 6. MONTHS TO RELEASE _____ |
| --- |

This item reflects the estimated number of months the inmate is
expected to be incarcerated.  Consecutive federal sentences will
be added together for classification purposes.  Federal sentences
may have different beginning dates, based on the Judgment Order.
There may even be a computation in SENTRY with a beginning date
in the future.  Based on the inmate's sentence(s), enter the
total number of months remaining, less 15% (for sentences over 12
months), and credit for any jail time served.  This item is not
figured into the security point total but impacts the Sentence
Length Public Safety Factor.

**Example:**  An adult convicted of Breaking and Entering under the
Sentence Reform Act is sentenced to eight years.  The expected
length of incarceration is (96 months x 85% = 81.6 months).
Round to the nearest whole number to get 82 and subtract any jail
time credit (180 days) = 76 months to release.

**NOTE:**     Enter 540 months for death penalty cases, life
              sentences, and Parolable life sentences for which a
              parole date has not been established.

7.  **SEVERITY OF CURRENT OFFENSE**

| 7. SEVERITY OF CURRENT OFFENSE | **0** = LOWEST<br>**1** = LOW MODERATE | **3** = MODERATE<br>**5** = HIGH | **7** = GREATEST | |
|---|---|---|---|---|

Enter the appropriate number of points that reflect the most severe documented instant offense behavior regardless of the conviction offense.  For multiple offenses, the highest score will be used in scoring the current offense.  Staff will consider the offense behavior on all sentences, including federal sentences that have a future beginning date or a previous D.C. or state sentence if there was no physical release from custody.

**NOTE:**      This will require DSCC staff to make reasonable efforts to obtain documentation.

Severity is determined by using the Offense Severity Scale (Appendix A).

**Example:**  According to the PSR, the individual was involved in an Assault With Serious Injury (Greatest severity level) but pled guilty to a Simple Assault (Moderate severity level).  Assign the points on the basis of the more severe documented behavior, i.e., assign 7 points (Greatest severity level).

**In determining "Severity of Current Offense" staff must review the <u>Statement of Reasons</u> (SOR) and ensure the information provided is appropriately used in classifying the inmate.**

**Example:**  According to the PSR the individual was involved in a drug conspiracy responsible for distribution of 31 grams of Cocaine Base "Crack", but was individually only responsible for 2 grams, he/she would be scored as Moderate Severity for this item.  However, the SOR, indicates the Sentencing Judge found the individual responsible for less than 1 gram; therefore, the appropriate scoring should be Low Moderate severity.

- **PROCEDURES FOR PAROLE, MANDATORY RELEASE, SPECIAL PAROLE TERM, OR SUPERVISED RELEASE VIOLATORS**

If the violation was the result of new criminal conduct, regardless of conviction status, use the new criminal conduct for scoring "Severity of Current Offense" (see Appendix A).  If the violation behavior was a technical violation, score the "Severity of Current Offense" as Low Moderate.

P5100.08
9/12/2006
Chapter 4, Page 8

The original offense behavior which occurred prior to the
violation is considered past behavior and is not used in
determining "Severity of Current Offense."

- **PROCEDURES FOR PROBATION VIOLATORS**

The original offense behavior that resulted in probation
should be used for scoring "Severity of Current Offense" (see
Appendix A).  However, if the new criminal conduct (violation
behavior) is more severe than the original offense behavior, then
use this behavior for scoring "Severity of Current Offense."  **The
most severe documented behavior between the original offense and
the violation behavior will be used for scoring "Severity of
Current Offense."**

8.  **CRIMINAL HISTORY SCORE**

| 8. CRIMINAL HISTORY SCORE | **0** = 0-1<br>**2** = 2-3 | **4** = 4-6<br>**6** = 7-9 | **8** = 10-12<br>**10** = 13 + | |
|---|---|---|---|---|
| 8a. SOURCE OF DOCUMENTED CRIMINAL HISTORY | _____ - PRESENTENCE INVESTIGATION REPORT<br>_____ - NCIC III | | | |

Enter the appropriate number of Criminal History Points(CHP).
SENTRY will automatically convert the CHP to the Bureau's
Criminal History Score (CHS).

The CHS is derived from the US Sentencing Guidelines Criminal
History Points, as reflected in the final judgment and the SOR.
If not found in either the Judgment or SOR, use the points
assessed by the USPO in the PSR.

In some cases the Criminal History Points are not available
(i.e., when the PSR is waived, on offenses committed prior to
November 1, 1987, state cases, and  military and D.C. Code
offenders).  Under these circumstances the Criminal History Score
will be derived from the criminal history documented in the NCIC
III Report according to the following procedures:

   (a)    Add 3 points for each prior sentence of imprisonment
          exceeding one year and one month;

   (b)    Add 2 points for each prior sentence of imprisonment of
          at least sixty days not counted in (a);

   (c)    Add 1 point for each prior conviction not counted in
          (a) or (b), up to a total of 4 points for this item;
          and,

> (d)    Add 2 points if the instant offense is a revocation
> accompanied by a new state or federal conviction, or if
> the instant offense occurred while under federal
> supervision including incarceration, probation, parole
> or supervised release.

The documentation used to assess the Criminal History Points must
be provided as specified in all cases.

## 9. **HISTORY OF VIOLENCE**

| 9. HISTORY OF VIOLENCE | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS | |
|---|---|---|---|---|---|---|---|
| | MINOR | 0 | 1 | 1 | 3 | 5 | |
| | SERIOUS | 0 | 2 | 4 | 6 | 7 | |

Enter the appropriate number of points that reflect any history
of violence, considering only those acts for which there are
documented findings of guilt (i.e., DHO, Court, Parole, Mandatory
Release, or Supervised Release Violation).  This item includes
the individual's entire background of criminal violence,
excluding the current term of confinement.

**Exception:**  Any institution disciplinary hearing (UDC or DHO)
finding that a prohibited act was committed during the current
term of confinement will be scored as a history item.  DSCC staff
must review the Chronological Disciplinary Record (CDR) for
inmates who were previously housed in a federal institution or
contract facility.  Any violent act(s) reflected on the CDR must
be scored as a history item.  State disciplinary findings must be
scored unless there is documentation that the state disciplinary
proceedings did not afford due process protection to the inmate.

Severity of violence is determined by the offense behavior
regardless of the conviction/finding of guilt offense.  History
of Violence points combine both seriousness and recency of prior
violent incidents to assess the propensity for future violence.
Therefore, if there is more than one incident of violence, score
the combination of seriousness and recency that yields the
highest point score.  Prior periods of incarceration will be
considered a "history" item if the inmate was physically released
from custody and then returned to serve either a violation or a
new sentence.  In determining time frames, use the date of the
documented behavior.  Documented information from a juvenile,
Youth Corrections Act (YCA) or District of Columbia Youth
Rehabilitation Act (DCYRA) adjudication can be used unless the
record has been expunged or vacated.

Minor History of Violence - Aggressive or intimidating behavior
which is not likely to cause serious bodily harm or death (e.g.,

simple assault, fights, domestic disputes, etc.) There must be a finding of guilt.

Serious History of Violence - Aggressive or intimidating behavior which is likely to cause serious bodily harm or death (e.g., aggravated assault, domestic violence, intimidation involving a weapon, incidents involving arson or explosives, rape, etc.). There must be a finding of guilt.

**Example:** If an offender was found guilty of homicide 20 years ago and a simple assault 3 years ago, assign 5 points for the simple assault. Or in another case, the offender had guilty findings for homicide 12 years ago; aggravated assault 8 years ago; and fighting 2 years ago, score 6 points for the aggravated assault 8 years ago.

**NOTE:**     Attempted suicide, self-mutilation and possession of weapons are not applicable behaviors for History of Violence scoring. In addition, verbal threats (such as Code 203- Threatening Bodily Harm) are to be viewed as minor violence.

## 10.  HISTORY OF ESCAPE OR ATTEMPTS

| 10. HISTORY OF | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS | |
|---|---|---|---|---|---|---|---|
| ESCAPE OR | MINOR | 0 | 1 | 1 | 2 | 3 | |
| ATTEMPTS | SERIOUS | 0 | 3(S) | 3(S) | 3(S) | 3(S) | |

Enter the appropriate number of points that reflect the escape history of the individual considering only those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation). Escape history includes the individual's entire background of escapes or attempts to escape from confinement, or absconding from community supervision, excluding the current term of confinement.

**Exception:** Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item. DSCC staff must review the Chronological Disciplinary Record (CDR) for inmates who were previously housed in a federal institution or contract facility. Any escape(s) or attempt(s) reflected on the CDR must be scored as a history item. State disciplinary findings are to be scored unless there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Fleeing or Eluding Arrest, Failure to Appear for traffic violations, Absconding, runaways from foster homes and similar

P5100.08
9/12/2006
Chapter 4, Page 11

behavior should not to be scored under the Escape History item,
even if clearly documented, but should be considered on a case-
by-case basis under the Management Variable "Greater Security."
Failure to Appear or Flight to Avoid Prosecution for any offense
however, must be counted when there is a documented finding of
guilt.

In determining time frames, use the date of the documented
occurrence.  Documented information from a juvenile, YCA, or
DCYRA adjudication can be used unless the record has been
expunged or vacated.

Minor History of Escape - An escape from an open institution or
program (e.g., minimum security facility, CCC, furlough) not
involving any actual or threat of violence.  Also includes
military AWOL, Bail Reform Act, Flight to Avoid Prosecution, and
Absconding from Community Supervision.  There must be a finding
of guilt except as previously noted.

Serious History of Escape - An escape from secure custody with or
without threat of violence.  Also includes escapes from an open
facility or program with actual threat of violence.  There must
be a finding of guilt.  S = 3 points and requires application of
PSF L.

11. **TYPE OF DETAINER**

| 11. TYPE OF DETAINER | **0** = NONE | **3** = MODERATE | **7** = GREATEST | |
|---|---|---|---|---|
| | **1** = LOWEST/LOW MODERATE | **5** = HIGH | | |

Enter the appropriate number of points that reflect detainer
status.  Refer to the Offense Severity Scale, Appendix A.
Determination is based on the offense of the most serious
detainer.

- If there is a pending charge, points based on the
  documented behavior are assigned on the "Type of
  Detainer" item.  If the pending charges or detainer
  involve a probation violation, use the most severe
  documented behavior in the original offense as the
  basis for assigning points in scoring the detainer.

  If law enforcement officials indicate a firm intent to
  lodge a detainer, consider it lodged.  Score a
  concurrent state sentence as a detainer only if it is
  expected that the state sentence will exceed the
  federal sentence.  However, score consecutive state
  sentences, lodged state detainers, and/or state parole
  violation terms/warrants as detainers.

- Consecutive federal sentences are ordinarily not lodged as detainers because federal sentences are computed as they are received.  If there is more than one sentence, the most severe offense will be used as "Severity of Current Offense."

  **Example:** For an individual with two detainers for Violation of Firearms Act (Moderate severity level) and one for Extortion (High severity level), use High = 5 points and enter "5".

- No points will be awarded for U.S. Parole Commission warrants (adjudicated or unadjudicated).  However, the original offense behavior will be factored into the criminal history points and the violation behavior (including new offense behavior) will be scored as the instant offense.

- No points will be awarded for ICE detainers.  However, each case will be carefully reviewed to determine whether the PSF for Deportable Alien is applicable.

## 12.  AGE

| 12. AGE | **0** = 55 and over<br>**2** = 36 through 54 | **4** = 25 through 35<br>**8** = 24 or less | |
|---------|---------|---------|---|

SENTRY will automatically enter the appropriate number of points based on the inmate's date of birth.  Staff do not have to manually enter an offender's age or points on the BP-337.  If the offenders date of birth is unknown, SENTRY will default to a score of 4 points.

## 13.  EDUCATION LEVEL



| 13. EDUCATION<br>LEVEL | **0** = Verified High School Degree or GED<br>**1** = Enrolled in and making satisfactory progress in GED Program<br>**2** = No verified High School Degree/GED and not participating in GED Program | |
|---------|---------|---|
| 13a. HIGHEST GRADE COMPLETED _____ | | |

Enter the appropriate number of points that reflect the inmate's verified education level at the time of designation.

In addition to the points assigned for the education level, the highest grade completed (HGC) will also be recorded on the BP-337.  For example, an inmate who began, but did not complete the 7th grade will be given a 6 in the HGC field.  Similarly, a GED will be given a 12, a college graduate a 16, a Master's degree an 18, and a Ph.D. a 21 (the maximum allowed) in the HGC field.  The

value entered for the HGC should, unless missing, be consistent
with the points assessed for the inmates education level.  If
missing, enter a "U" for unknown.

## 14.  DRUG/ALCOHOL ABUSE

| 14. DRUG/ALCOHOL ABUSE | **0** = Never/>5 Years | **1** = <5 Years | |
|---|---|---|---|

Enter the appropriate number of points that reflect drug or
alcohol abuse by the inmate.  Examples of drug or alcohol abuse
include: a conviction of a drug or alcohol related offense, a
parole or probation violation based on drug or alcohol abuse,
positive drug test, a DUI, detoxification, etc.  Absent any
information similar to the above, an inmate's self-report is
sufficient to score this item.  If this information is unknown
enter a "U" and the item will be scored as zero.

## 15.  SECURITY POINT TOTAL

| 15. SECURITY POINT TOTAL | |
|---|---|

Enter the sum of Items 5 through 14.

## 16.  PUBLIC SAFETY FACTORS

| 16. PUBLIC SAFETY FACTORS | **A**-NONE<br>**B**-DISRUPTIVE GROUP (males only)<br>**C**-GREATEST SEVERITY OFFENSE (males only)<br>**F**-SEX OFFENDER<br>**G**-THREAT TO GOVERNMENT OFFICIALS<br>**H**-DEPORTABLE ALIEN | **I**-SENTENCE LENGTH (males only)<br>**K**-VIOLENT BEHAVIOR (females only)<br>**L**-SERIOUS ESCAPE<br>**M**-PRISON DISTURBANCE<br>**N**-JUVENILE VIOLENCE<br>**O**-SERIOUS TELEPHONE ABUSE | |
|---|---|---|---|

See Chapter 5, pages 7-13 for a description of Public Safety
Factors and their application.

## 17.  REMARKS

| 17. REMARKS |
|---|
| |
| |
| |

A brief explanation of the current offense(s) is required in the
"Remarks" section.  Similarly, Pre-Sentence Investigation Report
information relevant to other scoring items that may have an
impact on the designation process or the transportation of the
inmate (e.g., medical or psychiatric information, or arrest
behavior with no conviction) must also be noted in this section.
Refer to Appendix C, Standard Abbreviations/Terms.  Also, the

individual scoring the case will enter his or her initials at the
end of the "Remarks" section.

18. **OMDT REFERRAL**

| 18. OMDT REFERRAL (YES/NO) ____ |
| --- |

The Medical Designator, Office of Medical Designations
Transportation (OMDT), must review all cases in which there is a
physical or mental health concern.  Enter "Y" (yes) or N (no) in
this category.  The response will determine which daily log will
reflect the designation information.

## DESIGNATION AND SENTENCE COMPUTATION CENTER ACTION - INITIAL DESIGNATION

It is extremely important for Designators to communicate on a
regular basis to ensure that designation decisions are
consistent.  The Correctional Programs Division encourages the
need for communication and consistency to all Designators.

1. **FACILITY DESIGNATED.**  Enter the mnemonic code for the
institution  designated (Refer to "Enter Initial Designation,"
SENTRY General Use TRM).

2. **CUSTODY ASSIGNMENT.**  Enter the initial custody assignment in
accordance with Table 4-1.

**Table 4-1**

| LEVEL OF INSTITUTION INITIALLY DESIGNATED | INITIAL CUSTODY ASSIGNMENT |
| --- | --- |
| Minimum | OUT |
| Low | IN |
| Medium | IN |
| High | IN, unless initial designation is to USP Marion or ADX Florence, in which case the initial custody assignment is MAXIMUM. |
| Administrative | IN, unless inmate is Minimum security level and designation was not for security reasons, in which case the initial custody assignment is OUT. |

3.  **DESIGNATOR.**  The Designator will enter his or her initials.

4.  **REASON FOR DESIGNATION.**  Designators will use this section to document whether the primary reason for designation was for security reasons or for management reasons.

- Enter "S" if the inmate's security level is the primary reason for designation and the placement is within normal guidelines.  If "S" is entered, SENTRY will not permit an entry in the "Management Reason" field.

- Enter "M" if a Management Variable is the primary reason for designation and placement is outside normal guidelines.  When "M" is entered, you must enter the appropriate Management Variable(s) (e.g., B = Judicial Recommendation, D = Release Residence, etc.) under the Management Reason item.  While one MGTV is generally sufficient, a maximum of three MGTVs may be entered into SENTRY.  In the unlikely event that an inmate's designation facility is inconsistent with his or her MSL, at least one additional non-MSL MGTV must be added to support and explain the inconsistency.

- When it is necessary to place an inmate at a particular institution temporarily in order to receive a parole hearing, a secondary designation is required.  The DSCC will notify the Warden of the secondary institution via GroupWise.  Following the hearing, the institution where the inmate was first placed should review the secondary designation and contact the DSCC if the results of the hearing indicate that a change in the secondary designation is required.

5.  **MANAGEMENT VARIABLES.**  See Chapter 5, pages 1-6 for a description of Management Variables and their application.

6.  **REMARKS.**  The Designator will enter any relevant information not already recorded that may have an impact on the designation process or the transportation of the inmate.

P5100.08
9/12/2006
Chapter 4, Page 16

BP-337 **INMATE LOAD AND SECURITY DESIGNATION FORM**                    FEDERAL BUREAU OF PRISONS

| INMATE LOAD DATA | | | |
|---|---|---|---|
| 1. REGISTER NUMBER | | | |
| 2. LAST NAME | 3. FIRST NAME | 4. MIDDLE | 5. SUFFIX |
| 6. RACE | 7. SEX | 8. ETHNIC ORIGIN | 9. DATE OF BIRTH |
| 10. OFFENSE/SENTENCE | | | |
| 11. FBI NUMBER | | 12. SSN NUMBER | |
| 13. STATE OF BIRTH | 14. OR COUNTRY OF BIRTH | 15. CITIZENSHIP | |
| 16. ADDRESS-STREET | | | |
| 17. CITY | 18. STATE | 19. ZIP | 20. OR FOREIGN COUNTRY |
| 21. HEIGHT FT ___ IN ___ | 22. WEIGHT _____ LBS | 23. HAIR COLOR | 24. EYE COLOR |
| 25. ARS ASSIGNMENT | | | |

| SECURITY DESIGNATION DATA |
|---|

| 1. JUDGE | 2. REC FACILITY | 3. REC PROGRAM | 4. USM OFFICE |
|---|---|---|---|

**5. VOLUNTARY SURRENDER STATUS**      0 = NO      **(-3)** = YES

IF YES, MUST INDICATE: 5a. VOLUNTARY SURRENDER DATE: _____
                       5b. VOLUNTARY SURRENDER LOCATION: _____

**6. MONTHS TO RELEASE** _____

| 7. SEVERITY OF CURRENT OFFENSE | **0** = LOWEST **1** = LOW MODERATE | **3** = MODERATE **5** = HIGH | **7** = GREATEST |
|---|---|---|---|

| 8. CRIMINAL HISTORY SCORE | **0** = 0-1 **2** = 2-3 | **4** = 4-6 **6** = 7-9 | **8** = 10-12 **10** = 13 + |
|---|---|---|---|

8a. SOURCE OF DOCUMENTED _____ - PRESENTENCE INVESTIGATION REPORT or _____ - NCIC III
    CRIMINAL HISTORY

| 9. HISTORY OF VIOLENCE | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS |
|---|---|---|---|---|---|---|
| | MINOR | 0 | 1 | 1 | 3 | 5 |
| | SERIOUS | 0 | 2 | 4 | 6 | 7 |

| 10. HISTORY OF ESCAPE OR ATTEMPTS | | NONE | >15 YEARS | >10 YEARS | 5-10 YEARS | <5 YEARS |
|---|---|---|---|---|---|---|
| | MINOR | 0 | 1 | 1 | 2 | 3 |
| | SERIOUS | 0 | 3 (S) | 3(S) | 3(S) | 3(S) |

| 11. TYPE OF DETAINER | **0** = NONE **1** = LOWEST/LOW MODERATE | **3** = MODERATE **5** = HIGH | **7** = GREATEST |
|---|---|---|---|

| 12. AGE | **0** = 55 and over **2** = 36 through 54 | **4** = 25 through 35 **8** = 24 or less | |
|---|---|---|---|

13. EDUCATION LEVEL
    **0** = Verified High School Degree or GED
    **1** = Enrolled in and making satisfactory progress in GED Program
    **2** = No verified High School Degree/GED and not participating in GED Program

13a. HIGHEST GRADE COMPLETED _____

**14. DRUG/ALCOHOL ABUSE**      **0** = Never/>5 Years      **1** = <5 Years

**15. SECURITY POINT TOTAL**

| 16. PUBLIC SAFETY FACTORS | **A**-NONE **B**-DISRUPTIVE GROUP (males only) **C**-GREATEST SEVERITY OFFENSE (males only) **F**-SEX OFFENDER **G**-THREAT TO GOVERNMENT OFFICIALS **H**-DEPORTABLE ALIEN | **I**-SENTENCE LENGTH (males only) **K**-VIOLENT BEHAVIOR (females only) **L**-SERIOUS ESCAPE **M**-PRISON DISTURBANCE **N**-JUVENILE VIOLENCE **O**-SERIOUS TELEPHONE ABUSE | |
|---|---|---|---|

17. REMARKS

18. OMDT REFERRAL (YES/NO) _____

---

## MANAGEMENT VARIABLES AND PUBLIC SAFETY FACTORS

---

### MANAGEMENT VARIABLES

A Management Variable is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's scored security level.  Application of a Management Variable requires review and approval by the DSCC Administrator.  When completing the BP-338, institution staff may only enter a Management Variable which the DSCC previously approved and entered as a management reason.  Otherwise, the DSCC is the only office authorized to enter a variable.  A maximum of three Management Variables may be entered for each case.

**NOTE:**     SENTRY will not permit the simultaneous application of the Greater Security and Lesser Security MGTVs.

When a Management Variable no longer applies, institution staff will remove the variable(s) accordingly.  When no Management Variable is required, institution staff will insert the letter "A" (NONE) in the space to signify that no MGTV(s) apply.  Management Variables entered at initial designation are manually transferred to the BP-338, Custody Classification form.

**Request for Management Variable/Management Variable expiration date.**  All requests to apply a Management Variable (MGTV) or to update the Management Variable Expiration Date (MVED) must be submitted to the DSCC via GroupWise using the 409 form.  Requests for Management Variables on WITSEC inmates are to be forwarded to the Inmate Monitoring Section, Central Office, Washington, DC.  The following criteria will be utilized:

  Only the DSCC or Central Office staff can apply a MGTV and update a MVED, with the exception of "I" (Med/Psych), which will be applied and reviewed by the Central Office Medical Designator and "U" (Long-Term Detainee), which will be applied by the Detention Services Branch, Correctional Programs Division, Central Office.

  When requesting a MGTV or an updated MVED, only sections four and six need to be completed on the form 409.  This request should normally be made to the DSCC within 21 calendar days following the inmate's scheduled custody review to ensure the DSCC is receiving a current Custody Classification Form, BP-338.  After approval by the Warden, the request may be routed from the unit or shared folders, and unit staff must enter a DST assignment using the Update Transaction.  Staff will enter W MGTV

as a DST assignment when the request is routed.  DSCC staff will
remove the assignment when the decision is made.

   When requesting an updated MVED, staff are to indicate the
recommended expiration date on the top portion of form 409.

   When a case with the MGTV of "I" (Med/Psych) is scheduled for
review and it is anticipated that this MGTV is no longer
applicable, institution staff will complete all sections of form
409 and forward the request to the Central Office Medical
Designator and the DSCC.  The Central Office Medical Designator
will review the case for continuation or deletion of this MGTV.
If this MGTV is no longer appropriate, the Central Office Medical
Designator will remove the MGTV.  After the Central Office
Medical Designator removes the MGTV "I," the DSCC will review the
case for transfer.  If a transfer is not appropriate, another
MGTV is to be applied.

Expiration dates will be assigned in accordance with Table 5-1.
The DSCC Administrator must evaluate the information on the form
409 to determine the appropriate expiration date for all
applicable Management Variables.  At the established expiration
date, case management staff will review the current Management
Variable(s) to determine appropriateness.  In the rare instance
when more than one MGTV is applied, all expiration dates will be
displayed on the BP-338.  When running a SENTRY roster, each MGTV
and corresponding MVED will be displayed.

**Management Security Level (MSL).**  Upon application of any of the
following Management Variables: PSF Waived; Greater Security;
Lesser Security, the DSCC is to apply an overriding Management
Security Level (MSL) to reflect the inmate's assessed security
needs.  This MSL takes precedence over the security level
reflected in SENTRY which is based upon the scored security level
and the application of Public Safety Factors.  Designation must
be made to a DFCL commensurate with the inmate's security needs
as reflected in the Management Security Level.  **If there is an
extenuating circumstance in which an inmate's designation
facility is inconsistent with his or her MSL, at least one
additional non-MSL MGTV must be added to support and explain the
inconsistency.**

P5100.08
9/12/2006
Chapter 5, Page 3

**CODE**      **MGTV - DESCRIPTION**

**A**      **None.**  No Management Variables apply.  Institution staff are permitted to enter this item.

**B**      **Judicial Recommendation.** The sentencing court may recommend a specific institution or program.  When consistent with policies or when such actions are consistent with sound correctional management, the Bureau of Prisons attempts to satisfy judicial recommendations.  When this is not feasible, the court is notified in writing with an explanation outlining the reasons for not satisfying that recommendation.

**D**      **Release Residence.**  The Bureau of Prisons attempts to place each inmate in an institution that is reasonably close to the anticipated release area.  Ordinarily, placement within 500 miles of the release area is to be considered reasonable, regardless of whether there may be an institution closer to the inmate's release area. This MGTV may also apply to inmates who are within 36 months of release.

**E**      **Population Management.**  Situations may occur in which an inmate requires housing in a facility which is not commensurate with his or her security level.  Following are example situations: facility activation; population pressures affecting available appropriate-level bed space within 500 miles of the inmate's anticipated release residence; gang/security concerns.

**G**      **Central Inmate Monitoring Assignment.**  Pursuant to the CIM Program Statement, some inmates, for specified reasons, need to be monitored or separated from others. Sometimes these special management concerns limit the options for placement.

**I**      **Medical or Psychiatric.**  An inmate who has a history of or is presently exhibiting psychiatric problems may need an initial designation to a psychiatric referral center.  Similarly, documented information reflecting that the inmate may need medical or surgical treatment may require a designation to a medical referral center. Designations and redesignations of these inmates will be made by the Central Office Medical Designator.

P5100.08
9/12/2006
Chapter 5, Page 4

**CODE      MGTV - DESCRIPTION**

**N**        **Program Participation.**  Occasionally, inmates become
           involved in specialized programs which are only
           available on a limited basis, or at specific
           institutions; in such instances, it might be
           appropriate to delay transfer pending completion of the
           program.  Likewise, an inmate's ability to participate
           in a unique program may require placement at an
           institution not commensurate with his or her security
           level.  Accordingly, when an inmate's security level
           changes during participation in a special program not
           likely to be available in another appropriate facility,
           causing placement outside normal guidelines, this MGTV
           will apply.

**R**        **Work Cadre.**  At secure facilities without satellite
           camps, the Regional Director may authorize a certain
           number of work cadre inmates to perform work outside
           the perimeter of the institution.  The DSCC will apply
           the MGTV upon request of the institution.

**S**        **PSF Waived.**  An inmate may receive up to three Public
           Safety Factors (PSFs).  PSFs may be waived after review
           and approval by the DSCC Administrator.   When Public
           Safety Factors are waived causing placement outside
           normal guidelines, this MGTV will apply.  Application
           of this MGTV mandates that the DSCC Administrator
           determine the most appropriate level of security
           required by the inmate and apply a Management Security
           Level (MSL).  The MSL must be at least one level less
           than the scored security level which is based on the
           Security Total and PSF(s).

           **Request for Public Safety Factor Waiver.**  Only the DSCC
           Administrator is authorized to waive a PSF.  A request
           for waiver of a PSF will be submitted to the DSCC via
           form 409, available on SALLYPORT.  The form 409 will
           indicate that the request is for waiver of a Public
           Safety Factor.  Items 1 through 7 must be completed
           when submitting a request for waiver of a PSF.

**U**        **Long-term Detainee.**  Long-term detainees are given an
           initial custody and security level.  However, Custody
           Classification Forms are not to be completed on long-
           term detainees due to the unavailability or non-
           applicability of certain data (i.e., current term of
           confinement, length of time remaining to serve,
           accurate criminal history).  Therefore, transfers for

positive or negative behavior may cause placement in a facility different from his or her scored security or custody level.  When needed, this MGTV will be applied by the Detention Services Branch, Correctional Programs Division, Central Office.

Long-term criminal detainees whose security or custody level does not match that of their facility will have this Management Variable applied.  This applies as well if an inmate rolls over to the status of a long-term detainee after being ordered detained upon expiration of the federal sentence and the security or custody level does not match that of the designated facility.

**V**          **Greater Security**.  There may be security concerns which are not adequately reflected in the classification scheme.  In circumstances where an inmate represents a greater security risk (i.e., pending charges, detainer, escape risk, etc.) than their assigned security level, they may be placed in an institution outside normal guidelines, and this MGTV will apply.  When this MGTV is applied based on institutional behavior which is **not** supported by a UDC/DHO finding of guilt, staff will ensure compliance with the criteria as set forth in the Program Statement on Inmate Discipline and Special Housing Units.  Application of this MGTV mandates the DSCC Administrator determine the most appropriate level of security required by the inmate and apply a Management Security Level (MSL).  Designation will then be made to a DFCL commensurate with the inmate's Management Security Level.  The MSL must be at least one level greater than the scored security level which is based on the Security Total and Public Safety Factor(s).  This MGTV requires up to a 24 month expiration date.

**W**          **Lesser Security**.  There may be security concerns which are not adequately reflected in the classification scheme.  In circumstances where an inmate represents a lesser security risk (i.e., detainer removed, positive adjustment, etc.) than the assigned security level, the inmate may be placed in an institution outside normal guidelines.  For example, where age is largely the contributing factor in the inmate's placement, this Management Variable will apply.  Application of this MGTV mandates the DSCC Administrator to determine the most appropriate level of security required by the inmate and apply a Management Security Level (MSL). The MSL must be at least one level less than the scored

security level which is based on the Security Total and Public Safety Factor(s).

**DISCONTINUED MANAGEMENT VARIABLES.** The following Management Variables have been discontinued: C - Age, F - Racial Balance, H - Voluntary Surrender, J - Custody, K - Detainer, L - Discipline, M - Grandfather Clause, O - Security, P - Sentence Limitation, and Q - Sliding Scale.

**Table 5-1**

| MANAGEMENT VARIABLE EXPIRATION TABLE | | |
|---|---|---|
| CODE | DESCRIPTION | LENGTH |
| A | None | N/A |
| B | Judicial Recommendation | N/A |
| D | Release Residence/Planning | N/A |
| E | Population Management | Up to 18 months** |
| G | Central Inmate Monitoring Assignment | N/A |
| I | Medical/Psychiatric | 6 months |
| N | Program Participation | Up to 18 months, at the discretion of the Regional Director** |
| R | Work Cadre | N/A |
| S | PSF Waived* | N/A (However, if an inmate is transferred to a more secure institution based on behavior related to the waived PSF, this MGTV will be removed.) |
| U | Long-Term Detainee | N/A |
| V | Greater Security* | Up to 24 months** |
| W | Lesser Security* | N/A |
| * requires application of a Management Security Level (MSL) ** if no expiration date is entered, SENTRY will default to an expiration date 12 months in advance | | |

## PUBLIC SAFETY FACTORS

A Public Safety Factor (PSF) is relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public.  Public Safety Factors are normally applied on the Inmate Load and Security Designation Form (BP-337) prior to an inmate's initial assignment to an institution, however, additions or deletions may be made at anytime there after via the Custody Classification Form, (BP-338).  A maximum of three PSFs may be applied, however if more than three apply, those which would provide the greatest security and public safety will be utilized.

**CODE          PSF - DESCRIPTION**

**A**            **None.**  No Public Safety Factors apply.

**B**            **Disruptive Group.**  A **male** inmate who is a validated
                member of a Disruptive Group identified in the Central
                Inmate Monitoring System will be housed in a High
                security level institution, unless the PSF has been
                waived.

                At the time of initial designation, if the Presentence
                Investigation Report or other documentation identifies
                the inmate as a possible member of one of the Central
                Inmate Monitoring Disruptive Groups, DSCC staff will
                enter a PSF on the BP-337.  However, DSCC staff will
                not enter the CIM assignment "Disruptive Group."  Upon
                loading this PSF on a not-yet-validated member, DSCC
                staff will (1) make a notation in the Remarks Section
                to indicate the need for validation upon arrival at the
                institution, and (2) notify the Central Office
                Intelligence Section, via GroupWise, to advise them of
                the inmate's status.  Upon the inmate's arrival at the
                designated institution, the intake screener will notify
                the institution's Special Investigation Supervisor of
                the inmate's PSF, to initiate the validation process.

**C**            **Greatest Severity Offense.**  A **male** inmate whose current
                term of confinement falls into the "Greatest Severity"
                range according to the Offense Severity Scale (Appendix
                A) will be housed in at least a Low security level
                institution, unless the PSF has been waived.

P5100.08
9/12/2006
Chapter 5, Page 8

**CODE        PSF - DESCRIPTION**

F           **Sex Offender.**  A **male** or **female** inmate whose behavior
            in the current term of confinement or prior history
            includes one or more of the following elements will be
            housed in at least a Low security level institution,
            unless the PSF has been waived.  A conviction is not
            required for application of this PSF if the Presentence
            Investigation Report (PSR), or other official
            documentation, clearly indicates the following behavior
            occurred in the current term of confinement or prior
            criminal history.  If the case was dismissed or nolle
            prosequi, application of this PSF cannot be entered.
            However, in the case where an inmate was charged with
            an offense that included one of the following elements,
            but as a result of a plea bargain was not convicted,
            application of this PSF should be entered.

            **Example:**  According to the PSR, the inmate was
            specifically described as being involved in a Sexual
            Assault but pled guilty to Simple Assault.  Based on
            the documented behavior, application of this PSF should
            be entered:

            (1)  Engaging in sexual contact with another person
            without obtaining permission to do so (forcible rape,
            sexual assault or sexual battery);

            (2)  Possession, distribution or mailing of child
            pornography or related paraphernalia;

            (3)  Any sexual contact with a minor or other person
            physically or mentally incapable of granting consent
            (indecent liberties with a minor, statutory rape,
            sexual abuse of the mentally ill, rape by administering
            a drug or substance);

            (4)  Any sexual act or contact not identified above
            that is aggressive or abusive in nature (e.g., rape by
            instrument, encouraging use of a minor for prostitution
            purposes, incest, etc.).  Examples may be documented by
            state or Bureau of Prisons' incident reports, clear
            NCIC entries, or other official documentation;

            (5)  Attempts are to be treated as if the sexual act or
            contact was completed; and/or,

            (6)  Any offense referenced in the Sex Offender
            Notification and Registration Program Statement.

P5100.08
9/12/2006
Chapter 5, Page 9

| CODE | PSF - DESCRIPTION |
|------|-------------------|

**G**      **Threat to Government Officials.**  A **male** or **female** inmate classified with a Central Inmate Monitoring assignment of Threat to Government Official will be housed in at least a Low security level institution, unless the PSF has been waived.

**H**      **Deportable Alien.**  A male or female inmate who is not a citizen of the United States.  All long-term detainees will have this PSF applied.  When applied, the inmate or the long-term detainee shall be housed in at least a Low security level institution.

The PSF shall not be applied, or shall be removed when the U.S. Immigration and Customs Enforcement (ICE) or the Executive Office for Immigration Review (EOIR) have determined that deportation proceedings are unwarranted or there is a finding not to deport at the completion of deportation proceedings.  The Institution Hearing Program CMA of NO IHP or IHP CMP ND will then be applied.  Additionally, the PSF shall not be applied if the inmate has been naturalized as a United States citizen.

**I**      **Sentence Length.**  A **male** inmate with more than ten years remaining to serve will be housed in at least a Low security level institution unless the PSF has been waived.

A **male** inmate with more than 20 years remaining to serve will be housed in at least a Medium security level institution, unless the PSF has been waived.

A **male** inmate with more than 30 years remaining to serve (including non-parolable LIFE sentences) will be housed in a High security level institution unless the PSF has been waived.

**K**      **Violent Behavior.**  A **female** inmate whose current term of confinement or history involves two convictions (or findings of commission of a prohibited act by the DHO) for serious incidents of violence within the last five years will be assigned to at least a Low security level institution, unless the PSF has been waived.

P5100.08
9/12/2006
Chapter 5, Page 10

**CODE        PSF - DESCRIPTION**

**L**        **Serious Escape.**  A **female** inmate who has been involved
            in a serious escape within the last ten years,
            including the current term of confinement, will be
            assigned to the Carswell Administrative Unit, unless
            the PSF has been waived.

            A **male** inmate who has escaped from a secure facility
            (prior or instant offense) with or without the threat
            of violence or who escapes from an open institution or
            program with a threat of violence will be housed in at
            least a Medium security level institution, unless the
            PSF has been waived.

**M**        **Prison Disturbance.**  A **male** or **female** inmate who was
            involved in a serious incident of violence within the
            institution and was found guilty of the prohibited
            act(s) of Engaging, Encouraging a Riot, or acting in
            furtherance of such as described in, but not limited to
            institution disciplinary codes such as 103, 105, 106,
            107, 212, 213 or 218.  Such a finding must be in
            conjunction with a period of simultaneous institution
            disruptions.  Males will be housed in at least a HIGH
            security level institution and females will be assigned
            to the Carswell Administrative Unit, unless the PSF has
            been waived.

**N**        **Juvenile Violence.**  A **male** or **female** offender,
            currently of juvenile age, who has any documented
            single instance of violent behavior, past or present,
            which resulted in a conviction, a delinquency
            adjudication, or finding of guilt.  Violence is defined
            as aggressive behavior causing serious bodily harm or
            death or aggressive or intimidating behavior likely to
            cause serious bodily harm or death (e.g., aggravated
            assault, intimidation involving a weapon, or arson).

**O**        **Serious Telephone Abuse.**  A **male** or **female** inmate who
            utilizes the telephone to further criminal activities
            or promote illicit organizations and who meets the
            criteria outlined below, must be assigned a PSF for
            Serious Telephone Abuse.  A conviction is **not required**
            for the PSF if the Presentence Investigation Report
            (PSR) or other official documentation clearly indicates
            that the above behavior occurred or was attempted.  An
            inmate who meets this criteria must be housed in at

least a Low security level institution, unless the PSF
is waived.

The PSF should be entered if any **one** of the following
criteria applies.

(1)    PSR or comparable documentation reveals the inmate
       was involved in criminal activity facilitated by
       the telephone who:

       ● meets the definition of a leader/organizer or
         primary motivator; or

       ● utilized the telephone to communicate threats
         of bodily injury, death, assaults, or
         homicides; or

       ● utilized the telephone to conduct significant
         fraudulent activity (actual or attempted) in
         an institution; or

       ● leader/organizer who utilized the telephone
         to conduct significant fraudulent activity
         (actual or attempted) in the community; or,

       ● arranged narcotic/alcohol introductions while
         confined in an institution.

(2)    Federal law enforcement officials or a U.S.
       Attorney's Office notifies the Bureau of Prisons
       of a significant concern and need to monitor an
       inmate's telephone calls;

(3)    The inmate has been found guilty of a 100 or 200
       level offense code for telephone abuse.

       **NOTE:**     200 level offense codes will be reviewed
                     on a case-by-case basis.

(4)    A Bureau of Prisons official has reasonable
       suspicion and/or documented intelligence
       supporting telephone abuse.

       **NOTE:**     Any inmate who is assigned the Serious
                     Telephone Abuse PSF may be subject to
                     telephone restriction in accordance with
                     the <u>Telephone Regulations for Inmates</u>
                     Program Statement.

**DISCONTINUED PUBLIC SAFETY FACTORS**

**D**     Firearms     **E**  High Drug     **J**  Designation Assessment

**Table 5-2**

| SECURITY DESIGNATION TABLE (MALES) | | |
|---|---|---|
| INMATE SECURITY LEVEL ASSIGNMENTS BASED ON CLASSIFICATION SCORE AND PUBLIC SAFETY FACTORS | | |
| Security Point Total | Public Safety Factors | Inmate Security Level |
| **0 - 11** | **No Public Safety Factors** | **Minimum** |
| | Deportable Alien | Low |
| | Juvenile Violence | Low |
| | Greatest Severity Offense | Low |
| | Sex Offender | Low |
| | Serious Telephone Abuse | Low |
| | Threat to Government Officials | Low |
| | Sentence Length | |
| |   Time remaining > 10 Yrs | Low |
| |   Time remaining > 20 Yrs | Medium |
| |   Time remaining > 30 Yrs (Includes non-parolable LIFE and Death penalty cases) | High |
| | Serious Escape | Medium |
| | Disruptive Group | High |
| | Prison Disturbance | High |
| **12 - 15** | **No Public Safety Factors** | **Low** |
| | Serious Escape | Medium |
| | Sentence Length | |
| |   Time remaining > 20 Yrs | Medium |
| |   Time remaining > 30 Yrs (Includes non-parolable LIFE and Death penalty cases) | High |
| | Disruptive Group | High |
| | Prison Disturbance | High |
| **16 - 23** | **No Public Safety Factors** | **Medium** |
| | Disruptive Group | High |
| | Prison Disturbance | High |
| | Sentence Length | |
| |   Time remaining > 30 Yrs (Includes non-parolable LIFE and Death penalty cases) | High |
| **24 +** | | **High** |

**Table 5-3**

| SECURITY DESIGNATION TABLE (FEMALES) | | |
|---|---|---|
| INMATE SECURITY LEVEL ASSIGNMENTS BASED ON CLASSIFICATION SCORE AND PUBLIC SAFETY FACTORS | | |
| Security Point Total | Public Safety Factors | Inmate Security Level |
| **0 - 15** | **No Public Safety Factors** | **Minimum** |
| | Deportable Alien | Low |
| | Juvenile Violence | Low |
| | Serious Telephone Abuse | Low |
| | Sex Offender | Low |
| | Threat to Government Officials | Low |
| | Violent Behavior | Low |
| | Prison Disturbance | High |
| | Serious Escape | High |
| **16 - 30** | **No Public Safety Factors** | **Low** |
| | Prison Disturbance | High |
| | Serious Escape | High |
| **31 +** | | **High** |

# CUSTODY CLASSIFICATION FORM INSTRUCTIONS (BP-338)

**INTRODUCTION.**  Custody classification is a procedure whereby an inmate is assigned a level of supervision according to their criminal history and institutional behavior/adjustment.  An inmate's custody level is an indication of how much staff supervision an inmate requires within and beyond the confines of the institution.

An inmate's first custody classification will be scored at the first program review following initial classification (approximately 7 months after arrival at an institution).  Subsequent reviews will occur at least every 12 months, but may be conducted earlier in order to enable progress toward community activities. Custody classification will ordinarily occur every 12 months at a regularly scheduled program review.  Only changes which increase or decrease the overall security level assignment of the inmate, i.e. FRP refuse, incident report(s), new sentence, sentence reduction etc., should be scored outside of the 12 month cycle.

When transferring to another institution, inmates normally retain their custody assignments.  If the custody level is inconsistent with that authorized at the receiving institution, the sending institution will change the inmate's custody prior to transfer.  Holdovers will retain their initial custody level assignments until their first regularly scheduled custody review at their designated facility for service of sentence.

At each annual custody review, a new Custody Classification Form (BP-338) will be completed, even though the scoring elements may not have changed from the previous form.  Only the most current BP-338 form will be retained in the Inmate Central File, except for those forms that must be retained to document appropriate review and approval for custody reductions (e.g., custody reductions for exception cases require the Warden, or designee, to sign the Custody Classification Form.  The form should be maintained to document the review and approval).  As set forth in the definition of "Maximum" custody, Chapter 2, a BP-338 form changing an inmate's custody to or from "Maximum" custody must be permanently maintained.

It should be clearly understood that the Custody Classification Form only recommends an inmate's custody.  The Unit Team and/or Warden is the final review authority.  The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines.  Custody changes are not

dictated solely by the point total.  However, when the Unit Team
decides not to follow the recommendation of the point total, they
must document the reason(s) for this decision in writing on the
Custody Classification Form, and inform the inmate.

| A. IDENTIFYING DATA | | |
|---|---|---|
| 1. INSTITUTION CODE | 2. UNIT | 3. DATE |
| 4. NAME | | 5. REGISTER NUMBER |

| 6. MANAGEMENT VARIABLES | A – NONE<br>B – JUDICIAL RECOMMENDATION<br>D – RELEASE RESIDENCE/PLANNING<br>E – POPULATION MANAGEMENT | G – CIMS<br>I – MED/PSYCH TREATMENT<br>N – PROGRAM PARTICIPATION<br>R – WORK CADRE | S – PSF WAIVED<br>U – LONG-TERM DETAINEE<br>V – GREATER SECURITY<br>W – LESSER SECURITY | |
|---|---|---|---|---|
| 7. PUBLIC SAFETY FACTORS | A – NONE<br>B – DISRUPTIVE GROUP (males only)<br>C – GREATEST SEVERITY OFFENSE (males only)<br>F – SEX OFFENDER<br>G – THREAT TO GOVERNMENT OFFICIALS<br>H – DEPORTABLE ALIEN | I – SENTENCE LENGTH (males only)<br>K – VIOLENT BEHAVIOR (females only)<br>L – SERIOUS ESCAPE<br>M – PRISON DISTURBANCE<br>N – JUVENILE VIOLENCE<br>O – SERIOUS TELEPHONE ABUSE | | |

1.  **INSTITUTION CODE.**  (Automatically displayed by SENTRY.)

2.  **UNIT.** (Automatically displayed by SENTRY.)

3.  **DATE.** (Automatically displayed by SENTRY.)

4.  **NAME.** (Automatically displayed by SENTRY.)

5.  **REGISTER NUMBER.** (Automatically displayed by SENTRY.)

6.  **MANAGEMENT VARIABLES.**  See Chapter 5, pages 1-6.

7.  **PUBLIC SAFETY FACTORS.** See Chapter 5, pages 7-13.

| B.  BASE SCORING |
|---|

1.  **TYPE OF DETAINER**

| 1. TYPE OF DETAINER | 0 = NONE<br>1 = LOWEST/LOW MODERATE | 3 = MODERATE<br>5 = HIGH | 7 = GREATEST | |
|---|---|---|---|---|

Enter the appropriate number of points that reflect the inmate's
detainer status.  Refer to the Offense Severity Scale (Appendix
A).  If multiple detainers have been filed, enter the point value
for the most serious charge.  Frequency and sentence length are
not considered.

The scoring of detainers on the Inmate Load and Security
Designation Form (BP-337) may differ from the score received on
the Custody Classification Form (BP-338).  If there is a pending
charge, points based on the documented behavior are assigned on

P5100.08
9/12/2006
Chapter 6, Page 3

the type of detainer item; if the pending charge involves a
probation violation, use the most severe documented behavior from
the original offense as the basis for assigning points in the
detainer scoring.  Only formally filed detainers are considered
on the Custody Classification Form after the second regularly
scheduled custody review.

- Score consecutive state sentences, lodged state detainers
  and/or state parole violation terms/warrants as detainers.
  Inmates should be informed that it is vitally important that
  all pending charges and detainers be resolved as quickly as
  possible so that institution programming and release
  planning can occur.

- Score concurrent state sentences, as a detainer only if it
  is expected that the state sentence will exceed the federal
  sentence and the state has formally filed a detainer.  Other
  formally filed state pending charges, consecutive sentences,
  and/or parole violation term/warrants will be scored as
  detainers.  Points will be assigned the same as they would
  be for a federal violation (see page 4 of this Chapter for
  further instructions).

- No points will be awarded for U.S. Parole Commission
  warrants (adjudicated or unadjudicated).  However, the
  original offense behavior will be factored into the criminal
  history points and the violation behavior (including new
  offense behavior) will be scored as the current offense.

- No points will be assigned for ICE detainers.  However, each
  case will be carefully reviewed to determine whether the PSF
  for Deportable Alien is applicable.

- If a formally filed detainer involves a probation violation,
  use the most severe documented behavior in the original
  offense as the basis for assigning points in the detainer
  scoring chart above.

## 2.  SEVERITY OF CURRENT OFFENSE

| 2. SEVERITY OF CURRENT OFFENSE | 0 = LOWEST<br>1 = LOW MODERATE | 3 = MODERATE<br>5 = HIGH | 7 = GREATEST | |
|---|---|---|---|---|

Enter the appropriate number of points that reflect the most
severe documented instant offense behavior.  For multiple
offenses, the highest score will be used when scoring the current
offense.  Staff will consider the offense behavior of all
sentences, including federal sentences that have a future

beginning date or a prior state or D.C. sentence if there was no physical release from custody.

Severity is determined by using the Offense Severity Scale (Appendix A).  Do not use instant offense behavior to also assign points on the "history" items on the Custody Classification Form.

**Example:**  According to the Presentence Investigation Report, the individual was involved in an Assault With Serious Injury (Greatest severity level) but pled guilty to a Simple Assault (Moderate severity level).  Assign the points on the basis of the more severe documented behavior, i.e., assign 7 points (Greatest severity level).  Do not use the current term of confinement information to assign points on the "history" items (numbers 5 and 6 on the Security Designation Data section of the BP-337).

**In determining "Severity of Current Offense" staff must review the <u>Statement of Reasons</u>, (attachment to the Judgment) and ensure the information provided is appropriately used in classifying the inmate.**

**Example:**  According to the Presentence Investigation Report the individual was involved in a drug conspiracy responsible for distribution of 31 grams of cocaine base "Crack", but was individually only responsible for 2 grams, he/she would be scored as Moderate Severity in this category.  However, the **STATEMENT OF REASONS**, indicates the Judge found the individual responsible for less than 1 gram; therefore, the appropriate scoring should be Low Moderate Severity.

- **Procedures for Parole, Mandatory Release, Special Parole Term, or Supervised Release Violator**

  If the violation was the result of new criminal conduct, regardless of conviction status, use the new criminal conduct for scoring "Severity of Current Offense" (see Appendix A).  If the violation behavior was a technical violation, score the "Severity of Current Offense" as Low Moderate Severity.

  The original offense behavior which occurred prior to the violation is considered past behavior and is not used in determining "Severity of Current Offense."

- **Procedures for Probation Violator**

   The original offense behavior that resulted in probation should be used for scoring "Severity of Current Offense" (see Appendix A).

   However, if the new criminal conduct (violation behavior) is more severe than the original offense behavior, then use this behavior for scoring "Severity of Current Offense." The most severe documented behavior between the original offense and the violation behavior is to be used for scoring "Severity of Current Offense."

## 3. MONTHS TO RELEASE DATE

| 3. MONTHS TO RELEASE | _____ |
|---|---|

If there is a current and valid sentence computation in SENTRY, SENTRY will automatically enter the number of months remaining into this field.  If however, there is not a complete Sentence Computation/Projected Release Date in SENTRY, this entry must be manually computed.  This item is not figured into the security point total but impacts the Sentence Length Public Safety Factor.

## 4. CRIMINAL HISTORY SCORE

| 4. CRIMINAL HISTORY SCORE | **0** = 0-1  **2** = 2-3 | **4** = 4-6  **6** = 7-9 | **8** = 10-12  **10** = 13 + | |
|---|---|---|---|---|

SENTRY will automatically insert the score that was entered for this item on the BP-337.  If this item was not entered on the BP-337, insert the appropriate number of points that reflect the Criminal History Score.  For further details on Criminal History Score see Chapter 4, Section 8.

## 5. HISTORY OF ESCAPE OR ATTEMPTS

| 5. HISTORY OF ESCAPE OR ATTEMPTS | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS | |
|---|---|---|---|---|---|---|---|
| | MINOR | 0 | 1 | 1 | 2 | 3 | |
| | SERIOUS | 0 | 3(S) | 3(S) | 3(S) | 3(S) | |

Enter the appropriate number of points that reflect the escape history of the individual, considering only those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation).  Escape History includes the individual's entire background of escapes or attempts to escape from confinement, or absconding from community supervision, excluding the current term of confinement.

P5100.08
9/12/2006
Chapter 6, Page 6

**EXCEPTION:**        Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item.

State disciplinary findings are scored unless there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Fleeing or Eluding Arrest, Failure to Appear for traffic violations, runaways from foster homes and similar behavior should not be scored under the Escape History item, even if clearly documented, but should be considered on a case-by-case basis under the Management Variable "Greater Security." Failure to Appear or Flight to Avoid Prosecution for any offense however, must be counted when there is a documented finding of guilt.

In determining time frames, use the date of the documented occurrence. Documented information from juvenile or YCA adjudications can be used unless the record has been expunged or vacated.

Minor History of Escape - An escape from an open institution or program (e.g., minimum security facility, CCC, furlough) not involving any actual or threat of violence. Also includes military AWOL, Bail Reform Act, Flight to Avoid Prosecution, and Absconding from Community Supervision. There must be a finding of guilt.

Serious History of Escape - An escape from secure custody with or without threat of violence. Also includes escapes from an open facility or program with actual threat of violence. There must be a finding of guilt. S = 3 points and requires application of PSF L.

6. **HISTORY OF VIOLENCE**

| 6. HISTORY OF VIOLENCE | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS | |
|---|---|---|---|---|---|---|---|
| | MINOR | 0 | 1 | 1 | 3 | 5 | |
| | SERIOUS | 0 | 2 | 4 | 6 | 7 | |

Enter the appropriate number of points that reflect any history of violence, considering only those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation). This item includes the individual's entire background of criminal violence, excluding the current term of confinement.

P5100.08
9/12/2006
Chapter 6, Page 7

**EXCEPTION:**     Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item.

State disciplinary findings are scored unless there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Severity of violence is determined by the offense behavior regardless of the conviction/finding of guilt offense.  History of Violence points combine both seriousness and recency of prior violent incidents to assess the propensity for violent behavior, where more points mean greater risk.  Therefore, if there is more than one incident of violence, score the combination of seriousness and recency that yields the highest point score. Prior periods of incarceration will be considered a "history" item if the inmate was physically released from custody and then returned to serve either a violation or a new sentence.  In determining time frames, use the date of the documented behavior. Documented information from juvenile or YCA adjudication can be used unless the record has been expunged or vacated.

Minor History of Violence -  Aggressive or intimidating behavior which is not likely to cause serious bodily harm or death (e.g., simple assault, fights, domestic disputes, etc.) There must be a finding of guilt.

Serious History of Violence -  Aggressive or intimidating behavior which is likely to cause serious bodily harm or death (e.g., aggravated assault, domestic violence, intimidation involving a weapon, incidents involving arson or explosives, rape, etc.).  There must be a finding of guilt.

**Example:**  If an offender was found guilty of homicide 20 years ago and a simple assault 3 years ago, assign 5 points for the simple assault.  Or in another case, the offender had guilty findings for homicide 12 years ago; aggravated assault 8 years ago; and fighting 2 years ago, score 6 points for the aggravated assault 8 years ago.

**NOTE:**     Attempted suicide, self-mutilation and possession of weapons are not applicable behaviors for History of Violence scoring.  In addition, verbal threats (such as Code 203- Threatening Bodily Harm) are to be viewed as minor violence.

7.   **VOLUNTARY SURRENDER**

| | | |
|---|---|---|
| 7. VOLUNTARY SURRENDER | **0** = NOT APPLICABLE      **(-3)** = VOLUNTARY SURRENDER | |

This item allows for the subtraction of three points from the "Base Score" (Item 11 below), when the Judgement indicates the inmate was ordered to voluntarily surrender.  Enter the appropriate number of points.  For purposes of this item, voluntary surrender means the inmate was not escorted by a law enforcement officer to either the U.S. Marshals Office or the place of confinement.

**NOTE:**      Supervised Release, Mandatory Release, and Parole Violators will not receive credit for Voluntary Surrender even if it is approved by the court.

8.   **AGE**

| | | |
|---|---|---|
| 8. AGE | **0** = 55 and over       **4** = 25 through 35<br>**2** = 36 through 54     **8** = 24 or less | |

SENTRY will automatically cross-reference the inmate's date of birth and assign the appropriate number of points that reflect his or her age.  Staff do not have to manually enter an offender's age.

9.   **EDUCATIONAL LEVEL**

| | | |
|---|---|---|
| 9. EDUCATION LEVEL | **0** = Verified High School Degree/GED<br>**1** = Enrolled in and making satisfactory progress in GED Program<br>**2** = No verified High School Degree/GED & not participating in GED<br>        Program | |

Enter the appropriate number of points, that reflect the inmate's education level as verified by the Education Department.

**NOTE:**      The scoring of this item on the Custody Classification form differs from the scoring on the Security Designation form.  Therefore, unit staff must reconcile information obtained since the inmate's previous score on this item.

In addition to the points assigned for the education level, the highest grade completed (HGC) will also be recorded on the BP-337.  For example an inmate who began but did not complete the 7th grade will be given a 6 in the HGC field.  Similarly, a GED will be given a 12, a college graduate a 16, a Master's degree an 18, and a Ph.D. a 21 (the maximum allowed) in the HGC field.

## 10.  DRUG/ALCOHOL ABUSE

| 10. DRUG/ALCOHOL ABUSE  **0** = Never/>5 Years | **1** = <5 Years | |
|---|---|---|

Enter the appropriate number of points that reflect drug or alcohol abuse by the inmate.  Examples of drug or alcohol abuse include: a conviction of a drug or alcohol related offense, a parole or probation violation based on drug or alcohol abuse, positive drug test, a DUI, detoxification, etc.  Absent any information similar to the above, an inmate's self report is sufficient to score this item.  If this information is unknown, enter a "U" and the item will be scored as zero.

## 11.  BASE SCORE

| 11. BASE SCORE (ADD B. ITEMS 1 - 10) | |
|---|---|

SENTRY will compute the base score based upon the points entered for Items 1 - 10 (excluding Item 3).  In cases where the total results in a negative number the base score will be set at zero.

## C. CUSTODY SCORING

## 1.  PERCENTAGE OF TIME SERVED

| 1. PERCENTAGE OF<br>    TIME SERVED | **3** = 0-25%<br>**4** = 26-75% | **5** = 76-90%<br>**6** = 91+% | |
|---|---|---|---|

Enter the number of points that reflect the percentage of time the inmate has already served on the present commitment at the time of the review.  To determine the percent, divide the number of months already served on the present sentence by the number of months of incarceration the inmate will have served upon reaching his/her projected release date.  If applicable, give credit for jail time.

**Example:**  An inmate has served 15 months (14 months at the institution, plus credit for one month jail time) of an anticipated total of 78 months of confinement.

$$\frac{\text{Actual Time Served}}{\text{Anticipated Time in Confinement}} = \frac{15}{78} = 19.2\%$$

Enter "3" , since 3 represents a range of 0 to 25%.

## 2.  **PROGRAM PARTICIPATION**

| 2. PROGRAM PARTICIPATION | **0** = POOR | **1** = AVERAGE | **2** = GOOD | |
|---|---|---|---|---|

Enter the appropriate number of points that reflect the inmate's
level of initiative in programming.  This is based on the
inmate's active program involvement, eg. RPP, FRP, Drug education
or Treatment Programs, education programs, or any other suitable
programs as recommended by the Unit Team.  Unit Teams should
score this area at the time of the custody review so input may be
gained from all classification team members.

**NOTE:**      Inmates in "FRP Refuse", "RPP Refuse", or who refuse to
             participate in mandatory drug education or treatment
             programs will be scored with 0 points regardless of any
             other programs achievements.  Otherwise, assign points
             as follows:

GOOD - The inmate actively participates in multiple recommended
programs.

AVERAGE - The inmate could be participating in multiple
recommended programs but chooses to be involved in one at a time.
This also includes inmates who are on official waiting lists for
programs recommended by the Unit Team.

POOR - No program involvement, refuses to participate, or poor
participation in programs in which he/she is enrolled.

## 3. **LIVING SKILLS**

| 3. LIVING SKILLS | **0** = POOR | **1** = AVERAGE | **2** = GOOD | |
|---|---|---|---|---|

Enter the appropriate number of points that reflect the inmate's
living skills during the past 12 months.  This is based on the
inmate's demeanor, attitude, personal accountability and nature
of interaction with staff and other inmates.  Incident Reports in
and of themselves are not the determining factor in assessing the
points on this item;  however, the underlying behavior(s) may
influence the scoring of this item.  Unit Teams should score this
item at the time of the custody review so input may be gained
from all classification team members.

**NOTE:**      Inmates in "FRP Refuse", "RPP Refuse", or who refuse to
             participate in mandatory drug education or treatment
             programs will be scored with 0 points regardless of any
             other programs achievements.  Otherwise, assign points
             as follows.

GOOD - The inmate fully complies with staff expectations.
He/she consistently receives outstanding sanitation and work
reports and impresses staff as a "model inmate" in all other
aspects of adjustment.  He/she has developed a good rapport with
staff.  This high level of responsibility is consistent
throughout the year.

While behavior(s) of a minor concern may occur occasionally, they
do not detract from the inmate's overall favorable performance.
He/she is perceived by staff as attempting to program in a
positive manner.  Some examples of such behavior(s) are as
follows:

- Rare property/sanitation related counseling necessary;
  however, not as the result of or leading to an Incident
  Report or extra duty;

- Work reports that are excellent overall, though not all
  evaluation elements are rated as "outstanding;" and,

- Uncharacteristic instances of staff reported negative
  interactions or behavior that do not result in Incident
  Reports.

AVERAGE - The inmate generally complies with staff expectations
although falls short of providing a full and complete effort.
He/she has been counseled about sanitation, work performance
and/or other aspects of adjustment; however, the inmate is not
viewed as problematic.  The inmate's rapport with staff is
satisfactory.  The inmate presents well personally; however,
he/she fails to display any significant motivation for
self-improvement.

POOR - The inmate consistently fails to meet staff expectations
as evidenced by poor quarters sanitation, personal hygiene,
negative interaction with staff/peers, or poor work reports.

4. **TYPE AND NUMBER OF MOST SERIOUS INCIDENT REPORT(S)**

| 4. TYPE & NUMBER OF MOST SERIOUS INCIDENT RPT | **0** = ANY GREAT (100) IN PAST 10 YRS | **3(A)**= 1 MOD (300) IN PAST YR |
|---|---|---|
| | **1** = > 1 HIGH (200) IN PAST 2 YRS | **3(B)**= >1 LOW MOD (400) IN PAST YR |
| | **2(A)**= 1 HIGH (200) IN PAST 2 YRS | **4** = 1 LOW MOD (400) IN PAST YR |
| | **2(B)**= > 1 MOD (300) IN PAST YR | **5** = NONE |

Enter the points that reflect the most serious Incident Report(s)
received by the inmate.  This is determined by using the
Institution Disciplinary Codes and Sanctions Severity Scale.
Points are assigned based on the most severe Incident Report(s)
for which the inmate has been found guilty by either the Unit
Disciplinary Committee (UDC) or the Discipline Hearing Officer

(DHO), within the specified time frames.  Points are to be
assigned only for the current period of incarceration.

**NOTE:**      Disciplinary findings while an inmate is housed under
               BOP authority in non-BOP correctional facilities should
               be scored if received during the current period of
               incarceration unless there is documentation that the
               disciplinary proceeding(s) did not afford due process
               protection to the inmate.

**Example:**  If an inmate has been found guilty of three HIGH
severity Incident Reports within the past two years, he/she would
receive a score of "1."  If the inmate has only received one HIGH
severity incident report within the past two years, the inmate
would receive a score of "2(a)."

**NOTE:**      Greatest severity Incident Reports merit a score of "0"
               regardless of the total number received in the last ten
               years.

The letter characters assigned to numerical scores 2 and 3 are
merely used to differentiate between these items which have
identical numerical values.  The letter character is not used for
computation.

**NOTE:**      For supervised release, mandatory release, and parole
               violators, Incident Reports received during a previous
               period of confinement should be used, if they apply,
               for scoring "History of Escape or Violence," and
               "Drug/Alcohol Abuse."  However, Incident Reports
               received during a previous period of confinement will
               not be counted when scoring "Type and Number of Most
               Serious Incident Reports" and "Frequency of Incident
               Reports" since this behavior occurred during a previous
               period of confinement.  Only Incident Reports received
               during the current supervised release and parole
               violator term will be counted in these categories.

5.  **FREQUENCY OF INCIDENT REPORTS**

| 5. FREQUENCY OF INCIDENT REPORTS (IN PAST YEAR) | **0** = 6+ <br> **1** = 2 THRU 5 | **2** = ONE <br> **3** = NONE | |
|---|---|---|---|

Enter the appropriate number of points that reflect the frequency
of Incident Reports.

This is determined by assigning points based on the number of
Incident Reports for which the inmate has been found guilty by

either the Unit Discipline Committee or the Discipline Hearing
Officer during the past 12 months.

6. **FAMILY/COMMUNITY TIES**

| 6. FAMILY/COMMUNITY TIES | **3** = NONE OR MINIMAL | **4** = AVERAGE OR GOOD | |
|---|---|---|---|

Enter the number of points that reflect the level of family and
community ties.  This is based on the inmate's efforts to build,
maintain and strengthen family/community ties rather than the
unilateral efforts of the family/community to provide support and
assistance to the inmate.  Consideration should be given to the
following:

- Financial support (not to include FRP participation);

- Visiting (consider inmate's efforts in establishing visiting
  list, frequency of visits, and who is visiting);

- Development of phone list with focus on family, employment,
  and community;

- Sending and receiving regular correspondence;

- Participation in Institution Release Preparation Program and
  institution sponsored mock job fairs;

- Involvement in parenting program and other family oriented
  activities;

- Contacts with social service providers to promote/enhance
  family stability (i.e., school guidance counselors, welfare
  workers, treatment providers);

- Contact with Prisoner Visitation Services;

- Participation in institution sponsored community service
  opportunities (i.e., Toys for Tots, Make a Wish Foundation,
  community gardens, Special Olympics); and,

- Voluntary involvement with community activities.

Score each inmate based on his/her unique circumstances while
focusing on what the inmate does to maintain, build or strengthen
these ties.  To best accomplish this, Unit Teams should score
this item at the custody review so input can be gained from all
classification team members and possibly even the inmate.

**Examples:**

Inmates who demonstrate no initiative to further and/or enhance relationships with supportive parents/spouse/children should be scored as "none or minimal." (e.g., visiting and phone lists that do not include family members, no effort to provide financial support for children);

Inmates with limited financial resources who have parents/spouse/children living significant distances from their designated facilities, and request to have these family members placed on their visiting and phone lists, and send and receive frequent letters from family and make phone calls to them when funds are available.  These inmates score as "average or good;" and,

Inmates with no surviving parents, siblings, spouse, or children may receive an "average or good" rating by developing contacts through Prisoner Visitation Services (PVS) and participation in community based activities and community service opportunities.

7. **CUSTODY TOTAL**

| 7. CUSTODY TOTAL (ADD C. 1 - 6) | |
| --- | --- |

Add the points in items 1 through 6, Section C, and enter the sum in this block.

8. **CUSTODY VARIANCE**

| 8. CUSTODY VARIANCE (FROM APPROPRIATE TABLE ON BP-338, PAGE 2) | |
| --- | --- |

The Custody Variance adjusts the inmate's total security points as specified in Tables 6-1(M) and 6-1(F) based upon the inmates custody score.  If the appropriate table indicates a value other than zero the application of the Custody Variance will:

• add points to the base score, thus raising the security level and increasing the custody (when the value is positive); or,

• subtract points from the base score, thus lowering the security level and decreasing the custody (when the value is negative).

**Table 6-1(M)**

| Male Custody Variance Table | | CUSTODY TOTAL | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| B A S C O R E | 0-11 | +4 | +4 | +3 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | -1 | -1 | -2 | -3 | -4 | -5 | -5 |
| | 12-15 | +4 | +4 | +3 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | 0 | -1 | -2 | -3 | -4 | -5 | -5 |
| | 16-23 | +8 | +6 | +5 | +4 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | -1 | -1 | -2 | -2 | -3 |
| | 24+ | +8 | +6 | +5 | +4 | +4 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | 0 | -1 | -1 | -2 | -3 |

**Example:**  A male inmate has a Base Score of 17 points and a
Custody Total of 11 points.  By using the Custody Variance
Matrix, the intersecting point for these two items is +3.  Thus,
+3 is the Custody Variance score that will be entered on Item 8,
Section C.

**Table 6-1(F)**

| Female Custody Variance Table | | CUSTODY TOTAL | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| B A S C O R E | 0-15 | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | -2 | -4 | -8 | -12 | -16 |
| | 16-30 | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | 0 | -4 | -8 | -12 | -16 |
| | 31+ | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | 0 | 0 | -1 | -5 | -8 |

**Example:**  A female inmate has a Base Score of 17 points and a
Custody Total of 11 points.  By using the Custody Variance
Matrix, the intersecting point for these two items is +2.  Thus,
+2 is the Custody Variance score that will be entered on Item 8,
Section C.

9.  **SECURITY TOTAL**

| 9. SECURITY TOTAL (ADD OR SUBTRACT CUSTODY VARIANCE (C.8) TO BASE SCORE (B.10)) | |
|---|---|

Apply the Custody Variance Score to the Base Score, and enter the
result on Item 10, Section C.

**Example:**  An inmate has a Base Score of 16 and a Custody Variance
Score of +4.  By applying +4 to 16, a Security Total of 20 is
obtained and entered on Item 9, Section C.

**NOTE:**      If the Custody Variance score is 0, the figure entered
               will be exactly the same as the Base Score.  If the
               application of the Custody Variance to the Base Score
               results in a negative number, use 0.

10.  **SCORED SECURITY LEVEL**

| 10. SCORED SECURITY LEVEL _____ |
|---|

An inmate's Security Level is determined by the Security Total
and any applicable Public Safety Factors (see Chapter 5).

11.  **MANAGEMENT SECURITY LEVEL (MSL)**

| 11. MANAGEMENT SECURITY LEVEL _____ |
|---|

A Security Level which is entered by the DSCC or Central Office
upon application of any of the three MSL Management Variables
(PSF Waived, Greater Security, Lesser Security).  The MSL
overrides the inmate's scored security level.  If there was a
previously entered MSL, it will automatically appear in this
position.

12.  **CUSTODY CHANGE CONSIDERATION**

To determine eligibility for a custody change, the following
procedures apply:

- If the Custody Variance Score (Section C, Item 8) is in
  the positive (+) range, consider a custody increase;

- If the Custody Variance Score (Section C, Item 8) is 0,
  the inmate's present custody is continued; or,

- If the Custody Variance Score (Section C, Item 8) is in
  the negative (-) range, consider a custody decrease.

| SECTION D.   INSTITUTION ACTION |
|---|

1.  **TYPE OF REVIEW**

| 1. TYPE OF REVIEW    (EXCEPTION OR REGULAR) | |
|---|---|

An inmate should be handled as an exception case if there is
documentation of the following:

- **Public Safety Factors**.  Any inmate with a PSF.  If the PSF has been waived the case is still considered an exception;

- **Central Inmate Monitoring Assignment**.  An inmate with a CIM assignment, excluding state prisoners and separation cases; or,

- **Other**.  The Warden may specify in writing other offenses or cases that require exception review.

If the inmate does not meet any of the above criteria the "Type of Review" will be "Regular."  For Regular Cases, the Unit Team has authority to make custody assignments, and the Unit Manager is the signature authority on the BP-338.  For Exception Cases, the Warden or designee is the approving official and retains signature authority for the BP-338 whenever there is a decrease in custody.  Unit staff will indicate on the BP-338 form the reason for the Exception Case, only in those instances in which the unit team will make a recommendation for a reduction in custody level.

2.  **CURRENT CUSTODY**

| 2. CURRENT CUSTODY  (MAXIMUM, IN, OUT, COMMUNITY) | |
|---|---|

Check the proper code for the inmate's current custody:

    MAX = MAXIMUM, IN = IN, OUT = OUT, COM = COMMUNITY

3.  **NEW CUSTODY**

| 3. NEW CUSTODY  (MAXIMUM, IN, OUT, COMMUNITY) | |
|---|---|

Check the proper code for the inmate's new custody:

    MAX = MAXIMUM, IN = IN, OUT = OUT, COM = COMMUNITY

As indicated below, the Custody Classification Form only recommends; the final decision rests with the review authority. With the exceptions noted previously in Item 1, Type of Review, the Unit Team has the following options:

**Table 6-2**

| BP-338 FORM RECOMMENDS | CLASSIFICATION TEAM OPTIONS |
|---|---|
| Custody Increase(+) range | Increase custody one level<br>or<br>Continue same custody assignment and document why |
| Custody Decrease(-) range | Decrease custody one level<br>or<br>Continue same custody assignment and document why |
| Continue Present Custody | Continue same custody assignment<br>or<br>(Refer to the Warden, see below) |

The custody level should normally be reduced or increased by only
one level (i.e., a reduction of IN would be to OUT, not to
COMMUNITY; an increase from COMMUNITY would be to OUT, not to
IN).  However, an exception regarding increases can be made for
disciplinary cases involving prohibited acts of the Greatest
Severity or escape, provided it is justified by the Unit Team in
a memo to the inmate's central file with a copy to the inmate.

Additionally, transfer to a CCC may require the custody level to
be decreased more than one level.  If the inmate is receiving a
custody reduction solely for the purpose of transferring to a
CCC, a new Custody Classification Form (BP-338) does not need to
be completed.  Approval for a decrease to COMMUNITY custody is
granted by virtue of the Warden's approval and signature on the
Institution Referral for CCC Placement (BP-210).

While it is mandatory that COMMUNITY custody be effected at the
time of transfer, it may not be appropriate to reduce the
inmate's custody level prior to the date of transfer (e.g., it
would not be appropriate for an IN custody inmate at a MEDIUM
security level institution to have COMMUNITY custody while still
housed at the institution).  In such cases, upon receipt of a CCC
acceptance date, a SENTRY future assignment would be established
for the date of transfer.  The effective time for the reduction
would be 12:01 AM.  An inmate must be assigned COMMUNITY custody
status prior to transfer to a CCC.

If the Custody Variance (Section C, Item 8) is zero (Continue
Present Custody), and the Unit Team believes that there is a
compelling reason to change the inmate's custody, the Unit Team
will refer the case to the Warden, who is the deciding official.

4.  **ACTION**

| 4. ACTION:     (APPROVE, DISAPPROVE) | |
|---|---|

For exception cases only, the Warden or designee should check the appropriate box indicating either approval or disapproval of the Unit Team's decision.  If the Warden disagrees with the form, he/she will indicate the reasons on the 338 form.  For regular cases, the Unit Manager will take this action.

5.  **DATE OF NEXT REVIEW**

| 5. DATE OF NEXT REVIEW | |
|---|---|

Enter the month and year of the next scheduled review.

6.  **CHAIRPERSON**

| 6. CHAIRPERSON |
|---|
| NAME AND SIGNATURE |

The Unit Manager will print his or her name and sign the form in the space provided.

7.  **EXCEPTION REVIEW**

| 7. EXCEPTION REVIEW |
|---|
| NAME (WARDEN OR DESIGNEE) AND SIGNATURE |

This item is reserved for the Warden or designee's printed name and signature if the inmate is an exception case as defined in Item 1 of this section.  If the Warden or designee disapproves, the reason will be documented on the Custody Classification Form (BP-338) and a copy provided to the inmate.

8.  **SUMMARY OF FINAL ACTION**

| 8. SUMMARY OF FINAL ACTION: | SECURITY LEVEL | |
|---|---|---|
| | CUSTODY | |

After all action is complete (exception cases signed off, etc.,) the final outcome will be entered.  Upon completion, the form is to be filed in the Inmate Central File, Section 2, and the appropriate custody assignment updated in SENTRY.

P5100.08
9/12/2006
Chapter 6, Page 20

BP-338 **CUSTODY CLASSIFICATION FORM**          **U.S. DEPARTMENT OF JUSTICE**
**PAGE 1**                                      **FEDERAL BUREAU OF PRISONS**

| A.     I D E N T I F Y I N G     D A T A | | |
|---|---|---|
| 1. INSTITUTION CODE | 2. UNIT | 3. DATE |
| 4. NAME | 5. REGISTER NUMBER | |

| 6. MANAGEMENT | **A** - NONE | **G** - CIMS | **S** - PSF WAIVED | |
|---|---|---|---|---|
| VARIABLES | **B** - JUDICIAL RECOMMENDATION | **I** - MED/PSYCH TREATMENT | **U** - LONG TERM DETAINEE | |
| | **D** - RELEASE RESIDENCE/PLANNING | **N** - PROGRAM PARTICIPATION | **V** - GREATER SECURITY | |
| | **E** - POPULATION MANAGEMENT | **R** - WORK CADRE | **W** - LESSER SECURITY | |

| 7. PUBLIC | **A** - NONE | **I** - SENTENCE LENGTH (males only) | |
|---|---|---|---|
| SAFETY | **B** - DISRUPTIVE GROUP (males only) | **K** - VIOLENT BEHAVIOR (females only) | |
| FACTORS | **C** - GREATEST SEVERITY OFFENSE (males only) | **L** - SERIOUS ESCAPE | |
| | **F** - SEX OFFENDER | **M** - PRISON DISTURBANCE | |
| | **G** - THREAT TO GOVERNMENT OFFICIALS | **N** - JUVENILE VIOLENCE | |
| | **H** - DEPORTABLE ALIEN | **O** - SERIOUS TELEPHONE ABUSE | |

| B.     B A S E     S C O R I N G | | | | |
|---|---|---|---|---|
| 1. TYPE OF DETAINER | **0** = NONE | **3** = MODERATE | **7** = GREATEST | |
| | **1** - LOWEST/LOW MODERATE | **5** = HIGH | | |
| 2. SEVERITY OF CURRENT | **0** = LOWEST | **3** = MODERATE | **7** = GREATEST | |
| OFFENSE | **1** = LOW MODERATE | **5** = HIGH | | |
| 3. MONTHS TO RELEASE _____ | | | | |
| 4. CRIMINAL HISTORY | **0** = 0-1 | **4** = 4-6 | **8** = 10-12 | |
| SCORE | **2** = 2-3 | **6** = 7-9 | **10** = 13 + | |
| 5. HISTORY OF ESCAPE | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | 0 <5 YEARS |
| OR ATTEMPTS | MINOR | **0** | **1** | **1** | **2** | **3** |
| | SERIOUS | **0** | **3(S)** | **3(S)** | **3(S)** | **3(S)** |
| 6. HISTORY OF | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS |
| VIOLENCE | MINOR | **0** | **1** | **1** | **3** | **5** |
| | SERIOUS | **0** | **2** | **4** | **6** | **7** |
| 7. VOLUNTARY SURRENDER STATUS **0** = NOT APPLICABLE      **(-3)** = VOLUNTARY SURRENDER | | | | |
| 8. AGE | **0** = 55 and over | **4** = 25 through 35 | | |
| | **2** = 36 through 54 | **8** = 24 or less | | |
| 9. EDUCATION LEVEL | **0** - Verified High School Degree/GED | | | |
| | **1** = Enrolled in and making satisfactory progress in GED Program | | | |
| | **2** = No verified High School Degree/GED & not participating in GED Program | | | |
| 10. DRUG/ALCOHOL ABUSE | **0** = Never/>5 Years | **1** = <5 Years | | |
| 11. BASE SCORE (ADD $B. ITEMS 1 - 10) | | | | |

| C. CUSTODY SCORING | | | |
|---|---|---|---|
| 1. PERCENTAGE OF | **3** = 0-25% | **5** = 76-90% | |
| TIME SERVED | **4** = 26-75% | **6** = 91+% | |
| 2. PROGRAM PARTICIPATION | **0** = POOR | **1** = AVERAGE | **2** = GOOD |
| 3. LIVING SKILLS | **0** = POOR | **1** = AVERAGE | **2** = GOOD |
| 4. TYPE & NUMBER | **0** = ANY GREAT (100) IN PAST 10 YRS | **3(A)**- 1 MOD (300) IN PAST YR | |
| OF MOST | **1** = > 1 HIGH (200) IN PAST 2 YRS | **3(B)**- >1 LOW MOD (400) IN PAST YR | |
| SERIOUS | **2(A)**- 1 HIGH (200) IN PAST 2 YRS | **4** - 1 LOW MOD (400) IN PAST YR | |
| INCIDENT RPT | **2(B)**- > 1 MOD (300) IN PAST YR | **5** - NONE | |
| 5. FREQUENCY OF | **0** = 6+ | **2** = ONE | |
| INCIDENT REPORTS | **1** = 2 THRU 5 | **3** = NONE | |
| (IN PAST YEAR) | | | |
| 6. FAMILY/COMMUNITY TIES | **3** = NONE OR MINIMAL | **4** = AVERAGE OR GOOD | |
| 7. CUSTODY TOTAL (ADD $ C. 1 - 6) | | | |
| 8. CUSTODY VARIANCE (FROM APPROPRIATE TABLE ON BP-338, PAGE 2) | | | |
| 9. SECURITY TOTAL (ADD OR SUBTRACT CUSTODY VARIANCE (§ C.8) TO BASE SCORE (§ B.11) | | | |
| 10. SCORED SECURITY LEVEL _____ | 11.  MANAGEMENT SECURITY LEVEL _____ | | |

**BP-338 CUSTODY CLASSIFICATION FORM**          **U.S. DEPARTMENT OF JUSTICE**
**PAGE 2**                                       **FEDERAL BUREAU OF PRISONS**

| SECTION D:   INSTITUTION ACTION | |
|---|---|
| 1.  TYPE OF REVIEW:    (EXCEPTION OR REGULAR) | |
| 2.  CURRENT CUSTODY:  (MAXIMUM, IN, OUT, COMMUNITY) | |
| 3.  NEW CUSTODY:  (MAXIMUM, IN, OUT, COMMUNITY) | |
| 4.  ACTION:      (APPROVE, DISAPPROVE) | |
| 5.  DATE OF NEXT REVIEW | |
| 6.  CHAIRPERSON | NAME AND SIGNATURE |
| 7.  EXCEPTION REVIEW | NAME (WARDEN OR DESIGNEE) AND SIGNATURE |
| 8.  SUMMARY OF FINAL ACTION:            SECURITY LEVEL | |
|                                          CUSTODY | |

| CUSTODY CHANGE RECOMMENDATIONS BASED ON CUSTODY VARIANCE | |
|---|---|
| IF CUSTODY VARIANCE IS IN THE (+) RANGE | CONSIDER A CUSTODY INCREASE |
| IF CUSTODY VARIANCE IS IN THE (-) RANGE | CONSIDER A CUSTODY DECREASE |
| IF CUSTODY VARIANCE IS ZERO | CONTINUE PRESENT CUSTODY |

**Male Custody Variance Table** — CUSTODY

| BASE SCORE | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0-11 | +4 | +4 | +3 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | -1 | -1 | -2 | -3 | -4 | -5 | -5 |
| 12-15 | +4 | +4 | +3 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | 0 | -1 | -2 | -3 | -4 | -5 | -5 |
| 16-23 | +8 | +6 | +5 | +4 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | -1 | -1 | -2 | -2 | -3 |
| 24+ | +8 | +6 | +5 | +4 | +4 | +3 | +2 | +1 | +1 | +1 | 0 | 0 | 0 | -1 | -1 | -2 | -3 |

**Female Custody Variance Table** — CUSTODY

| BASE SCORE | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0-15 | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | -2 | -4 | -8 | -12 | -16 |
| 16-30 | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | 0 | -4 | -8 | -12 | -16 |
| 31+ | +15 | +11 | +7 | +4 | +3 | +2 | +1 | +1 | 0 | 0 | 0 | 0 | 0 | 0 | -1 | -5 | -8 |

### INMATE TRANSFER

**TRANSFER PROCEDURES.**  Transfers (also known as redesignations) are used to move inmates from one institution to another as needed, with each type of transfer having a specific objective. The following are some of the more frequent reasons for a transfer:

- institution classification;
- nearer release;
- disciplinary/close supervision;
- adjustment;
- medical/psychological treatment;
- temporary transfers;
- training purposes/program participation;
- Institution Hearing Program;
- pre-release; and,
- transfers from CCC's.

After review and approval by the Unit Team, a transfer request is submitted via the Request for Transfer/Application of Management Variable (409) to the DSCC.  The procedures for completing the 409 are outlined below and may only be waived or modified with the approval of the Assistant Director, Correctional Programs Division, Washington, D.C. or his/her designee.

1.  **Inmate's Medical Status.**  Include current, complete, and accurate available information concerning any medical problem that might affect redesignation;

2.  **Institution Adjustment.**  Include a brief description of the inmate's adjustment during this period of incarceration with emphasis on recent adjustment;

3.  **Rational for Referral.**  Include a complete, specific justification and support for the requested action;

4.  **Parole Hearing Scheduled.**  Indicate whether or not the inmate is eligible for a parole hearing.  If yes, indicate the date of the hearing.  (See SALLYPORT for a current listing of parole/non-parole institutions).

5.  **Past or Present Behavior and/or Management Concerns.**  Note any past or present behavior and/or management concerns which may affect placement (i.e., history of arrests or disruptive behavior

which may not have resulted in a conviction, inmates preference
regarding this request, etc.).  Also note any Security Threat
Group concerns/associations.  In addition, it is necessary for
staff to closely review each case submitted for any CIM concerns.
Any CIM concerns should be noted on the 409 if applicable.
However, it is not necessary for staff to route a Request for CIM
Activity Clearance with each transfer request since CIM activity
clearance is included in the redesignation for all CIM
assignments except WITSEC cases.  Redesignations between same
security level institutions are discouraged, except for CIM
purposes, nearer release purposes, or other unusual
circumstances.  Copies of all transfer requests for Disruptive
Group Members will be forwarded to the Intelligence Section,
Central Office, via GroupWise upon approval of the transfer.
Additionally, the institution Special Investigative Supervisor
should also receive a copy of the transfer request; and

   6.  **BP-337/BP-338 Discrepancies**.  Include a brief description
of any scoring changes between the BP-337 and BP-338.

   Complete all required information, then route the request
through normal institutional review channels for approval by the
CEO.  After approval by the CEO, it may be routed to the DSCC
Administrator from the unit's mailbox.  The Unit Team will enter
the appropriate "DST" assignment (see below) into SENTRY as
confirmation that a redesignation request has been submitted to
the DSCC or OMDT.  Enter this SENTRY assignment under the "DST"
category using the "Update Inmate Assignment" transaction.

- Enter "W REDES R" if the transfer request is for a
  routine transfer.

- Enter "W REDES M" if the transfer request requires a
  review by the OMDT (Medical Designator).

   Once the e-mail requesting redesignation is received, DSCC
staff will at a minimum review the following SENTRY transactions
to determine if the inmate is appropriate for redesignation:

        CIM Clearance and Separatee Data;
        Inmate Load Data;
        Inmate Profile;
        Custody Classification Form;
        Security/Designation Data Form; and,
        Chronological Disciplinary Record.

   If the transfer is approved, DSCC staff will enter the
information and the appropriate destination (DST) assignment in
SENTRY on the "Enter Redesignation" screen and will also note the

approved institution transfer code.  The method of transportation
is at the discretion of the Warden.  Should a change in DST be
required, DSCC staff will make the change in SENTRY prior to the
inmate's arrival at the designated institution.

If the transfer is denied, DSCC staff will indicate the denial
on the "Update Inmate Remarks" screen and will also delete the
"W REDES" from SENTRY.  Unit staff should closely monitor SENTRY
for deletions of the "W REDES" transaction.

1.  **INSTITUTION CLASSIFICATION TRANSFERS.**  These transfers are
typically referred to as either "Lesser Security" (Code 308)
transfers or "Greater Security" (Code 307) transfers.

   a.  **Security Level Changes**

      (1) When a decrease in the inmate's security level is
      indicated by the Custody Classification Form, transfer of
      the inmate to a lower security level institution should be
      considered.

      (2) Likewise, an increased security level may be indicated
      in a similar fashion.  The security total may increase to a
      higher security level range.

If an updated security scoring, combined with Public Safety
Factors, indicate that an inmate is rated at a different security
level, the inmate must be referred to the DSCC for either
transfer or application of a Management Variable.  For example,
if an inmate in a Low security level institution is reclassified
to Minimum security, the case must be referred for transfer or
application of a Management Variable.  If transfer is denied,
DSCC staff will apply an appropriate Management Variable and add
a Management Security Level, if applicable.

   b.  **Custody Level Changes**.  During an inmate's custody review,
a custody level may be increased or decreased (ordinarily, only
one level at a time) indicating a transfer is appropriate.  For
example:

      (1)  A Medium security level inmate has OUT custody, and
      becomes eligible for COMMUNITY custody.  If the Unit Team
      decides to reduce custody, the inmate would normally be
      referred for redesignation to a Low or Minimum security
      level facility, since Medium security level institutions do
      not house COMMUNITY custody inmates.  If approved for
      transfer by the DSCC, the Management Variable of Lesser
      Security will be applied and the Management Security Level
      will be changed accordingly.

(2)  An inmate's transfer to a higher security institution
could be triggered by an increase in custody needs.  For
example, a Medium security level inmate with IN custody
becomes eligible for a custody increase.  The team agrees to
increase the custody to Maximum.  Since Medium security
level facilities are not authorized to house Maximum custody
inmates, the inmate must be referred for transfer to a High
security level institution and the MSL changed in accordance
with the application of an MGTV.

2.  **NEARER RELEASE TRANSFERS (Code 313)**.  Nearer release
transfers move the inmate closer to their legal residence or
release destination, consistent with their security level.
Inmates may be considered for a nearer release transfer only
after serving 18 consecutive months of clear conduct in a general
population.  Nearer release transfers should be incorporated with
"Lesser Security" transfers whenever possible.  Once the inmate
has been transferred within 500 miles of his or her release
residence, no further referrals will be made for nearer release
transfer consideration.

Transfer to a facility in an area other than the inmate's legal
residence or sentencing district may be considered by the
inmate's Unit Team provided the inmate can provide strong
evidence of community and/or family support.  Institution staff
should use sound correctional judgment when reviewing such
requests for transfer to ensure the transfer is consistent with
guidelines established in this chapter.

Inmates with an Order for Deportation, an Order of Removal, an
ICE detainer for an unadjudicated offense(s) or an ICE detainer
for a hearing will not be transferred for nearer release purposes
since they will be returning to the community outside, rather
than inside, the United States upon release.

3.  **WITSEC TRANSFERS**.  All movement of Witness Security cases is
coordinated exclusively through the Inmate Monitoring Section of
the Correctional Programs Branch, Central Office.  Witness
Security cases will not be transferred without authorization from
that office.  Witness Security inmates who require medical or
mental health treatment at a medical center must also be approved
by the Medical Designator.

  If the inmate is classified as a WITSEC case, a copy of the
medical referral will be sent simultaneously to the Inmate
Monitoring Section (IMS) and the Medical Designator.  The Inmate
Monitoring Section will coordinate with the OMDT regarding an
appropriate placement.  Placement will be based on available
medical resources, security needs, bed space availability, and

the inmate's need for medical care.  IMS will enter activity
clearances for WITSEC cases.

4.  **DISCIPLINARY/CLOSE SUPERVISION TRANSFERS (Codes 309/323)**.  An
act(s) of documented institution misconduct may result in an
inmate's transfer to another institution, normally of greater
security, for disciplinary reasons.  Wardens may recommend same
security level transfers only when placement at a greater
security level institution is not possible or other overriding
circumstances exist.

   Disciplinary or Close Supervision transfer requests will be
sent electronically to the DSCC Administrator and contain the
following information:

        (a)   Request for Transfer/Application of Management Variable
              (must be thorough and specific);

        (b)   Close Supervision investigation report, if requested;
              and,

        (c)   Intelligence data or supporting memorandum if
              requested.

 Institution staff should carefully review the management of
309/323 cases on an individual basis, applying sound correctional
judgment that considers the safety and security of the inmate,
the institution and its staff and the community.

5.  **ADJUSTMENT TRANSFERS (Code 330)**.  All transfer referrals
submitted as Code 330 transfers for adjustment purposes will be
reviewed by the DSCC.  Adjustment purposes transfer requests will
be sent electronically to the DSCC Administrator via Form 409.
DSCC staff will ensure that the transfer does not meet the
requirements of an unverified protection transfer, Code 323.

6.  **MEDICAL AND PSYCHIATRIC TRANSFERS (Codes 331-336 and
338, 339)**.  Medical designations and transfers are approved by
the Central Office Medical Designator, Office of Medical
Designations and Transportation (OMDT).  The Central Office
Medical Designator assigns inmates to Medical Referral Centers
(MRC), institutions with medical resources, or non-Bureau
community care centers to provide needed medical services.
Medical redesignations are initiated for inmates with acute
medical, surgical, or psychiatric condition, or for those inmates
who have chronic care needs that cannot be addressed at the
parent institution.  Transfers will be classified as either (a)
Emergency, (b) Routine/Urgent, or (c) Routine.

If an inmate objects, either in writing or through his or her attorney, to a transfer for psychiatric/mental health treatment, the provisions of 18 U.S.C. § 4245 may apply.  Staff will suspend transfer action in such cases and refer the matter to their Regional Counsel for review.  The Regional Counsel will notify the institution when the transfer action can be re-instituted.

a.  **Emergency Transfer** - An emergency transfer is a medical, surgical, or psychiatric situation determined by medical/mental health staff that requires immediate, direct transportation. This includes inmates not medically or psychiatrically capable of transport via routine BOP air/surface transportation, e.g., bus, commercial air, or USMS/Bureau airlift.  Direct transportation is defined as air ambulance, air charter, or ground ambulance and, in some instances, an institution vehicle may be utilized.

b.  **Routine/Urgent Transfer** - A routine/urgent transfer is initiated for medical, surgical, or psychiatric treatment that is not an emergency, however must be transported directly to a MRC, typically within two to three weeks of designation.

Routine urgent transfers require direct transfer to the MRC because of the acuity of their medical, surgical, or psychiatric condition, or because MRC-based services need to be initiated within an appropriate time frame.  Holdover housing at a county jail or Bureau general population institution is not permissible.

c.  **Routine Transfer** - A routine transfer is initiated for medical, surgical, or psychiatric treatment that is not an emergency and time en-route is not a major factor.  Routine transfers may travel by any available means.

d.  **Procedures for Initiating Emergency, Routine/Urgent, and Routine Transfer Requests.**  All transfer requests for medical, surgical, or psychiatric designations will be initiated via GroupWise on the Medical/Surgical and Psychiatric Referral Request Form (BP-770) available on SALLYPORT.  The HSA, with input from the Clinical Director and other providers involved with the inmate's care (e.g., mid-level providers, psychologists, consultant physicians), is responsible for completing the BP-770. The referring institution Warden must review the BP-770 and authorize the request for transfer.

The BP-770 serves as the redesignation, transportation, and security worksheet from which the actual redesignation is made. It will also serve as the emergency referral request form, documentation of the inmate's condition and the reason for transfer.  Accordingly, it is essential that the BP-770 be completed thoroughly and accurately.

The Medical Designator will review each request for redesignation
and approve or deny the requested transfer.  Based on clinical
information and in consultation with the Medical Director, the
Medical Designator may change the urgency level of the request.

OMDT will authorize CIM clearance (if appropriate) and enter
approved transfers to an appropriate BOP facility in SENTRY on
the "Enter Redesignation" screen.

   e.  **Completion of Treatment** - All requests for redesignation to
the parent facility upon completion of Medical/Surgical or
Psychiatric treatment, or to another medical facility for
continuation of treatment, will be initiated by the facility
currently housing the inmate via GroupWise on the Discharge
Transfer Summary form.  This form serves as the designation,
transportation, and security worksheet from which the
redesignation is made.

Medical cases are normally returned to their parent facility
unless the DSCC approves a change in the parent facility based on
clinical justification provided prior to redesignation by the
Medical Designator.

7.  **TEMPORARY TRANSFERS.**  It is sometimes necessary to
temporarily transfer an inmate to a contract facility or other
Bureau institution.  This is normally for security reasons, when
the current institution does not have a Special Housing Unit.  In
such cases, institution staff will forward a request for
temporary transfer approval from the Warden to the DSCC.  The
request will include the rationale for transfer, with assurance
that the receiving facility is in agreement with the temporary
transfer.  Transfer approval must be obtained prior to the
transfer during normal working hours, or if after hours, the next
work day.  A copy of this request will be routed to the
appropriate CCM office, if the transfer is to a contract
facility.

8.  **TRANSFERS FOR TRAINING PURPOSES OR PROGRAM PARTICIPATION.**
An inmate is ordinarily only transferred for specialized national
programs not offered at the parent facility to include:

        (a)   Residential Drug Treatment Program;
        (b)   Life Connections Program;
        (c)   Special Management Unit; and
        (d)   Sex Offender Programs.

When placement for program participation is inconsistent with the
assigned security level, the appropriate Management Variable must
be applied by the DSCC.  Ordinarily, the inmate will be returned

to the referring institution upon completion of the specialized
training or program if the inmate has 18 months or more remaining
until the inmate's release date at the time of the transfer.
Further, if the program facility is nearer to the inmate's
release residence, than is the referring institution, the inmate
may remain at the program facility.

9.    **INSTITUTION HEARING PROGRAM TRANSFERS**.  The Institution
Hearing Program (IHP) is a coordinated effort by the Bureau, ICE,
and the EOIR to provide deportation or exclusion proceedings to
sentenced aliens as expeditiously as possible after the date of
conviction.  Eligibility, designation, classification, and
transfer procedures are specifically outlined in Bureau
directives.  IHP sites have been established for male and female
non-U.S. citizens who are serving federal sentences to ensure a
deportation or exclusion hearing is conducted early in their
sentence instead of at the end of their sentence.

10.   **TRANSFERS TO SATELLITE CAMPS**.  The Warden of an institution
with a satellite camp may transfer an inmate from the main
institution to the camp if the inmate is assigned an appropriate
security and/or custody level. The Camp Administrator of a
satellite camp adjacent to a Low or Medium security level
institution may temporarily transfer the inmate to the main
institution for disciplinary purposes (i.e., disciplinary
segregation).  If a need for an immediate redesignation arises,
the inmate may be placed as a holdover in Administrative
Detention at the main institution while approval is sought from
the DSCC for redesignation to that institution or another
institution.

An inmate may travel via "unescorted transfer" from a low or
minimum security level institution to a minimum security level
institution if the inmate is a minimum security level inmate and
has OUT or COMMUNITY custody.  The inmate's family (on the
approved visiting list) may provide transportation to the
receiving institution only if the inmate is transferring from a
minimum security level institution to another minimum security
level institution, and if approved by the Warden.  The inmate's
family is expected to bear all transportation costs.  The inmate
must go directly from the sending institution to the receiving
institution.

  The Warden may authorize clearance for the transfer of a CIM
Case, with the exception of WITSEC cases, to the satellite camp
of the parent facility provided established regulations for
regular transfer authority have been met. (Refer to the CIM
Manual for more specific details).

11.  **PRE-RELEASE TRANSFERS.**  Inmates in federal and contract institutions may be transferred to CCCs in accordance with the Program Statement <u>Community Corrections Center (CCC) Utilization and Transfer Procedure</u>.  Inmates who have been approved for CCC referral and are otherwise appropriate for camp placement are to be transferred to a camp for intermediate placement if at all practicable.  Inmates should be encouraged to complete all or most of the Institution Release Preparation Program at the parent institution prior to transfer.

   The parent institution is to complete the CCC referral packet and the camp should be closer to the inmate's release residence. This process should be completed to allow the inmate a minimum of a 60-day placement at the camp prior to the reporting date at the CCC.  CCC referrals may be made 12 to 18 months in advance of an anticipated reporting date with the concurrence of local CCM offices.  A notation that the CCC referral was made with a specific projected placement date should be included in the request for institution transfer, and the transfer request should be prepared at the same time as the CCC referral.

12.  **TRANSFERS FROM CCC'S.**  When an inmate fails to meet the conditions of CCC placement, the CCM should designate the inmate to the parent institution with consideration given to the following criteria for designation:

      (a)  local manday detention rates;
      (b)  availability of Bureau Detention Centers;
      (c)  budgetary constraints;
      (d)  projected release date; and,
      (e)  distance to parent facility.

   When returning the inmate to the parent institution is not cost effective, the Community Corrections Office will refer the case to the DSCC for designation.  DSCC staff, will make the designation, and should consider the closest institution commensurate with the inmate's security needs.  When the DSCC designates the inmate to a facility, DSCC staff will notify the parent institution to facilitate the forwarding of the central file.

13.  **LONG-TERM DETAINEES.**  The authority for the redesignation of long-term detainees rests with the Detention Services Branch, Correctional Programs Division, Central Office.  Refer to the current Program Statement <u>Mariel Cuban Detainees</u> for transfer procedures.  Transfers for medical or mental health treatment however, shall be referred to the Central Office Medical Designator.  Mariel Cubans who are sentenced, and therefore not detainees, are handled in a routine fashion by DSCC staff.

14.  **IN-TRANSIT DATA FORM**

   a.  Upon notice that an inmate is being transferred or
temporarily released to an authorized law enforcement officer
(e.g., U.S. Marshal, state law enforcement officer, or Bureau bus
officer), the Unit Manager will ensure the following:

- The top portion of the SENTRY automated In-Transit Data
  Form is accurate and the bottom portion is completed;

- CIM, YCA, DCYRA and any other important information is
  included in the space for "Non-Routine Security Needs;"

- CIM separation information is accurate, up-to-date and
  the SENTRY generated "CIM Clearance and Separatee Data"
  is attached to the In-Transit Data Form; and,

- The In-Transit Data Form is signed, dated, and
  forwarded to ISM staff who will attach a current inmate
  photograph and provide the form to the transporting
  officer.

**NOTE:**     The most recent In-Transit Data Form is maintained in
           the Inmate Central File.  The "CIM Clearance and
           Separatee Data" display will not be filed with the
           In-Transit Data Form.

   b.  Upon receipt of the In-Transit Data Form, ISM staff will
ensure the following:

- The information indicated on the top portion of the
  form is correct.  SENTRY update functions should be
  executed in the event that the data is not accurate;

- The Sentencing Remarks should include the offenses and
  the length of sentence as noted on the Judgment.  If
  this information is not accurate, the load data should
  be updated;

- The Detainer Remarks should indicate all active
  detainers and the charge or offense.  If the detainer
  has been litigated, information regarding the sentence
  imposed or time remaining to serve should be listed.
  If this information is not current, the commitment
  should be updated; and,

- Initials are placed below the detainer remarks
  indicating that the information has been confirmed and
  is accurate and up-to-date.

15.  **TRANSFER CODES**. The reason for transfer, as shown by one of
the codes listed at the end of this chapter, must be provided in
the top portion of the Transfer Order.  If there is more than one
reason for transfer, the most pertinent code should be used.
Note that all Unescorted Transfers are Discharge Code - FURL
TRANS for Furlough Transfer.

16.  **SPECIAL REQUIREMENTS**

   a.  An inmate having a detainer or pending charge may be
transferred to any institution for which he or she properly
classifies; however, generally when there is a formally filed
detainer, the inmate is not to be transferred to an institution
more distant from the detaining authority unless there is
substantial reason to believe the detainer will be dropped or the
pending charge will not be prosecuted.

   An inmate who indicates an intention to oppose extradition is
not to be transferred within the last 30 calendar days prior to
release to an institution in the state that placed the detainer.
Such cases, and others in which there are legal or jurisdictional
problems, are to be referred to the Regional Correctional
Programs  Administrator (See Program Statement <u>Inmate Systems
Management Manual</u>.

   b.  When there is reason to transfer an inmate to a non-federal
institution for concurrent service of federal and state
sentences, the Warden will refer the case to the DSCC
Administrator.  Refer to the Program Statement, <u>Transfer of a
Prisoner to State Custody Prior to Release from the Federal
Sentence</u>, for procedures.

17.  **RELATIONSHIPS WITH OTHER AGENCIES**

   a.  **U.S. Parole Commission**.  Parolable inmates must be housed
at a parolable institution in accordance with their parole
hearing requirements unless a hearing is no longer required.

   b.  **Administrative Office of the U.S. Courts**.  The court of
conviction may recommend to the Attorney General or the Bureau
that the defendant be retained at, or transferred to, a place of
confinement near the place of trial or the court of appeals, for
a period reasonably necessary to permit the defendant to assist
in the preparation of his or her appeal.  Upon receiving this
recommendation, the Bureau will make every effort to place the
inmate in such a facility.  If a reason exists for not placing
the inmate in that facility, the court must be notified of the
situation and an attempt will be made to arrive at an acceptable
place of confinement.

Ordinarily, complicated jurisdictional or legal problems should be resolved before transfer.  Ordinarily, the sending Case Management Coordinator will determine if an inmate has legal action pending in the district in which confined.  If so, the individual should not be transferred without prior consultation with the appropriate U.S. Attorney or Regional Counsel, or both.  Under Rule 23(a) of the Federal Rules of Appellate Procedures, an inmate may not be transferred, pending review of a Habeas Corpus proceeding commenced before a court, without the approval of the court.  Approval for transfer should be sought through the U.S. Attorney or Regional Counsel in cases where a Habeas Corpus petition is pending.

c.  **Non-Federal Authorities**.  The decision to accept a state prisoner in the Bureau is the responsibility of the DSCC Administrator.  When notifying the state authority of acceptance, the state's contract code will be identified.

The Office of Procurement, Central Office is responsible for negotiating contracts for housing state prisoners.  If it is necessary to transfer a federal inmate to a local jail, the sending institution must immediately notify the U.S. Marshals and the CCM, preferably prior to the transfer.

d.  **Military Inmates**.  The DSCC will accept a military or Coast Guard inmate recommended for transfer to federal custody if, after examination of all available information, the Bureau can provide appropriate resources for the inmate's needs.  The DSCC will be responsible for the designation and redesignation of all military and Coast Guard inmates accepted for service of their sentence in Bureau custody.

In some cases, special agreements or Memoranda of Understanding (MOU) have been established with various military branches. These MOUs give direction to Bureau staff regarding which Bureau regulations and policies apply to the military inmates.  Pursuant to 10 U.S.C. § 858, staff should be aware that military or Coast Guard inmates confined in Bureau institutions are subject to the same discipline and treatment as other inmates in those institutions.

Additionally, the Bureau will accept the sentence computation provided by the military or Coast Guard authorities with the exception that the Bureau will release such inmates, if not paroled, under the provisions of 18 U.S.C. § 4164 provided they have accrued good time deductions in excess of 180 days.  DSCC staff will refer to the appropriate military or Coast Guard authorities for resolution of suspected sentence computation errors or discrepancies, or challenges to the sentence computation by the inmate or his or her representative, or both.

Once a military inmate comes into Bureau custody, all notifications and requirements apply as if he or she were a Bureau inmate, i.e., VWP notification, VCCLEA notification, Sex Offender Notification, and IFRP requirements.  Notification to the military is also required at least 30 days prior to the inmate's release.

18.  **STATE PLACEMENT.**  Inmates who have exhausted available resources within the Bureau, should be referred for placement in an appropriate non-federal facility under contract with the Bureau.  Preparation of a transfer referral to merely "exhaust" all BOP resources is not required when the inmate is clearly not appropriate for any facility within the Bureau.

a.  **Placement Procedures.**  The Warden will prepare a memorandum to the DSCC Administrator outlining the reasons for state placement of a federal inmate.  This memorandum will be forwarded along with supporting documentation and classification material that will, at a minimum, include the following:

(1)  Presentence Investigation Report;

(2)  Two copies of the Judgment;

(3)  Relevant SENTRY data;

(4)  Current Progress Report; and,

(5)  Any Disciplinary or SIS Reports.

If the DSCC Administrator approves an inmate for state placement, DSCC staff will select a state correctional system for referral.  The system selected will be based on the type of facilities within the system; available bed space; court status (state systems that are under injunction because of overcrowding or violations of inmates' civil rights will not be used), and the state's willingness to accept federal boarders.  Once a suitable state correctional system has been identified, DSCC staff will forward the transfer packet to the appropriate Community Corrections Regional Administrator, overseeing the state in which the DSCC Administrator has identified for possible placement. DSCC staff may make up to two referrals per inmate at a time, and continue this process until an appropriate placement is secured. The CCRA will work through the local CCM office which will refer the case for state placement.  The CCM office will advise the CCRA of the response from the state authority/Department of Corrections.  If approved for placement, the CCRA will initiate SENTRY redesignation procedures, and forward the inmate file to the CCM office.  If not approved for placement the CCRA will

advise the DSCC Administrator, who will continue to secure a
suitable state placement.

The CCM office with state monitoring authority in which the
inmate is eventually housed assumes full responsibility for the
inmate, including biennial reviews and subsequent transfer
authority. State placement materials containing, at a minimum, a
Progress Report, Presentence Investigation Report, and all
memoranda pertaining to the state placement, will be forwarded to
and maintained by the CCM office after the inmate has been
approved for placement.

If an inmate is approved for permanent return to the Bureau,
the place of confinement will be determined by the DSCC. If an
inmate is returned to the Bureau for medical treatment, the
inmate will be returned to the state when the medical treatment
is completed. Occasionally, returning the inmate to the
originating state may not be appropriate. In such cases, the
DSCC will obtain a new place of incarceration for the inmate,
after consultation with the Office of Medical Designation and
Transportation.

   b. **Post-Placement Monitoring.** After a federal inmate has been
placed in a state contract facility, the appropriate CCM will
review the case every two years beginning from the date of the
inmate's arrival to determine whether the inmate is still
appropriate for state placement. The CCM's cover memorandum
containing a recommendation and a Progress Report provided by the
state contract facility will be forwarded to DSCC staff who will
make a determination for continued state placement or return to
Bureau custody.

If the inmate requires continued placement in that state
facility, DSCC staff will enter a notation on the SENTRY "CIM
Clearance and Separatee Data" screen indicating such. However,
if state placement is no longer necessary, the inmate will be
redesignated to Bureau custody by the DSCC.

Inmates serving a sentence of Death will also be reviewed for
continued state placement. Information received from Community
Corrections staff during the review of the contract may be used
to make a determination for continued state placement.

The DSCC is responsible for monitoring and tracking state
placement requests received from BOP institutions. The CCRA will
prepare a quarterly report (statistical/narrative) which will be
forwarded to the DSCC Administrator.

19.  **SECONDARY DESIGNATION**.  Upon initial designation, an inmate
may be designated specifically for a parole hearing or program
participation, and as a result, may require a secondary
designation upon completion of the activity.  If upon completion
of the activity, staff determine that the secondary designation
is no longer appropriate, the DSCC will be notified for
reconsideration.  Otherwise, when the conditions of the initial
designation are met, institution staff will prepare a Transfer
Order for signature of the sending institution Warden and
arrangements will be made for movement of the inmate through
routine procedures.

A secondary designation will not normally be made for cases
designated for medical or psychiatric treatment.  The medical
center or reviewing institution will notify the Medical
Designator upon completion of evaluation or treatment.  Approval
will be given for a secondary designation at that time.  This
approval will be based on medical requirements of the inmate and
resources of the secondary designation.

20.  **POPULATION MANAGEMENT**.  The Assistant Director, Correctional
Programs Division periodically reviews each institution's Rated
and Designation Capacities.  Occasionally, it is necessary to
impose a moratorium or population cap on a particular institution
to avoid or reduce overcrowding.  The Assistant Director,
Correctional Programs Division, with the approval of the
Population Management Subcommittee of the Executive Staff, may
impose a moratorium on other facilities including the Medical
Referral Center general population units.  The Assistant
Director, Health Services Division, with the approval of the
Population Management Subcommittee of the Executive Staff, may
authorize a moratorium or population cap for Medical Referral
Centers (excluding general population).

   a.  Referral Procedures

      (1) The Warden of the institution recommends to the Regional
Director that a moratorium or population cap be established.

      (2) The Regional Director reviews the request, and if in
agreement, contacts the Assistant Director, Correctional Programs
Division, or the Assistant Director, Health Services Division,
and either requests a population cap or total moratorium.

   A population cap places a ceiling on the number of inmates that
can be designated to a facility.  A total moratorium is defined
as a complete cessation of all initial designations and
redesignations to an institution or DFCL assignment.

In extreme circumstances, the Assistant Director, Correctional Programs or Health Services Division with concurrence of the Subcommittee may direct that inmates en route to a facility be redesignated. When a moratorium or population cap is imposed, a termination date will be established. The cap or moratorium will be terminated on that date unless the Regional Director contacts the appropriate Assistant Director, Correctional Programs or Health Services Division, and obtains an extension.

(3) The appropriate Assistant Director will issue a GroupWise e-mail notifying the DSCC Administrator and Chief Executive Officers of the cap or moratorium.

21. **INSTITUTIONS WITH SPECIAL MISSIONS**

a. **FCI Oakdale.** The Bureau, ICE, and the Executive Office for Immigration Review (EOIR) work closely together to meet the requirements of the Immigration Reform and Control Act of 1986, by ensuring the expeditious review of criminal aliens for deportation. Beds are available for federally sentenced aliens, who are subject to administrative proceedings under the Immigration and Naturalization Act. Such inmates are transferred to FCI Oakdale for disposition of their ICE detainer prior to completion of their federal sentence.

Mexican and Cuban nationals are not eligible for the Oakdale Criminal Alien Program. The following procedures apply for the actual selection and designation of inmates to the Oakdale Criminal Alien Program.

(1) The ICE Officer in Charge at FCI Oakdale will monitor the inmate male population via SENTRY to identify criminal aliens appropriate for the program at FCI Oakdale. After they have been identified, ICE staff will place a detainer on these individuals through the DSCC. Each week DSCC staff will compile a list of the criminal aliens who are to be released within the next year. A courtesy list will be submitted, via GroupWise, to FCI Oakdale for monitoring purposes.

(2) ICE staff at FCI Oakdale will forward to DSCC staff information on alien inmates via GroupWise to assist in the movement of inmates to FCI Oakdale at a later date. The movement of inmates to FCI Oakdale will be authorized and coordinated by the DSCC. DSCC staff will ensure CIM clearance is obtained and the Custody Classification form reflects appropriate use of any Management Variable.

(3) Inmates will be redesignated no later than seven months from a firm projected release date. Once approved for transfer,

institution and transportation staff will immediately schedule
the inmate for movement to FCI Oakdale.  Institution staff will
notify the Oakdale CMC if the inmate is not en route within 15
working days of the transfer approval.  The central file should
contain a current Progress Report and all pertinent case
management activities should be completed prior to transfer
including fines and the ordering of parole certificates, when
applicable, or preparation of other release documents as
required.

        (4) ISM staff will ensure any other detainers lodged against
those inmates approved for transfer are resolved and the
detaining authority notified before the inmate is transferred to
FCI Oakdale.

        (5)  Because of unforeseen circumstances, some criminal
aliens may be inappropriate for transfer to FCI Oakdale.  ICE
staff at FCI Oakdale will notify DSCC staff when this occurs and
will advise of any additional action necessary to coordinate the
resolution of the inmate's citizenship/release status.
Conversely, institution staff are to contact DSCC staff if they
believe a transfer should not occur.  If the transfer is deemed
inappropriate, DSCC staff will delete the Oakdale "DST" transfer
approval.

        (6)  The Detention Services Branch, Correctional Programs
Division, Central Office will assist with coordination of the
Oakdale Criminal Alien Program and will act as the primary
liaison with ICE and EOIR Headquarters on matters of mutual
interest affecting the program's development and/or modification.
Any questions regarding these matters should be directed to that
office.

   b.  **USP Marion/ADX Florence**.  USP Marion/ADX Florence general
population units are designed for male inmates who have
demonstrated an inability to function in a less restrictive
environment without being a threat to others, or to the secure
and orderly operation of the institution.

        (1)  **Referral Procedures and Criteria**.  Prior to referring
an inmate to USP Marion or ADX Florence, redesignation to another
high security institution should be considered first.  If
transfer to another institution is not appropriate, Wardens will
refer the proposed USP Marion or ADX Florence case to North
Central Regional Director.  The North Central Region will
designate the inmate as appropriate.

   Assignment to USP Marion or ADX Florence will ordinarily be
made without regard for such factors as release destination or

program needs, such as education and vocational training.  Prior
to transfer to USP Marion or ADX Florence, staff at the sending
institution will ensure that the inmate is assigned Maximum
custody.  While in transit to USP Marion or ADX Florence, inmates
will be housed and provided visiting, correspondence, and
telephone privileges as if confined at USP Marion or ADX
Florence.

   Inmates currently diagnosed as suffering from serious
psychiatric illnesses should not be referred for placement at
either USP Marion or ADX Florence.

      (2)  **Referral Packet for USP Marion or ADX Florence.**  The
referral packet for either USP Marion or ADX Florence general
population will include the following items:

         (a)  A memorandum from the Warden to the North Central
Regional Director with the specific rationale supporting the
institution's recommendation;

         (b)  Copies of all disciplinary reports, investigative
materials or other official documentation related to the behavior
prompting the referral;

         (c)  A current Progress Report;

         (d)  A copy of the inmate's latest Presentence
Investigation Report; and,

         (e)  A recent psychiatric or mental health evaluation.

      Inmates with severe or chronic behavior patterns that cannot
be addressed in any other Bureau institution should be referred
to ADX Florence general population, and those who are somewhat
less problematic should be referred to USP Marion.  In describing
the reasons underlying the referral, the Warden should explain
why he or she has selected USP Marion or ADX Florence,
respectively.

      (3)  **Acceptance or Rejection of Referrals.**  The North
Central Regional Director has final review authority for
referrals to the USP Marion and ADX Florence general population
units.  In some cases, the Regional Director may approve
placement at USP Marion when a referral has been submitted for
ADX Florence and vice versa.

      A response to a recommendation for USP Marion or ADX
Florence placement will ordinarily be made by the North Central
Regional Director within 60 calendar days after receiving the

referral packet from the referring institution.  Approval or denial will be noted in SENTRY on the inmate's "CIM Clearance and Separatee Data" screen, with a brief memorandum from the North Central Regional Director to the requesting Warden to follow.

(4)  **Transfer from USP Marion or ADX Florence.**  Once an inmate successfully completes the USP Marion or ADX Florence program, the Warden will submit a transfer request to the North Central Regional Director.  Upon the North Central Regional Director's approval the request will be forwarded to the DSCC for determination of an appropriate facility.  Inmates will ordinarily be transferred from USP Marion or ADX Florence using Code 308 - Lesser Security.  Ordinarily, inmates completing the ADX Florence program will be transferred to a High Security facility, other than USP Marion.

(5)  **USP Marion Failures.**  Inmates who continue to exhibit disruptive misconduct at USP Marion may be considered for referral to ADX Florence general population or the Control Unit.

c.  **FMC Carswell Administrative Unit**

(1)  **Initial Designations.**  Initial designations may only occur in extraordinary situations by DSCC staff.

(2)  **Redesignation Criteria.**  The FMC Carswell Administrative Unit is designed to house females exhibiting any of the following:

- A history of escape or attempted escape from a secure institution;

- Demonstrated repeated incidents of assaultive or predatory behavior;

- Demonstrated chronic behavior problems; and/or

- Special management concerns.

(3)  **Referral** for transfer to the FMC Carswell Administrative Unit will be submitted via the Request for Transfer/Application of Management Variable (409) to the DSCC Administrator.

(4)  **Acceptance or Rejection of Referrals.**  The DSCC Administrator has final review authority for referrals to FMC Carswell Administrative Unit.

| TRANSFER CODES | |
|---|---|
| CODE | DESCRIPTION |
| 276 | **FURLOUGH TRANSFER:** Unescorted furlough transfer to a CCC. |
| 307 | **INSTITUTION CLASSIFICATION:** Transfer to an institution with greater security (e.g., Low to Medium). |
| 308 | **INSTITUTION CLASSIFICATION:** Transfer to an institution with less security (e.g., High to Medium). |
| 309 | **DISCIPLINARY:** Transfer as a result of an act(s) of misconduct related to documented poor institutional adjustment.  See Program Statement on Discipline and Special Housing Unit. |
| 313 | **NEARER RELEASE:** Transfer for the purpose of placing an inmate in an institution nearer the release destination or to facilitate the release process. |
| 314 | **TRAINING PURPOSES:** Discontinued (Use Code 324). |
| 315 | **TRAINING COMPLETED:** Discontinued (Use Code 325). |
| 316 | **TEMPORARY TRANSFER:** Transfer to the custody of U.S. Marshals or local authority. |
| 317 | **RELIEVE OVERCROWDING:** Transfer to relieve overcrowding at a facility. |
| 318 | **INCREASE POPULATION:** Transfer to build a population, usually upon activation of a new facility. |
| 319 | **DRUG ABUSE PROGRAM:** Transfer to participate in a specialized Drug Abuse Program. |
| 320 | **WORK/STUDY RELEASE: Discontinued.** |
| 321 | **TRANSFER TO CONTROL UNIT:** Transfer to Control Unit (see Chapter 7, Section 4). |
| 322 | **TRANSFER FROM CONTROL UNIT:** Transfer from Control Unit (See Chapter 7, Section 4). |
| 323 | **CLOSE SUPERVISION CASE:** Transfer as a result of an investigation that indicates a safety, security, or escape risk.  Includes verified and unverified protection cases. |
| 324 | **PROGRAM PARTICIPATION:** Transfer for a parole hearing or to participate in a specialized program. |
| 325 | **PROGRAM COMPLETED/WITHDRAWAL/REMOVAL:** Return to the original institution following the completion, withdrawal, or removal from a specialized program. |
| 326 | **CONCURRENT SERVICE IN NON-FEDERAL FACILITY:** Transfer to non-federal facility (excluding CCC) for service of concurrent federal and state sentences. |
| 327 | **BOARDING IN NON-FEDERAL FACILITY:** Transfer to non-federal facility (excluding CCC) for service of federal sentences only. |

| \[TRANSFER CODES\] | |
|---|---|
| **CODE** | DESCRIPTION |
| 328 | **RETURN FROM NON-FEDERAL FACILITY:** Return from non-federal facility to federal institution for service of federal sentence only. |
| 330 | **ADJUSTMENT PURPOSES:** Transfer for the purpose of placing the inmate in a new setting due to poor institutional adjustment or CIM concerns.  This code differs from a 323 Close Supervision Transfer in that an SIS investigation is not normally conducted. |
| 331 | **TRANSFER FOR MEDICAL TREATMENT:** Transfer from general population for the purpose of obtaining medical/physical treatment in a Medical Referral Center.  Requires a change to a CARE 4 assignment. |
| 332 | **MEDICAL TREATMENT COMPLETED:** Return from Medical Referral Center to general population after treatment for medical/physical treatment.  Requires a change from CARE 4 assignment to a lesser care level assignment. |
| 333 | **TRANSFER FOR PSYCHOLOGICAL/PSYCHIATRIC EVALUATION:** Transfer from general population for the purpose of obtaining psychiatric treatment in a Medical Referral Center.  Requires a change to a CARE 4 assignment. |
| 334 | **PSYCHOLOGICAL/PSYCHIATRIC EVALUATION COMPLETED:** Return from a Medical Referral Center to general population after obtaining psychiatric treatment.  Requires a change from CARE 4 assignment to a lesser care level assignment. |
| 335 | **TRANSFER FOR HOSPITALIZATION AND TREATMENT:** Transfer between BOP Medical Referral Centers for continued medical/physical or psychiatric treatment.  (SPG to BUT).  CARE 4 assignment remains intact. |
| 336 | **HOSPITALIZATION AND TREATMENT COMPLETED:** Discontinued (See Code 332). |
| 337 | **OTHER:** This category may be used only when no other transfer code above applies. (DISCONTINUED) |
| 338 | **DECREASE IN MEDICAL CARE LEVEL:** Transfer used when there has been a decrease in the inmate's medical care level and the inmate no longer requires the higher level of medical services.  This code is to be used when the transfer occurs between non-MRC institutions and when there is a decrease from the CARE assignments 2 and 3 only. |
| 339 | **INCREASE IN MEDICAL CARE LEVEL:** Transfer used when there has been an increase in the inmate's medical care level and inmate is being transferred for the sole purpose of requiring increased medical resources.  This code is to be used when the transfer occurs between non-MRC institutions and when there is an increase from the CARE assignments 1 and 2 only. |
| 369 | **FACILITY REORGANIZATION:** Transfer based on a mission change of the institution. |

P5100.08
9/12/2006
Appendix A, Page 1

```
┌──────────────────────────────┐
│    OFFENSE SEVERITY SCALE     │
└──────────────────────────────┘
```

| GREATEST SEVERITY |
|---|

**Aircraft Piracy** - placing plane or passengers in danger

**Arson** - substantial risk of death or bodily injury

**Assault** - serious bodily injury intended or permanent or life threatening bodily injury resulting)

**Car Jacking** - any

**Drug Offense** - see criteria below*

**Escape** - closed institution, secure custody, force or weapons used

**Espionage** - treason, sabotage, or related offenses

**Explosives** - risk of death or bodily injury

**Extortion** - weapon or threat of violence

**Homicide or Voluntary Manslaughter** - any

**Kidnaping** - abduction, unlawful restraint, demanding or receiving ransom money

**Robbery** - any

**Sexual offenses** - rape, sodomy, incest, carnal knowledge, transportation with coercion or force for commercial purposes

**Toxic Substances/Chemicals:** - weapon to endanger human life

**Weapons** - distribution of automatic weapons, exporting sophisticated weaponry, brandishing or threatening use of a weapon

* Any **drug offender** whose current offense includes the following criteria will be scored in the Greatest severity category:

The offender was part of an organizational network and he or she organized or maintained ownership interest/profits from **large-scale** drug activity,

***AND***

The drug amount equals or exceeds the amount below:

**Cocaine** - greater than or equal to 10,000 gm, 10 K, or 22 lb
**Cocaine Base "Crack"**  - greater than or equal to 31 gm
**Hashish** - greater than or equal to 250,000 gm, 250 K, or 551 lb
**Marijuana** - greater than or equal to 620,000 gm, 620 K, or 1,367 lb
**PCP** - greater than or equal to 100,000 mg, 100 gm, or 20,000 dosage units
**Heroin or Opiates** - greater than or equal to 2,000 gm, 2 K, or 4.4 lb
**Methamphetamine** - greater than or equal to 16,000 gm, 17 K, or 35 lbs
**Other illicit drugs:** - Amphetamine, Barbiturates, LSD, etc. greater than or equal to 250,000 dosage units

P5100.08
9/12/2006
Appendix A, Page 2

| HIGH SEVERITY |
| --- |

**Arson** - other
**Cruelty to Children** - any
**Drugs (For Females only)**
    **Cocaine** - greater than or equal to 10,000 gm, 10 K,
    Or 22 lb
    **Cocaine Base "Crack"** - greater than or equal to 31 gm
    **Hashish** - greater than or equal to 250,000 gm, 250 K,
    Or 551 lb
    **Marijuana** - greater than or equal to 620,000 gm, 620 K,
    Or 1,367 lb
    **PCP** - greater than or equal to 100,000 mg, 100 gm, or
    20,000 dosage units
    **Heroin or Opiates** - greater than or equal to 2,000 gm,
    2 K, or 4.4 lb
    **Methamphetamine** - greater than or equal to 16,000 gm,
    17 K, or 35 lb
    **Other illicit drugs** - Amphetamine, Barbiturates, LSD
    etc. - greater than or equal to 250,000 dosage units
**Explosives** - other
**Extortion** - other
**Involuntary manslaughter** - includes vehicular homicide
**Residential Burglary** - with evidence that occupants were in
    dwelling during the commission of the offense
**Rioting** - any
**Sexual Offenses** - sexual exploitation of children, unlawful
    sexual conduct with a minor, pornography
**Stalking** - any
**Threatening Communications** - with conduct evidencing intent to
    carry out such threat
**Toxic Substances/Chemicals** - other

P5100.08
9/12/2006
Appendix A, Page 3

---

### MODERATE SEVERITY

**Assault** - other

**Auto Theft** - any

**Breaking and Entering** - any

**Burglary** - other

**Child Abandonment** - any

**Contempt of Court** - criminal contempt

**Drugs Cocaine** - greater than or equal to 400 gm, .4 K, or .88 lb

      **Cocaine Base "Crack"** - greater than or equal to 1 gm

      **Hashish** - greater than or equal to 11,000 gm, 11 K, or 24 lb

      **Marijuana** - greater than or equal to 25,000 gm, 25 K, or 55 lb

      **PCP** - greater than or equal to 4,000 mg, 4 gm, or .14 oz

      **Heroin or Opiates** - greater than or equal to 80 gm, .08 K, or .18 lb

      **Methamphetamine** - greater than or equal to 667 gm, .67 K, or 1.47 lb

      **Other illicit drugs** - Amphetamine, Barbiturates, LSD, etc. greater than or equal to 10,000 dosage units, .05 K, or .11 lb

**Escape** - walkaway from open institution, failure to appear/bail reform act, no threat of violence involved

**Immigration Offenses** - transportation of unlawful aliens

**Obstruction of Justice** - any

**Property Offenses** - over $250,000, includes theft, fraud, tax evasion, forgery, currency offenses

**Sexual Offenses** - other

**Weapons** - other

---

### LOW-MODERATE SEVERITY

**Bigamy** - Polygamy

**Drugs Cocaine** - less than 400 gm, .4 K, or .88 lb

      **Cocaine Base "Crack"** - less than 1 gm

      **Hashish** - less than 11,000 gm, 11 K, or 24 lb

      **Marijuana** - less than 25,000 gm, 25 K, or 55 lb

      **PCP** - less than 4,000 mg, 4 gm, or .14 oz

      **Heroin or Opiates** - less than 80 gm, .08 K, or .18 lb

      **Methamphetamine** - less than 667 gm, .67 K, or 1.47 lb

      **Other illicit drugs** - Amphetamine, Barbiturates, LSD, etc., less than 10,000 dosage units, .05 K, or .11 lb

**Indecent Exposure** - indecent acts, lewd behavior

**Immigration Offenses** - other

**Post-Release Supervision Violation** - technical, administrative

**Property Offenses** - valued between $2,000 and $250,000)

| LOWEST SEVERITY |
|---|
| **Drugs** - personal use<br>**Gambling Law Violation** - any<br>**Liquor Law Violation** - any<br>**Property Offenses** - less than $2,000<br>**Suspicion** - any<br>**Traffic Laws** - any<br>**Vagrancy** - any<br>**Vandalism** - any |

| MARIJUANA EQUIVALENT CHART ||
|---|---|
| DRUG | MARIJUANA EQUIVALENT |
| 1 gm of Heroin | 1000 gm |
| 1 gm of Cocaine Powder | 200 gm |
| 1 gm of Methamphetamine | 2000 gm |
| 1 gm of LSD | 100,000 gm |
| 1 gm of "crack" cocaine | 20,000 gm |
| 1 gm of Hashish Oil | 50 gm |
| For other drug equivalents, please refer to the U.S. Sentencing Commission Guidelines Manual. ||

| MEASUREMENT CONVERSION TABLE ||
|---|---|
| 1 oz = 28.35 gm<br>1 lb = 453.6 gm<br>1 lb = 0.4536 kg<br>1 gal = 3.785 liters<br>1 qt = 0.946 liters | 1 gm = 1 ml (liquid)<br>1 liter = 1,000 ml<br>1 kg = 1,000 gm<br>1 gm = 1,000 mg<br>1 grain = 64.8 mg |

P5100.08
9/12/2006
Appendix A, Page 5

---

**DEFINITION OF ROLES INVOLVED IN DRUG OFFENSES**

---

To determine whether an individual involved with a drug offense rose to the level of an organizer or leader, read the "Offense Conduct" section of the Presentence Investigation Report, and any other available information (i.e., Statement of Reasons, U.S. Attorney Report, etc.) to determine what the individual's role was in the criminal activity.  The role definitions below are grouped into two categories:  Those that rise to the level of organizer/leader; and, those that do not.

---

**ORGANIZER/LEADER**

---

**Importer/High-Level Supplier:** imports or otherwise supplies large quantities of drugs; is at or near the top of the distribution chain; has ownership interest in drugs (not merely transporting drugs for another individual); usually supplies drugs to other drug distributors and does not deal in retail amounts; may employ no or very few subordinates.

**Organizer/Leader:** organizes, leads, directs, or otherwise runs a drug distribution organization.  Receives the largest share of the profits and has the greatest decision-making authority.

**Grower/Manufacturer:** grows, cultivates, or manufactures a controlled substance, and is the principal owner of the drugs. (Keep in mind, the intent of this definition is to capture the individual who has the capability to manufacture enormous amounts of drugs in his garage/lab for example, and not the individual who is growing only five marijuana plants in his basement.)

**Financier/Money Launderer:** provides money for purchase, importation, manufacture, cultivation, transportation, or distribution of drugs; launders proceeds of drug sales or purchases.

**Aircraft Pilot/Vessel Captain:** pilots vessel or aircraft; requires special skill; does not include inmate who is the only participant directing a small boat (i.e., a speed boat) onto which drugs had been loaded from a "mother ship" (such person is a courier).

P5100.08
9/12/2006
Appendix A, Page 6

## NOT A DRUG ORGANIZER/LEADER

**Manager:** serves as a lieutenant to assist one of the above; manages all or a significant portion of the manufacturing, importation, or distribution operation; takes instructions from one of the above and conveys to subordinates; directly supervises at least one other co-participant in an organization of at least five co-participants.

**Bodyguard/Strongman/Debt Collector:** provides physical and personal security for another co-participant in the offense; collects debts owed, or punishes recalcitrant persons.

**Chemists/Cooks/Chemical Supplier:** produces LSD, methamphetamine, crack cocaine, or other illegal drugs, but does not qualify as a Grower/Manufacturer because he/she is not the principal owner of the drugs.  Chemical supplier does not handle drugs themselves but engages in the unlawful diversion, sale, or furnishing of listed chemicals or equipment used in the synthesis or manufacturing of controlled substances.

**Supervisor:** supervises at least one other co-participant, however, has limited authority and does not qualify as a Manager.

**Street-Level Dealer:** distributes retail quantities directly to the user.

**Broker/Steerer/Go-Between:** arranges for two parties to buy/sell drugs, or directs potential buyer to a potential seller.

**Courier:** transports or carries drugs with the assistance of a vehicle or other equipment.  Includes situations where individual, who is otherwise considered to be a crew member, is the only participant directing a vessel (e.g., a speed boat) onto which drugs had been loaded from a "mother ship".

**Mule:** transports or carries drugs internally or on their person, often by airplane, or by walking across a border.  Also includes an individual who only transports or carries drugs in baggage, souvenirs, clothing, or otherwise.

**Renter/Storer:** provides (for profit/compensation) own residence, structures (barns, storage bins, buildings), land, or equipment for use to further the offense.  This inmate is distinguished from the enabler because he/she is paid (in some way) for his/her services.

**Money runner:** transports/carries money and/or drugs to and from the street-level dealer.

**Off-loader/Loader:** performs the physical labor required to put large quantities of drugs into storage, hiding, or onto some mode of transportation.

**Gopher/Lookout/Deckhand/Worker/Employee:** performs very limited, low-level function in the offense (whether or not ongoing); includes running errands, answering the telephone, receiving packages, packaging the drugs, manual labor, acting as lookout to provide early warnings during meetings, exchanges, or off-loading, or acting as deckhand/crew member on vessel or aircraft used to transport large quantities of drugs.

**Enabler** (Passive): plays no more than a passive role in the offense, knowingly permitting a certain unlawful criminal activity to take place without actually being involved with the activity; may be coerced or unduly influenced to play such a function (e.g., a parent or grandparent threatened with displacement from a home unless they permit the activity to take place), or may do so as "a favor" (without compensation).

**User Only:** possessed small amount of drugs apparently for personal use only; no apparent function in any conspiratorial criminal activity.

**Wholesaler:** sells more than retail/user-level quantities (greater than one ounce) in a single transaction.

P5100.08
9/12/2006
Appendix A, Page 8

```
┌─────────────────────────────────────┐
│          SPECIAL INSTRUCTIONS        │
└─────────────────────────────────────┘
```

In the case of an offense involving marijuana plants, one plant equals 100 grams (or the actual weight of the useable marijuana, whichever is greater).

If the offense includes several types of drugs, compute the marijuana equivalent and total the sum to arrive at a grand total.  For example, if the inmate has marijuana, cocaine, and heroin, compute the cocaine and heroin to an equivalent amount of marijuana and hold the inmate accountable for the sum total of the equivalent amount of marijuana.

Offenses not listed will be assigned a severity category according to the most comparable listed offense.

Score any attempt, aiding and abetting, conspiracy, misprision of a felony, and accessory after the fact in the same severity category as the underlying offense.  Total offense behavior is to be considered, utilizing the most serious offense or act committed.  However, in drug conspiracy cases, the individual will be held accountable as documented by the Judge in the Statement of Reasons.  If the Statement of Reasons is not attached, the Case Manager will review the Presentence Investigation Report to determine the individual's specific reported behavior, and not hold the individual accountable for the entire drug conspiracy empire.

If committed as a parole, mandatory release, special parole term, or supervised release violator as a result of a new conviction, use that new offense behavior for scoring "Severity of Current Offense."

If committed as a probation violator, use the most severe documented behavior between the original offense that prompted probation and the new criminal conduct (violation behavior) for scoring "Severity of Current Offense."

For this Program Statement's purposes, sentences with a specific finding of "withheld adjudication" will be considered the same as if the Judge made a finding of guilt.

P5100.08
9/12/2006
Appendix B, Page 1

## WAIVER FOR MISDEMEANANTS

I, _____, _____
        (Name of Inmate)                      (Register Number)

have been convicted under_____
                                    (Offense Code and Title)

_____

and committed to the custody of the Attorney General or the
Bureau of Prisons for service of a misdemeanor sentence, do
hereby waive my right as a misdemeanant offender to serve my
sentence in a facility other than a high security level
institution. I understand my conviction could entitle me to be
placed in a Minimum, Low, or Medium level institution, as deemed
appropriate by the Bureau of Prisons; however, I voluntarily
waive my right to such placement. I further understand that this
waiver does not prevent the Federal Bureau of Prisons from
transferring me to a Minimum, Low, or Medium security level
institution in the future, if appropriate.

_____          _____
        Inmate's Signature                              Date

_____
        Witness

_____
        Witness

```
┌─────────────────────────────────────────────────────┐
│          STANDARD ABBREVIATIONS/TERMS (BP-337)        │
└─────────────────────────────────────────────────────┘
```

| | |
|---|---|
| ADW | Assault with a Deadly Weapon |
| ALC | Alcohol |
| ATT | Attempt |
| BRA | Bail Reform Act (constitutes escape) |
| CC | Concurrent |
| CC FRD | Credit Card Fraud |
| COC | Cocaine |
| CONSP | Conspiracy |
| CRK | Crack |
| CS | Consecutive |
| D/DS | Day/days |
| DETN | Detainer |
| DRG | Drug |
| DUI | Driving under the influence |
| DWI | Driving while influenced |
| DWOL | Driving without a License |
| DWP/DWIP | Dismissed without/with Prejudice |
| ESS | Execution of Sentence Suspended (If part of the sentence was imposed score as prior.  If the entire sentence was suspended, do not count as prior, HOWEVER, if the offense involved escape or violence, score under appropriate history item.) |
| F/A | Firearm |
| FTA | Failure to Appear (constitutes escape) |
| GD | Good |
| GTA | Grand Theft Auto |
| H/G | Handgun |
| HX | History |
| IR | Incident Report |
| ISS | Imposition of Sentence Suspended (If part of the sentence was imposed score as prior.  If the entire sentence was suspended, do not count as prior, HOWEVER, if the offense involved escape or violence, score under appropriate history item.) |
| ITSMV | Interstate Transportation of Stolen Motor Vehicle |
| JTC | Jail Time Credit |
| LOC | Lack of Cooperation |
| LOP | Loss of Privileges |
| M/MOS | Month/months |
| MH | Mental health |
| MJ | Marijuana |
| PBJ | Probation Before Judgment |
| PC | Pending Charge |
| PED | Parole Eligibility Date |
| PLIO | Pled to Lesser Instant Offense |
| PROB | Probation |
| PSY | Psychological/Psychiatric |
| PWITD | Possession with Intent to Distribute |
| PV | Parole Violation |

P5100.08
9/12/2006
Appendix C, Page 2

```
┌─────────────────────────────────────────────────────┐
│ ┌─────────────────────────────────────────────────┐ │
│ │       STANDARD ABBREVIATIONS/TERMS (BP-337)       │ │
│ └─────────────────────────────────────────────────┘ │
└─────────────────────────────────────────────────────┘
```

SRV        Supervised Release Violation
TRD        Tentative Release Date
UUV        Unauthorized Use of a Vehicle
VOP        Violation of Probation
WPN        Weapon
Y/YRS      Year/years

Form 409, **REQUEST FOR TRANSFER/APPLICATION OF MANAGEMENT VARIABLE**
is available on BOPDOCS



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5538.04
**DATE:** December 23, 1996
**SUBJECT:** Escorted Trips

1.  [<u>PURPOSE AND SCOPE</u> §570.40.  **The Bureau of Prisons provides approved inmates with staff-escorted trips into the community for such purposes as receiving medical treatment not otherwise available, for visiting a critically-ill member of the inmate's immediate family, or for participating in program or work-related functions.**]

Escorted trips fall within two categories, i.e., medical and non-medical.  The need and/or reason for an escorted trip may arise unexpectedly (e.g., to visit a critically-ill family member) or may be planned in advance (e.g., to attend an educational function).

This Program Statement establishes the procedures to be followed when considering an inmate for an escorted trip and details the:

- guidelines for selecting escort staff,
- responsibilities of escort staff, and
- instructions for the use of restraint equipment including the Custody Control Belt for MAXIMUM custody inmates.

2.  <u>PROGRAM OBJECTIVES</u>.  The expected results of this program are:

  a.  Escorted trips, for purposes addressed in this Program Statement, will be available for eligible inmates.

  b.  Escorted trips will be supervised by the correct number and type of employee.

  c.  Appropriate procedures, including those concerning restraint equipment, will be used during all escort trips.

  d.  The public will be protected from undue risk.


**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

e. Application of a Custody Control Belt will be authorized only for a Maximum custody inmate who requires greater security than can be afforded through conventional restraints and where no medical condition precludes its use.

f. A Custody Control Belt will be applied only to prevent escape and/or prevent serious bodily harm and activated <u>only</u> for the purpose of controlling that inmate.

g. Lieutenants who apply the Custody Control Belt and/or escort an inmate wearing a Custody Control Belt will be properly trained in the Custody Control Belt's application, operation, effectiveness, and follow-up requirements.

h. Every incident involving the activation of a Custody Control Belt will be properly reviewed, documented, and reported.

i. Violations of escorted trips will be processed appropriately.

3. <u>DIRECTIVES AFFECTED</u>

    a. <u>Directive Rescinded</u>

        PS 5538.03    Escorted Trips (06/23/95)
        PS 5558.10    Custody Control Belt, Use Of (09/30/94)

    b. <u>Directives Referenced</u>

        PS 5100.06    Security Designation and Custody
                      Classification Manual (06/07/96)
        PS 5180.04    Central Inmate Monitoring System (08/16/96)
        PS 5280.07    Furloughs (06/23/95)
        PS 5500.06    Guard Service at Local Medical Facilities
                      (12/15/93)
        PS 5500.07    Correctional Services Manual (01/31/95)
        PS 5540.04    Prisoner Transportation Manual (04/15/93)
        PS 5558.12    Firearms and Badges (06/07/96)
        PS 5566.05    Use of Force and Application of Restraints on
                      Inmates (07/25/96)
        PS 7331.03    Pretrial Inmates (11/22/94)

    c. Rules cited in this Program Statement are contained in 28 CFR 570.40 through 570.45.

4. <u>STANDARDS REFERENCED</u>

    a. American Correctional Association Foundation/Core Standards for Adult Correctional Institutions:  FC2-4073, C2-4155, C2-4251.

    b. American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4350, 3-4360, 3-4392.

c.  American Correctional Association Foundation/Core Standards for Adult Local Detention Facilities:  FC2-5078, C2-5267.

d.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  3-ALDF-4E-08, 4E-30, 4G-06.

e.  American Correctional Association Foundation/Core Standards for Adult Correctional Institutions:  FC2-4044, FC2-4046, FC2-4047, FC2-4082.

f.  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions:  3-4182, 3-4183, 3-4191, 3-4192, 3-4194, 3-4195 (Mandatory), 3-4198 (Mandatory).

g.  American Correctional Association Foundation/Core Standards for Adult Local Detention Facilities:  FC2-5055, C2-5124, C2-5126, C2-5127, C2-5128.

h.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  3-ALDF-3A-25, 3-ALDF-3A-26, 3-ALDF-3A-28, 3-ALDF-3A-29, S-ALDF-3A-31 (Mandatory).

i.  American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies:  None.

5.  <u>PRETRIAL/HOLDOVER PROCEDURES</u>.  Procedures required in this Program Statement are applicable to pretrial and holdover inmates.

6.  **[<u>MEDICAL ESCORTED TRIPS</u> §570.41**

**a.  Medical escorted trips are intended to provide an inmate with medical treatment not available within the institution. There are two types of medical escorted trips.**

**(1)  <u>Emergency Medical Escorted Trip</u>.  An escorted trip occurring as the result of an unexpected life-threatening medical situation requiring immediate medical treatment not available at the institution.  The required treatment may be on either an in-patient or out-patient basis.]**

When the inmate's custody level is not readily available at the time of the emergency medical escorted trip, the inmate, for purposes of the escorted trip, shall be considered to have IN custody, or be escorted at the Warden's discretion.

**[(2)  <u>Non-Emergency Medical Escorted Trip</u>.  A pre-planned escorted trip for the purpose of providing an inmate with medical treatment ordinarily not available at the institution.  The required treatment may be on either an in-patient or out-patient basis.]**

P.S. 5538.04
December 23, 1996
Page 4

- <u>In-patient</u>.  In-patient treatment occurs when the inmate is admitted to the outside medical facility for care that extends beyond the day of admission.

- <u>Out-patient</u>.  Ordinarily, treatment is considered out-patient when the inmate departs and returns to the institution on the same day (prior to midnight); however, emergency out-patient treatment may extend beyond midnight (e.g., left institution at 11:00 p.m. and returned at 3:00 a.m.).

**[b.  The Clinical Director or designee is responsible for determining whether a medical escorted trip is appropriate.**

**c.  <u>Escorted Trip Procedures - Out-Patient Medical Treatment</u>. A recommendation for an inmate to receive a medical escorted trip is prepared by medical staff, forwarded through the appropriate staff for screening and clearance, and then submitted to the Warden for review.  The Warden may approve an inmate for an out-patient medical escorted trip.]**

Staff seeking approval shall complete an Escorted Trip Authorization form (BP-502) (Attachment A) and route it and the inmate's central file through:

- the Case Management Coordinator for screening and clearance,
- the Special Investigative Supervisor/Special Investigative Agent (SIS/SIA),
- the Captain for assignment of escort staff and a determination of the required restraints, and
- the Unit Manager and the appropriate Associate Warden for review and recommendation.

In making a determination, staff shall consider the inmate's suitability for the trip and the degree of supervision necessary.

(1)  <u>Emergency Out-patient</u>.  Approval for an emergency out-patient escorted trip during non-duty hours may be provided by the Administrative Duty Officer (ADO) or, if the ADO is not available, by the Lieutenant on duty.  In an emergency, the Shift Lieutenant may give approval verbally, with paperwork to follow.  The approving official during non-duty hours is to immediately notify the Warden.

(2)  <u>Non-emergency Out-patient</u>.  Approval for a non-emergency out-patient escorted trip is ordinarily obtained during regular duty hours.  The ADO may provide approval during non-duty hours.  The authority during non-duty hours may not be delegated below the level of the ADO.

P.S. 5538.04
December 23, 1996
Page 5

An inmate with OUT or COMMUNITY custody may, at the Warden's discretion, be approved for a furlough to obtain local medical treatment not otherwise available at the institution.  See the Program Statement on Furloughs for additional information.

(3)  The Regional Director (or Regional Duty Officer if non-duty hours) is to be notified of any medical escorted trip for a MAXIMUM custody inmate.  See Section 8 of this Program Statement for additional information.

(4)  Only the Regional Director may approve any deviation from MAXIMUM custody escort guidelines.

[d.  **Escorted Trip Procedures - In-Patient Medical Treatment**. **A recommendation for an inmate to receive a medical escorted trip is prepared by medical staff, forwarded through the appropriate staff for screening and clearance, and then submitted to the Warden.  The Warden may approve an inmate for an in-patient medical escorted trip.]**

For non-emergency in-patient medical treatment, approval must be given prior to the inmate's transfer to a community medical facility using an Escorted Trip Authorization form (BP-502) (Attachment A).

(1)  <u>Transfer to Medical Facility</u>.  When the treatment is expected to extend beyond the day of transfer, the inmate is considered transferred to the medical facility for in-patient care, and the Regional Health Systems Administrator (RHSA) must be notified, ordinarily by the Health Services Administrator (HSA).

- For a non-emergency medical escorted trip, notification should occur before the transfer has been effected.

- For an emergency medical escorted trip, this notification may be done after the transfer has occurred.

In each case, the HSA is to notify the RHSA of the inmate's return to the institution.

(2)  <u>Emergency In-patient</u>.  The ADO may grant approval for an emergency escorted trip for in-patient medical treatment during non-duty hours, or if the ADO is not available, the Shift Lieutenant may grant approval.  The approving official during non-duty hours is to notify the Warden, and when applicable, the ADO, as soon as possible.

(3)  <u>Non-emergency In-patient</u>.  Approval for a non-emergency, escorted trip for the purpose of in-patient treatment may not be delegated below the level of Acting Warden (or ADO).

(4)  <u>Inpatient Admission</u>.  If an escorted trip for medical purposes is expected to result in the inmate's being admitted to a community medical facility for in-patient treatment, these procedures shall be followed:

(a)  When applicable, the Captain or, in the Captain's absence, the Lieutenant, is to contact the contract guard service to arrange for custodial coverage.  Contract guard services may not be used with MAXIMUM custody inmates as provided in Section 10.

If the inmate is in pretrial status, the U.S. Marshals Service shall be contacted to provide custodial coverage.

(b)  Unit staff are to complete two sets of transfer orders (BP-399) (Attachment B).  The first is used to transfer the inmate to the medical facility and the second authorizes the inmate's return to the institution.  The latter transfer order is to have an open transfer date.  Inmate Systems Management (ISM) staff shall produce sufficient copies of the Transfer Receipt (EMS-602) (Attachment C) to establish an appropriate chain-of-custody.

Upon the inmate's return, ISM staff shall complete the "Return of Service" section on the applicable transfer order. Transfer orders are not required for pretrial inmates; however, a Release Authorization form (BP-392) (Attachment D) is to be used as a receipt for custody.  When unit staff are not available, the Lieutenant may prepare a temporary transfer order.  Unit staff are to complete the required information as soon thereafter as practicable.

The Captain shall develop post orders and log book procedures for correctional officers and contract guard services staff who provide custodial coverage for inmates receiving in-patient medical care to follow.  The designated officers are to sign a statement that indicates their awareness of the required procedures.  Escort officers shall maintain the post orders and log book procedures during the community placement for medical purposes and return them to the institution upon completing the escorted medical trip.  Contract guard service providing custodial coverage must, at a minimum, meet the requirements set forth in the post orders and log book procedures.  See the Program Statement on Guard Service at Local Medical Facilities.

(5)  The Regional Director (or Regional Duty Officer during non-duty hours) is to be notified of any medical escorted trip for a MAXIMUM custody inmate.  See Section 7 of this Program Statement for additional information.

(6)  The Regional Director shall have approving authority for deviations from MAXIMUM custody escort guidelines.

(7)  Only when an inmate is actually released from the institution can overtime for the inmate's security be charged to the outside medical cost center (B325).  The inmate must be released for a visit to a medical consultant or a hospital visit under the SENTRY ARS category of "Local Hosp", or be released on transfer to a Medical Referral Center.  These procedures are necessary for any case in which the inmate is released from the institution even though it may only be for a few hours. Institutions shall not carry these temporary releases in outcount status.

(8)  The correctional officer(s) receiving overtime pay must provide security for an inmate outside the institution while the inmate is transferred from the institution to the consultant or hospital, or while he/she is transported back to the institution. An officer may be allowed two hours of outside medical overtime to prepare for the detail.  Medical overtime may not be charged for security provided within the institution, <u>except</u> if:

A staff member on-duty and assigned to an inside post is the only qualified available person for the outside escort and must be replaced.  Overtime <u>may be</u> given to the staff assigned to replace the individual on the <u>inside</u> post.  Overtime <u>may not</u> be given to the staff member on the <u>outside</u> escort.

(9)  When overtime for a medical situation is credited to staff, a copy of SENTRY report Inmate History Inquiry, indicating the inmate's name and number and the time the inmate was in the release status of "Local Hosp," or "Transfer" to a Medical Referral Center, shall be attached to the Time and Attendance sheet.

7.  **[<u>NON-MEDICAL ESCORTED TRIPS</u> §570.42**

**a.  Non-medical escorted trips allow an inmate to leave the institution under staff escort for approved, non-medical reasons.**

**There are two types of non-medical escorted trips.**

**(1)  <u>Emergency Non-Medical Escorted Trip</u>.  An escorted trip for such purposes as allowing an inmate to attend the funeral of, or to make a bedside visit to, a member of an inmate's immediate family.  For purposes of this rule, immediate family refers to mother, father, brother, sister, spouse, children, step-parents, and foster parents.**

**(2)  <u>Non-Emergency, Non-Medical Escorted Trip</u>.  An escorted trip for such purposes as allowing inmates to participate in program-related functions, such as educational or religious activities, or in work-related functions.**

**b.  <u>Escorted Trip Procedures - Emergency Non-Medical Reasons</u> Unit staff are to investigate, and determine, the merits of an**

escorted trip following a review of the available information. This includes contacting those persons (e.g., attending physician, hospital staff, funeral home staff, family members, U.S. Probation Officer) who can contribute to a determination on whether an escorted trip should be approved.

(1)  The government assumes the salary expenses of escort staff for the first eight hours of each day.  All other expenses, including transportation costs, are assumed by the inmate, the inmate's family, or other appropriate source approved by the Warden.  The necessary funds must be deposited to the inmate's trust fund account prior to the trip.  Funds paid by the inmate for purposes of the escorted trip are then drawn, payable to the Treasury of the United States.  Unexpended funds are returned to the inmate's trust fund account following the completion of the trip.]

Unit staff, in consultation with the Business Office, are to determine the cost of the escorted trip.  The inmate is to complete a BP-199 form payable to the U.S. Treasury in the amount of the expenses to be paid by that inmate.

[(2)  A request for an inmate to receive an emergency non-medical escorted trip is prepared by unit staff, forwarded through the appropriate staff for screening and clearance, and then submitted to the Warden.  Except as specified in §570.43, the Warden may approve an inmate for an emergency non-medical escorted trip.]

§570.43 refers to Section 8 of this Program Statement.

Unit staff, after obtaining the required information, shall route the Escorted Trip Authorization form (BP-502) and the central file through the:

- Case Management Coordinator for screening and clearance,
- Captain for assignment of escort staff and a determination of the required restraints, and
- Unit Manager and the Associate Warden for review and recommendation.

In making a determination, staff should consider the inmate's suitability for the trip and the degree of supervision necessary.

The ADO may grant approval for an emergency non-medical escorted trip during non-duty hours.  This authority may not be further delegated.

[c.  Escorted Trip Procedures - Non-Emergency, Non-Medical Reasons.  This type of escorted trip is considered for an inmate who has been at the institution for at least 90 days, and who is considered eligible for less secure housing and for work details,

**under minimal supervision, outside the institution's perimeter. A recommendation for an inmate to receive an escorted trip for non-emergency, non-medical reasons is prepared by the recommending staff, forwarded through the appropriate staff for screening and clearance, and then submitted to the Warden. Except as specified in §570.43, the Warden may approve an inmate for a non-emergency, non-medical escorted trip.]**

§570.43 refers to Section 8 of this Program Statement.

Escorted trips for emergency, non-medical cases are ordinarily available only to inmates with either OUT or COMMUNITY custody. The requesting department shall submit the Escorted Trip Authorization form (BP-502). For the review procedure, see Section 6.b.(2) of this Program Statement. Specific arrangements for inmate town drivers may be established locally.

Approval for a non-emergency, non-medical escorted trip may not be delegated below the level of Acting Warden.

8.   **[<u>INMATES REQUIRING A HIGH DEGREE OF CONTROL AND SUPERVISION</u> §570.43.  Only the Regional Director may approve a non-medical escorted trip (either emergency or non-emergency) for an inmate determined to require a high degree of control and supervision.]**

a.   The Regional Director's approval authority may not be delegated below the level of Acting Regional Director.

b.   The phrase "a high degree of control and supervision" ordinarily refers to an inmate with MAXIMUM or IN custody.  The Regional Director may approve escorted trips for emergency and non-emergency, non-medical reasons only upon receipt of a favorable Warden's recommendation and his or her determination that the escorted trip is warranted.  In making this determination, all relevant information (e.g., inmate's sentence, time in custody, adjustment, as well as the nature of the request) shall be considered.  The Regional Director shall maintain a written record, including reasons, for regional approval.

c.   Prior approval of the Regional Director is not necessary for an inmate requiring a high degree of control and supervision to receive an emergency medical escorted trip.  However, the Regional Director (or Regional Duty Officer if during non-duty hours), is to be notified as soon as possible of any medical escorted trip for a MAXIMUM custody inmate.

9.   **[<u>SUPERVISION AND RESTRAINT REQUIREMENTS</u> §570.44.  Inmates under escort will be within the constant and immediate visual supervision of escorting staff at all times.  Restraints may be applied to an inmate going on an escorted trip, after considering the purpose of the escorted trip and the degree of supervision required by the inmate.**

**Except for escorted trips for a medical emergency, an inmate
going on an escorted trip must agree in writing to the conditions
of the escorted trip (for example, agrees not to consume
alcohol).]**

An escorted trip merely extends the limits of an inmate's
confinement.  Prior to an escorted trip, escort staff are
expected to read both this Program Statement on Escorted Trips
and Chapter 8 of the Correctional Services Manual and are
required to sign the Escort Instructions (Attachment E).  This
attachment also sets forth the <u>minimum requirements</u> on the use of
restraints.  <u>All non-medical escorted trips, such as bedside
visits and funeral trips, require the use, throughout the
escorted trip, of at least the minimum restraints specified in
Attachment E.  No exceptions may be made</u>.

Except for medical emergency trips, the inmate shall sign the
Conditions of Escorted Trip (Attachment F).

10.  <u>WITNESS SECURITY INMATES</u>.  Except for emergency medical
escorted trips, prior authorization must be received from the
Inmate Monitoring Section, Central Office, for a witness security
inmate to go on an escorted trip.  In emergency medical
situations, the inmate shall be transported to the nearest
medical facility in accordance with local procedures.  During
normal working hours, the Inmate Monitoring Section shall be
notified as soon as possible by telephone.  After normal working
hours, the Central Office Duty Officer should be notified for
further contact with the Inmate Monitoring Section Duty Officer.
Questions concerning this section should be directed to the
institution's Case Management Coordinator.

11.  **[<u>VIOLATION OF ESCORTED TRIP</u> §570.45**

   **a.  Staff shall process as an escapee an inmate who absconds
from an escorted trip.**

   **b.  Staff may take disciplinary action against an inmate who
fails to comply with any of the conditions of the escorted trip.]**

12.  <u>SELECTION OF ESCORTS</u>.  The Captain, in consultation with the
Health Services Administrator, the Unit Manager, or others, as
appropriate, selects escorting staff.  The Captain shall
indicate, on the approval form, the specific staff member,
ordinarily escorting staff with the highest correctional services
rank, who is to serve as the officer-in-charge (OIC).  This
person shall have decision-making authority and responsibility
while on the escorted trip.

Depending on the inmate's custody and other conditions the Warden
imposed, the requirements outlined below apply.  The designated
staff, weapons, and restraint requirements for an escorted trip
are to remain in effect while the inmate is in in-patient status,

P.S. 5538.04
December 23, 1996
Page 11

except when the Regional Director authorizes deviation.  This
provision also applies to contract guard services.  Any
deviations from the requirements listed for staffing or weapons
shall require the Regional Director's prior approval.

Escorts who carry weapons are expected to abide by the
requirements of the Program Statement on Firearms and Badges.
Restraint requirements shall be in accordance with the
Correctional Services Manual.

During unusual medical or "life threatening" circumstances, the
Warden, after consulting with the Captain and the Health Services
Administrator, shall consider all factors concerning the type(s)
of restraints that may be necessary to meet the security needs
for the inmate.  Examples of such circumstances include
transporting pregnant inmates to an outside medical facility or
transporting inmates with fractured limbs or serious neck
injuries.  When these similar factors are present, the Warden
shall balance the inmate security needs with that individual's
medical requirements.  The existence of unusual factors may cause
the Warden or designee to:

- avoid using all required restraints,
- increase staff escorts,
- consider authorizing the use of a weapon, or wheelchair, or
  soft or vinyl restraints, or chase vehicle, etc.
- obtain approval from the Regional Director to deviate from
  the requirements.

Should it be necessary to deviate from the norm, the Escorted
Trip Authorization form (BP-502), shall reflect those factors
used to support the decision.

   a.  MAXIMUM Custody.  Contract guard services may not be used.

      (1)  Staffing.  A minimum of three staff escorts are
required for each inmate with one staff member being a
Lieutenant.  In addition to the three staff with the inmate,
there must also be staff in a back-up car (follow vehicle).  It
is recommended that two staff occupy the back-up car.  The staff-
inmate ratio shall be maintained regardless of the number of
inmates supervised.  At least one of the staff escorts, in
addition to the Lieutenant, must be a non-probationary staff
member.

      (2)  Weapons.  At least one staff escort must be armed.
Staff in the follow vehicle must also be armed.  It is
recommended that staff carry three fully loaded magazines of
ammunition with each weapon, in addition to the magazine in the
weapon.

(3) <u>Restraints</u>.  Handcuffs with the C&S Handcuff Cover, Martin Chains, and Leg Irons shall be used at all times.  Refer to Section 12 above, for considerations when escorting pregnant inmates.

(4) <u>Protective Vests</u>.  Staff members involved in the escorting of MAXIMUM custody inmates shall wear protective vests (threat level III - A at a minimum).

b.  <u>IN Custody</u>.  Contract guard services may be used for IN custody inmates who are minimum or low security levels.  Contract guard services may not be used for medium and high security inmates.

(1) <u>Staffing</u>.  A minimum of two staff escorts for the first inmate, with one additional staff member are required for each additional inmate.  The Warden may require an additional number of escorts if he/she determines it is warranted.  At least one of the staff escorts must be a non-probationary staff member.

(2) <u>Weapons</u>.  The Warden has the authority to determine if the escorting staff will be armed.  If weapons are authorized, a minimum of two staff escorts shall escort IN custody inmates with at least one staff member armed.

(3) <u>Restraints</u>.  Handcuffs with Martin Chains shall be used at all times.  Other restraint equipment may be used at the escorting officers' discretion.  Refer to Section 12 above, for considerations for escorting pregnant inmates.

(4) <u>Protective Vests</u>.  Staff members involved in the escorting of IN custody inmates shall wear protective vests (threat level III - A at a minimum), when the escort requires weapons.

c.  <u>OUT Custody</u>.  Contract guard services may be used.

(1) <u>Staffing</u>.  At least one non-probationary staff member. One staff member may escort a maximum of five OUT custody inmates.

(2) <u>Weapons</u>.  No weapons are required.

(3) <u>Restraints</u>.  Restraint equipment may be used at the discretion of the escorting officer(s).  Refer to Section 12. when escorting pregnant inmates.

d.  <u>COMMUNITY Custody</u>.  Contract guard services may be used.

(1) <u>Staffing</u>.  At least one non-probationary staff member. One staff member may escort a maximum of five community custody inmates.

P.S. 5538.04
December 23, 1996
Page 13

(2)  <u>Weapons</u>.  No weapons are required.

(3)  <u>Restraints</u>.  No restraints are required.

e.  <u>Other Considerations</u>

(1)  At least one staff member of the same sex as the inmate shall be assigned to escort inmates with IN, OUT, COMMUNITY, or MAXIMUM custody.

(2)  Privately-owned vehicles may not be used for escorted trips.

13.  <u>AUTHORIZATION FOR USE OF A CUSTODY CONTROL BELT</u>. The Remote Electronically Activated Technology (R-E-A-C-T) Stun Belt is the only Custody Control Belt within the Bureau of Prisons for use with MAXIMUM custody inmates.

Only the Warden of a High or Administrative security level institution or his/her designee may approve the use of a Custody Control Belt.  The approving official shall authorize use of the belt only after determining that an inmate requires greater security than is afforded through conventional restraints and the inmate has no medical condition that precludes its use.

a.  <u>Use of Other Restraints</u>.  The Custody Control Belt is not intended for use in lieu of conventional restraints, but shall be used in addition to such restraints.  Escorting staff may only reduce minimum restraint requirements if the Warden has given specific prior approval.  The Custody Control Belt provides a less-than-lethal security option for high-risk escorts.  While the Custody Control Belt is intended to provide a Less-Than-Lethal security option for High-Risk escorts, in the interest of general safety, staff are to follow the requirements on the Use of Deadly Force contained in the Program Statement on Firearms and Badges.

It is Bureau policy to use Custody Control Belts to prevent escapes or to prevent the loss of life or grievous bodily harm.

The Assistant Director, Correctional Programs Division, may allow for exception to this policy.

(1)  <u>Escape Prevention</u>.  The Custody Control Belt may be used to prevent an escape.  In the event of an attempted escape, verbal orders to halt shall first be given to the inmate wearing the belt.  When the inmate fails to halt immediately, the belt shall be activated.  If the inmate has escaped and is out-of-view of the escorting officer, a verbal warning to halt is not necessary.  However, escorting officers must be aware that the remote device is only effective at a distance of 300 feet or less.

This does not preclude, in certain circumstances, the use of deadly force, which may or may not be used without activation of the Custody Control Belt.  This shall be under the OIC's discretion in accord with the Program Statement on Firearms and Badges.

(2)  <u>Prevention of the Loss of Life or Grievous Bodily Harm</u> Staff may use the Custody Control Belt when there is a reasonable belief that the escorted inmate's actions are likely to result in the loss of life or grievous bodily harm to staff, inmates, or others.  The OIC of the escort detail must exercise sound judgment when making a decision to activate the Custody Control Belt.  Verbal orders are not required if the staff member reasonably believes a danger of death or grievous bodily harm is imminent.

b.  <u>Authorized Official</u>.  The OIC of any escort detail when the Custody Control Belt is used must be a GS-11 Lieutenant trained in its use.  Training shall encompass either training by a representative of the vendor of the Custody Control Belt or a Bureau employee whom a vendor representative has certified to provide this training.  The Employee Development Manager shall document all training.

Only the escort detail's OIC may carry and use the activating device for the belt.  Only after mandatory "Custody Control Belt Training" may a GS-11 Lieutenant serve as the OIC, or as a member of a team escorting an inmate approved to wear the Custody Control Belt.  Prior to applying the Custody Control Belt, the OIC must complete the Custody Control Belt Documentation form (Attachment G).

The justification for the approval to use the control belt must be documented in detail on the Escorted Trip Authorization form (BP-502).

14.  <u>USE OF A CUSTODY CONTROL BELT</u>

a.  <u>Medical Staff Review</u>.  When medical staff review the Escorted Trip Authorization form, a specific indication should be made for each MAXIMUM custody inmate as to whether any medical condition exists that would preclude using a Custody Control Belt.  Disqualifying medical situations include, but are not limited to:

- pregnancy
- heart disease
- multiple sclerosis
- muscular dystrophy
- epilepsy.

P.S. 5538.04
December 23, 1996
Page 15

Only a Health Services professional (Physician, Physician
Assistant, or Nurse Practitioner) shall be authorized to conduct
this review which shall include a review of the inmate's medical
file and other available documentation at the institution.

    b.  <u>Inmate Notification</u>.  Prior to applying the Custody Control
Belt, the inmate shall be advised the belt is going to be placed
on him/her, and under what circumstances it can be activated.
This is accomplished by allowing the inmate to read, or have read
to him/her, the Inmate Notification form (Attachment H).  If
possible, the inmate shall be given the opportunity to sign the
notification form.  However, if this is not possible, or if the
inmate refuses, staff shall document this refusal on the form.

15.  <u>CUSTODY CONTROL BELT REPORTING REQUIREMENTS</u>.  If the Custody
Control Belt is activated while being worn by an inmate, the
Escort Detail OIC shall notify the approving Warden or his/her
designee immediately.

    a.  <u>Medical Examination</u>.  Medical staff shall examine the
inmate as soon as possible after activation of the Custody
Control Belt and document that examination in the inmate's
medical record.  Any injuries, bruises, or marks on the inmate's
body shall be documented via photograph or videotape, which the
Chief Correctional Supervisor shall retain.  When this
examination may not be possible (e.g., lengthy escorted trip),
escorting staff shall proceed to a local medical facility for
medical examination and possible treatment.

    b.  <u>OIC Reports</u>.  The OIC shall submit both a written report
and (page 2) of the Custody Control Belt Documentation
(Attachment G) to the Warden whenever the Custody Control Belt is
activated while worn by an inmate.  These reports must be
submitted prior to the end of the OIC's tour of duty.

    c.  <u>Use of Force Reports</u>.  Consistent with the Program
Statement on Use of Force and Application of Restraints, both the
Report of Use of Force (BP-583), and the After-Action Review
Report form (BP-586), shall also be completed and routed
accordingly.

    d.  <u>Reports to Regional and Central Office</u>.  The Warden shall
submit a full written report of an incident involving activation
of the belt to the Regional Director within 24 hours.  Copies of
this report shall be sent to the Assistant Director, Correctional
Programs Division, and the Assistant Director, Health Services
Division.

16.  <u>TRAINING RESPONSIBILITIES</u>.  The Correctional Services
Administrator, Central Office, in conjunction with the Management
and Specialty Training Center, shall develop training procedures
for escorted trips.  The Captain at each Bureau institution is

P.S. 5538.04
December 23, 1996
Page 16

responsible for ensuring that all staff escorts are trained in
accordance with these procedures.  This training should also be
provided to other appropriate departments regularly.

This shall also be provided at each institution where the Custody
Control Belt is authorized.  The Warden at each High and
Administrative security level institution is responsible for
ensuring that only GS-11 Lieutenants who have been properly
trained and certified with the Custody Control Belt's
application, operation, effectiveness, and follow-up requirements
are authorized to apply the belt to a MAXIMUM custody inmate
and/or escort a MAXIMUM custody inmate in the community who has a
Custody Control Belt applied.

17.  <u>PROGRAM REVIEW RESPONSIBILITIES</u>.  The Program Review
Division, Correctional Services Branch, shall review the Escorted
Trip Program.  The Warden may select appropriate staff to conduct
periodic internal reviews.

18.  <u>SENTRY RESPONSIBILITIES</u>.  ISM staff are responsible for
entering admission and release transactions.

19.  <u>CONFIDENTIALITY</u>.  Except in unusual circumstances, inmates
scheduled for an escorted trip shall not to be advised of the:

- time,
- date,
- method of travel, and
- destination.

                                        \s\
                                  Kathleen M. Hawk
                                  Director

BP-S502.055 **ESCORTED TRIP AUTHORIZATION** CDFRM                                    P.S. 5538.04
MAY 94                                                                    Attachment A Page 1
**U.S. DEPARTMENT OF JUSTICE**                              **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| 1. Institution | |
| 2. Inmate Name | 3. Register No. |
| 4. Unit | 5. Custody |
| 6. Request Initiated by (Name / Department) | (PHOTO) |

7. PURPOSE OF TRIP

_____ Non-emergency, non-medical                    _____ Emergency, non-medical

_____ Non-emergency, medical (out-patient)          _____ Emergency, medical (out-patient)

_____ Non-emergency, medical (in-patient)           _____ Emergency, medical (in-patient)

Basis for Escorted Trip   (Explain Briefly)

_____

_____

_____

| | |
|---|---|
| 8. Date of Trip | 9. Destination   (complete address) |
| 10. Time/Date of Departure | 11. Time/Date of Return |

12. Mode of Transportation (If other than by government vehicle, provide specific information, i.e., airline
    flight schedule)

| | |
|---|---|
| 13. Estimated Cost | 14. Amount in Inmate's Trust Fund Account |

15. If inmate must pay part of cost, are required funds deposited to his/her trust fund

    account: _____ yes _____ no (must be deposited prior to trip)

16. Additional Information (Provide any significant information regarding inmate's prior record, unusual
    circumstances of trip, special precautions to be taken, etc.)

Review by Unit Manager  (Include comments and recommendations)

| | |
|---|---|
| Unit Manager's Typed Name and Signature | Date |

Continued below

Record Copy - Control Center; Copy - Receiving & Discharge; Copy - Central File; Copy - Escorting Officer(s)
(This form may be replicated via WP)                          Replaces BP-502(55) of MAR 92

BP-S502 (Continued)

P.S. 5538.04

Attachment A Page 2

| Inmate Name | Register No. |
|---|---|

## PART B - CENTRAL INMATE MONITORING REVIEW

17. Central Inmate Monitoring: _____ Yes _____ No

   Assignment: _____ Clearance Granted: _____

   Reviewed By Central Inmate Monitoring Coordinator (Include comments and recommendations) _____

   _____

   _____

   CIM Coordinator Signature: _____ Date: _____

## PART C - REVIEW BY CLINICAL DIRECTOR / HSA

18. Reviewed By Clinical Director / HSA (Include comments and recommendations) _____

   _____

   _____

   Clinical Director / HSA's Signature: _____ Date: _____

## PART D - S I S (S I A) REVIEW

19. Reviewed By SIS (SIA) (Include comments and recommendations) _____

   _____

   _____

   Signature:_____ Date: _____

## PART E - CORRECTIONAL SERVICES REVIEW

20. Type of restraints required: _____

21. Escorting Officer(s): Officer-in-Charge: _____

   Other Escorting Officers: _____

22. Weapons Required: _____ Yes _____ No

23. Reviewed By Captain (Include comments and recommendations) _____

   _____

   _____

   Captains's Signature: _____ Date:_____

## ASSOCIATE WARDEN REVIEW

24. Reviewed By Associate Warden (Over Custody) (Include comments and recommendations) _____

   _____

   _____

   Associate Warden's Signature: _____ Date: _____

## APPROVAL / DISAPPROVAL

25. WARDEN / SUPERINTENDENT: _____ Approved _____ Disapproved

   (Comments) _____

   _____

   Warden's / Superintendent's Signature: _____ Date: _____

REGIONAL DIRECTOR: (Where review and approval is required - See Program Statement on escorted trips)

_____ Approved       _____ Disapproved       (Comments) _____

_____

Regional Director's Signature: _____ Date: _____


    END FORM

BP-S399.058 **TRANSFER ORDER** CDFRM

P.S. 5538.04

MAY 94

Attachment B

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

In accordance with authority provided in Title 18, U.S. Code, Section 3621, and the authority delegated to me by the Director of the Bureau of Prisons, I hereby order transfer of:

| Name of Inmate | Register No. |
|---|---|

From (Name of Institution and Location)

To (Name of Institution and Location)

| Reason for Transfer | Transfer Code |
|---|---|

| Health Status | Central Inmate Monitoring Case |
|---|---|
| | _____ No |
| | _____ Yes-CIMC Assignment _____ |

| Signature of Transferring Authority | Title of Transferring Authority | Date |
|---|---|---|

RETURN OF SERVICE - Pursuant hereto, I have this _____ day of _____, 19_____, executed the above order and committed the inmate to the institution indicated.

| Signature | Name |
|---|---|

| Title | Agency |
|---|---|

For transfer to CTC's, complete the following:

| Projected release date | Type of release |
|---|---|

| Scheduled date and time of departure and transportation information | Scheduled date and time of arrival |
|---|---|

Record Copy - J & C; Copy - Central File

(This form may be replicated via WP)                    Replaces BP-399(58) of OCT 88

T R A N S F E R   R E C E I P T                 INST:          P.S. 5538.04
     U. S. BUREAU OF PRISONS                                    Attachment C

                                                 DATE:

RECEIVED FROM _____, _____
_____. THE FOLLOWING UNITED STATES PRISONERS,
TOGETHER WITH COMPLETE FILES FOR TRANSFER AS INDICATED:

REGISTER NO.      NAME                 TRANS DEST    CODE    HOLDOVER
-------------------------------------------------------------------

EMS 602

                          _____
                                          WARDEN

                 BY: _____
                                BUS LIEUTENANT

BP-S392.058  **RELEASE AUTHORIZATION** CDFRM                                   P.S. 5538.04

MAY 94                                                                      Attachment D
**U.S. DEPARTMENT OF JUSTICE**                      **FEDERAL BUREAU OF PRISONS**

| Inmate Name | Register No. | Institution | Date |
|---|---|---|---|
| | | | |

| Release Date | Method | Detainer: | ☐ Yes  ☐ No |
|---|---|---|---|
| | | | |

Custody Will Be Taken by:

**CERTIFICATION:** I certify that this release is in accordance with applicable and controlling rules, regulations and statutory provisions. I have personally reviewed this inmate's Judgment and Commitment File, and determined that there is no information that would prevent release by the method stated above.  All Judgment and Commitment Orders, U.S. Parole Commission Warrants, Notice of Actions, Good Time Documents, and all detainer information have been personally reviewed by me.

| Name/Title | | Signature | Date |
|---|---|---|---|
| Thumbprint | | (Photo) | |

**RELEASE ACTION**

| Identified by: | Released by: |
|---|---|
| | |

| Funds Paid by: | Date of Release: | Time of Release: |
|---|---|---|
| | | |

**RECEIPT OF AGENT TAKING CUSTODY**

I have received the above named prisoner, together with personal property and funds in the amount of $_____

| Name/Title | Signature | Date |
|---|---|---|
| | | |

Location

Record Copy - Receiving & Discharge File in Judgment & Commitment File; Copy - Case Management, Central File (Section 5); Copy - Control Room; Copy - Hospital; Copy - Transporting Officer

(This form may be replicated via WP)                    Replaces BP-392(58) of OCT 90

**DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

P.S. 5538.04
December 23, 1996
Attachment E, Page 1

## ESCORT INSTRUCTIONS

The Warden may approve an escorted trip for an inmate.  An escorted trip may be approved for such reasons as obtaining medical care not available in the institution; visiting a critically ill family member; attending the funeral of a family member; participating in approved community functions; and performing work-related functions.

This form is for escorted trips of a routine of emergency nature. Institutions authorizing escorted trips for recreation purposes should develop local guidelines.

1.          The trip must be completed according to the schedule, places and events indicated in the trip authorizations.  Unexpected situations making this impossible will be reported to the Control Room Tel. _____. The Warden, or when absent, the Administrative Duty Officer, will issue instructions for completion of the trip.

2.          Restraints required in accordance with the inmate's custody are described below unless the Warden specifies in writing other provisions.

            MAXIMUM Custody - Handcuffs with the C&S Handcuff Cover, Martin Chains, and Leg Irons shall be used at all times.

            IN Custody - Handcuffs with Martin Chains shall be used at all times.  Other restraint equipment may be used at the discretion of the escorting officers.

            OUT Custody - Restraint equipment may be used at the discretion of the escorting officer(s).

            COMMUNITY Custody - No restraints are required.

            NOTE:  The escorting officer must maintain the minimum requirements established for the amount of restraints to be used.  Medical trips which require removal of restraints for such purposes as emergency treatment, X-rays, and application of bandages must have the Warden's approval prior to removal. Under no circumstances will minimum restraints be removed during social trips, such as for bedside visits and funerals. The minimum restraints as specifically identified can be increased at the discretion of the escorting officer, but at no time will the minimum requirements be reduced.

            In addition to restraints, the escorts shall maintain constant visual supervision.  Extra restraint equipment shall be provided the escort(s) in the event of unforeseen problems or faulty equipment.  The Warden may also specify additional requirements where appropriate.

**DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

P.S. 5538.04
December 23, 1996
Attachment E, Page 2

3.          Inmates shall be housed only in pre-arranged holdover points.
           (Federal correctional facilities or Federally approved jails,
           when available)

4.          Escorts shall use pre-established routes, unless approval of
           change is obtained.  For security reasons, movement times and
           routes shall remain confidential.

5.          Although every effort shall be made not to humiliate an
           inmate, discretion and good judgment must be used when
           considering the removal of any restraint equipment.  Prior
           arrangements should be made for holdover points which have
           facilities for meals and housing.

6.          Trips for medical purposes may require removal of restraints
           for treatment or examination.  Insofar as possible, this
           should be pre- determined by the Health Systems Administrator.
           Prior authorization to do so must be given to the escort(s) by
           the Warden.

7.          Inmates are not permitted to have possession or use of any
           narcotics paraphernalia, drugs, or intoxicants not prescribed
           for the individual by the medical staff.

8.          The escorting officer(s) is required to have read and to be
           familiar with the Program Statement on Escorted Trips and with
           Chapter 8, Transportation of Federal Offenders, of the
           (Correctional Services) Manual.

-------------------------------------------------------------------------

INMATE'S NAME:                              REG. NO.:

_____               _____

_____               _____

_____               _____

_____               _____

_____               _____


I have read and I fully understand my responsibilities in regard to
transporting prisoners as outlined in the Program Statement on Escorted Trips
and in Chapter 8 of the Correctional Services Manual, in the trip
authorization, and as outlined above.  I also understand <u>NO GRATUITIES OF ANY
TYPE MAY BE ACCEPTED</u> by me from an inmate, an inmate's family or friends for
performing escort duties or for any other reason.

**DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

P.S. 5538.04
December 23, 1996
Attachment E, Page 3

------------------------------------------------------------------------

Escorting Officer-in-Charge (Typed Name and Signature)

Escorting Employee's Name (Typed)          Escorting Employee's Name (Typed)

Escorting Employee's Signature             Escorting Employee's Signature

        Date                               Supervisor's Signature


This form is to be on file in the Captain's Office.  A new set of escort
instructions must be signed prior to each escorted trip.

**DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

P.S. 5538.04
December 23, 1996
Attachment F, Page 1

## CONDITIONS OF ESCORTED TRIP

1.    While on escorted trip status, I understand that I remain in the custody of the Bureau of Prisons. I agree to conduct myself in a manner not to bring discredit to myself or to the Bureau of Prisons. I understand that I am subject to arrest and/or institution disciplinary action for violating any condition of my escorted trip.

2.    I will not violate the laws of any jurisdiction (federal, state, or local).

3.    I will not leave the area of my escorted trip without permission. I understand that an unauthorized absence from the escort's supervision may be deemed as an attempt to escape from confinement and may subject me to prosecution. Failure to return to the Institution with the escorting staff will be reported as an escape.

4.    I will not purchase, possess, use, consume, or administer any narcotic drugs, marijuana, or intoxicants in any form. I will not use any medication that is not prescribed and given to me by the institution medical department.

5.    I will not arrange to visit my family or friends unless this permission is given prior to the trip. If such a visit is arranged without permission, I understand that the trip escort is instructed to return all the participants immediately to the institution.

6.    I will not make any phone calls, drive an automobile, or obtain medical attention, except in emergencies.

7.    I agree to contact the institution at _____ in the event of serious difficulty.

8.    I will not return from escorted trip with any article that I did not take out with me (for example, clothing, jewelry, books). I understand that I may be thoroughly searched and given a urinalysis and/or breathalyzer and/or other comparable test upon my return to the institution. I understand that I will be held accountable for the results of the search and test(s).

9.    Special Instructions:


I have read, or had read to me, and I understand the above conditions concerning my escorted trip and I agree to abide by them.

Inmate's Signature: _____Reg. No.:_____

Signature/Printed Name of Staff Witness _____

P.S. 5558.04
December 23, 1996
Attachment G, Page 1

BP-S599.055 **CUSTODY CONTROL BELT DOCUMENTATION** CDFRM
JUL 94
**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

This form is to be completed each time a stun belt is applied to an inmate.

| A. Institution | Date |
|---|---|

B. Purpose of Escorted Trip                C. Method of Transportation

    □ Emergency Medical              □ Automobile
    □ Non-Emergency Medical           □ Ambulance
    □ Transfer                        □ Van
    □ Court Appearance                □ Aircraft

□ Other _____    □ Other _____

| D. Inmate Name | Register Number | Officer in Charge |
|---|---|---|

E. Belt #:_____    F. Receiver #: _____

    Transmitter #: _____

    Date of Last Battery Charge: _____

    Receiver: _____; Stun Pack: _____

    Unit Tested (Prior to Application) 25 Feet    □ Yes; □ No

F. Amount of Force Necessary to Place Belt on Inmate

    □ None
    □ Visible Display Prior to Application
    □ Physical Restraint Assistance Required
      (Use of Force Documentation Required)

G. Use of Belt (Check One)

    □ Activation not Required    □ Activation Required

    Number of Activations (If Applicable): _____

               (Completion of Page 2 Required if Belt is Activated)

28

P.S. 5558.04
December 23, 1996
Attachment G, Page 2

BP-S599.055 (Continued)

Reason for Activating Belt

Effects

Complaints from Inmate

User Remarks

_____          _____
DATE                                 STAFF MEMBER ACTIVATING BELT

                                     _____
                                     SIGNATURE

(This form may be replicated via WP)

P.S. 5558.04
December 23, 1996
Attachment H, Page 1

BP-S600.055   **INMATE NOTIFICATION OF CUSTODY CONTROL BELT USE**   CDFRM
JUL 94
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

You are hereby advised that you are being required to wear an electronic restraint belt.

This belt discharges 50,000 volts of electricity. By means of a remote transmitter, an attending officer has the ability to activate the stun package attached to the belt, thereby causing the following results to take place:

- ☐   Immobilization causing you to fall to the ground.

- ☐   Possibility of self-defecation.

- ☐   Possibility of self-urination.

**FAILURE TO COMPLY WITH OFFICER DIRECTIONS COULD LEAD TO ANY OF THE ABOVE.**

The belt could be activated under the following actions on your behalf and notification is hereby made:

- ☐   Any tampering with the belt.

- ☐   Failure to comply with staff's verbal order to halt movement of your person.

- ☐   Any attempt to escape custody.

- ☐   Any attempt to inflict serious bodily harm on another person.

- ☐   Any loss of visual contact by the Officer in Charge.

I UNDERSTAND THE ABOVE INFORMATION AND ACKNOWLEDGE BEING ADVISED OF SAME.

_____        _____
INMATE NAME                            ESCORTING OFFICER


_____        _____
INMATE'S REG. NO.                      OFFICER'S SIGNATURE


_____        _____
INMATE'S SIGNATURE                     DATE

(This form may be reproduced via WP)

```
  SCR6G           *        PUBLIC INFORMATION        *     01-04-2008
PAGE 001          *           INMATE DATA            *     08:06:03
                              AS OF 01-04-2008

REGNO..: 80470-038 NAME: QURAISHI, MOHAMMED ABDUL QA

                  RESP OF: BSC / DESIGNATED, AT ASSIGNED FACIL
                  PHONE..: 432-264-0060    FAX: 432-267-6522
                                           RACE/SEX...: ASIAN/PAC.ISL. / MALE
                                           AGE: 41
PROJ REL MT: FULL TERM RELEASE             PAR ELIG DT: N/A
PROJ REL DT: 03-10-2008                     PAR HEAR DT:
-------------------------- ADMIT/RELEASE HISTORY ----------------------------
FCL    ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
BSC    A-DES      DESIGNATED, AT ASSIGNED FACIL 05-25-2007 1921 CURRENT
9-L    RELEASE    RELEASED FROM IN-TRANSIT FACL 05-25-2007 2021 05-25-2007 2021
9-L    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-20-2007 1513 05-25-2007 2021
DSC    ADMIN REL  ADMINISTRATIVE RELEASE        04-20-2007 1413 04-20-2007 1413
DSC    A-ADMIN    ADMINISTRATIVE ADMISSION      04-20-2007 1408 04-20-2007 1413




G0002       MORE PAGES TO FOLLOW . . .
```

```
  SCR6G            *         PUBLIC INFORMATION          *    01-04-2008
PAGE 002           *            INMATE DATA              *    08:06:03
                               AS OF 01-04-2008

REGNO..: 80470-038 NAME: QURAISHI, MOHAMMED ABDUL QA

                   RESP OF: BSC / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 432-264-0060   FAX: 432-267-6522
PRE-RELEASE PREPARATION DATE: 02-10-2008

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  03-10-2008 VIA FT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: MASSACHUSETTS
DOCKET NUMBER...................: 1:04CR 10345-002-NMG
JUDGE...........................: GORTON
DATE SENTENCED/PROBATION IMPOSED: 03-30-2007
DATE COMMITTED..................: 05-25-2007
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

             FELONY ASSESS  MISDMNR ASSESS  FINES          COSTS
NON-COMMITTED.: $200.00      $00.00         $3,000.00     $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

----------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....:  172
OFF/CHG: CT.3;8USC&1324(A)(1)(A)(IV);ENCOURAGING AND INDUCING ALIENS TO
         COME TO,ENTER AND RESIDE IN THE U.S;CT.5;18USC1512(B)(3)
         WITNESS TAMPERING

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:  10 MONTHS
 TERM OF SUPERVISION............:  24 MONTHS
 DATE OF OFFENSE................: 10-01-2004




G0002      MORE PAGES TO FOLLOW . . .
```

```
  SCR6G          *          PUBLIC INFORMATION          *     01-04-2008
PAGE 003 OF 003 *             INMATE DATA               *     08:06:03
                            AS OF 01-04-2008
```

REGNO..: 80470-038 NAME: QURAISHI, MOHAMMED ABDUL QA

```
            RESP OF: BSC / DESIGNATED, AT ASSIGNED FACIL
            PHONE..: 432-264-0060    FAX: 432-267-6522
------------------------CURRENT COMPUTATION NO: 010 -------------------------
```

COMPUTATION 010 WAS LAST UPDATED ON 05-29-2007 AT BSC AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 05-25-2007
TOTAL TERM IN EFFECT............:    10 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    10 MONTHS
EARLIEST DATE OF OFFENSE........: 10-01-2004

JAIL CREDIT.....................:   FROM DATE     THRU DATE
                                    11-19-2004    12-02-2004

TOTAL PRIOR CREDIT TIME.........: 14
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 0
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: 03-10-2008
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 03-10-2008


PROJECTED SATISFACTION DATE.....: 03-10-2008
PROJECTED SATISFACTION METHOD...: FT REL
```

```
S0055     NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

```
  SCR2K  535.03 *              INMATE PROFILE              *     01-03-2008
PAGE 001 OF 001                                                 13:25:51
               80470-038            REG
REGNO: 80470-038              FUNCTION: PRT DOB/AGE.: 03-10-1966 / 41
NAME.: QURAISHI, MOHAMMED ABDUL QA          R/S/ETH.: A/M/O
RSP..: BSC-BIG SPRING CI                    MILEAGE.: 1795 MILES
PHONE: 432-264-0060      FAX: 432-267-6522
 PROJ REL METHOD: FULL TERM RELEASE         FBI NO..: 718477EC6
 PROJ REL DATE..: 03-10-2008                INS NO..: 095440130
 PAR ELIG DATE..: N/A                       SSN.....: 028848009
 PAR HEAR DATE..:               PSYCH: NO   DETAINER: YES      CMC..: NO
OFFN/CHG RMKS: ENCOURAGING&INDUCING ALIENS TO COME TO,ENTER & RESIDE IN THE
OFFN/CHG RMKS: U.S.,WITNESS TAMPERING;10MOS BOP,24MOS S/R;1:04CR10345-002-NMG
  FACL CATEGORY   - - - - CURRENT ASSIGNMENT - - - - - EFF DATE TIME
  BSC  ADM-REL   A-DES    DESIGNATED, AT ASSIGNED FACIL 05-25-2007 1921
  BSC  CARE LEVEL SCRN1   CCM: HEALTHY/SIMPLE CARE      04-20-2007 1519
  BSC  COR COUNSL FL6     M. BARRIOZ 432-267-7911       12-19-2007 1450
  BSC  CASE MGT   IHP PART INS INST HRNG PGM PARTICIPANT 05-25-2007 1046
  BSC  CASE MGT   PROG RPT NEXT PROGRESS REPORT DUE DATE 03-10-2008 1559
  BSC  CASE MGT   RPP UNT C RELEASE PREP UNIT PGM COMPLETE 06-15-2007 1557
  BSC  CASE MGT   V94 COA913 V94 CURR OTHER ON/AFTER 91394 05-25-2007 1045
  BSC  CASE MGT   WA NO HIST NO WALSH ACT OFFENSE HISTORY 04-20-2007 1411
  BSC  CASEWORKER FL6     A. ZARATE 432-267-7911        12-19-2007 1449
  BSC  CUSTODY    IN       IN CUSTODY                    04-20-2007 1408
  BSC  DRUG PGMS  DRG I NONE NO DRUG INTERVIEW REQUIRED 05-30-2007 1323
  BSC  DESIG/SENT QUEBEC   TEAM QUEBEC                   04-20-2007 1411
  BSC  EDUC INFO  ESL EXEMPT ESL NEED-PERMANENTLY EXEMPT 06-13-2007 0943
  BSC  EDUC INFO  GED XN   EXEMPT GED NON-PROMOTABLE     06-13-2007 0943
  BSC  FIN RESP   COMPLT   FINANC RESP-COMPLETED         04-26-2007 1945
  BSC  LEVEL      LOW      SECURITY CLASSIFICATION LOW   04-20-2007 1519
  BSC  MED DY ST  REG DUTY NO MEDICAL RESTR--REGULAR DUTY 06-05-2007 1127
  BSC  MED DY ST  YES F/S  CLEARED FOR FOOD SERVICE      06-05-2007 1127
  BSC  PGM REVIEW FEB      FEBRUARY PROGRAM REVIEW       02-01-2008 1543
  BSC  QUARTERS   F13-084L HOUSE F/RANGE 13/BED 084L     12-19-2007 1529
  BSC  RELIGION   MUSLIM   MUSLIM                        05-26-2007 1021
  BSC  UNIT       FLIGHTLINE T.TAPIA 432-267-7911 X201   05-25-2007 1921
  BSC  WRK DETAIL UNASSGN F UNASSIGNED                   07-26-2007 1509




G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

```
  SCR2K  540*23 *              SENTENCE MONITORING          *     01-03-2008
PAGE 001           *           COMPUTATION DATA             *     13:24:19
                                 AS OF 01-03-2008

REGNO..: 80470-038 NAME: QURAISHI, MOHAMMED ABDUL QA


FBI NO...........: 718477EC6           DATE OF BIRTH: 03-10-1966
ARS1.............: BSC/A-DES
UNIT.............: FLIGHTLINE           QUARTERS.....: F13-084L
DETAINERS........: YES                  NOTIFICATIONS: NO

PRE-RELEASE PREPARATION DATE: 02-10-2008

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  03-10-2008 VIA FT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 010 ---------------------

COURT OF JURISDICTION...........: MASSACHUSETTS
DOCKET NUMBER...................: 1:04CR 10345-002-NMG
JUDGE...........................: GORTON
DATE SENTENCED/PROBATION IMPOSED: 03-30-2007
DATE COMMITTED..................: 05-25-2007
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                FELONY ASSESS  MISDMNR ASSESS   FINES          COSTS
NON-COMMITTED.: $200.00        $00.00           $3,000.00      $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

-----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  172
OFF/CHG: CT.3;8USC&1324(A)(1)(A)(IV);ENCOURAGING AND INDUCING ALIENS TO
         COME TO,ENTER AND RESIDE IN THE U.S;CT.5;18USC1512(B)(3)
         WITNESS TAMPERING

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:    10 MONTHS
 TERM OF SUPERVISION............:    24 MONTHS
 DATE OF OFFENSE................: 10-01-2004




G0002       MORE PAGES TO FOLLOW . . .
```

```
  SCR2K  540*23 *            SENTENCE MONITORING          *    01-03-2008
PAGE 002          *          COMPUTATION DATA             *    13:24:19
                             AS OF 01-03-2008

REGNO..: 80470-038 NAME: QURAISHI, MOHAMMED ABDUL QA


------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 05-29-2007 AT BSC AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 05-25-2007
TOTAL TERM IN EFFECT............:    10 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    10 MONTHS
EARLIEST DATE OF OFFENSE........: 10-01-2004

JAIL CREDIT.....................:   FROM DATE      THRU DATE
                                    11-19-2004     12-02-2004

TOTAL PRIOR CREDIT TIME.........: 14
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 0
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: 03-10-2008
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 03-10-2008


PROJECTED SATISFACTION DATE.....: 03-10-2008
PROJECTED SATISFACTION METHOD...: FT REL




G0002      MORE PAGES TO FOLLOW . . .
```

```
  SCR2K  540*23 *          SENTENCE MONITORING          *     01-03-2008
PAGE 003 OF 003 *            COMPUTATION DATA            *     13:24:19
                            AS OF 01-03-2008

REGNO..: 80470-038 NAME: QURAISHI, MOHAMMED ABDUL QA


--------------------------- CURRENT DETAINERS: ---------------------------

DETAINER NO..: 001
DATE LODGED..: 01-03-2008
AGENCY.......: IMMIGRATION & NATURALIZATION
CHARGES......: DEPORTATION 95440130
```

```
S0055        NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

```
   SCR6G           *       PUBLIC INFORMATION        *    01-04-2008
 PAGE 001          *           INMATE DATA           *    08:05:33
                              AS OF 01-04-2008

REGNO..: 80471-038 NAME: QURAISHI, MOHAMMED ABDUL AZ

                    RESP OF: BSC / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 432-264-0060    FAX: 432-267-6522
                                             RACE/SEX...: ASIAN/PAC.ISL. / MALE
                                             AGE: 42
PROJ REL MT: FULL TERM RELEASE               PAR ELIG DT: N/A
PROJ REL DT: 03-10-2008                       PAR HEAR DT:
-------------------------- ADMIT/RELEASE HISTORY --------------------------
FCL    ASSIGNMENT DESCRIPTION               START DATE/TIME STOP  DATE/TIME
BSC    A-DES      DESIGNATED, AT ASSIGNED FACIL  05-25-2007 1921 CURRENT
9-L    RELEASE    RELEASED FROM IN-TRANSIT FACL  05-25-2007 2021 05-25-2007 2021
9-L    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-20-2007 1441 05-25-2007 2021
DSC    ADMIN REL  ADMINISTRATIVE RELEASE         04-20-2007 1341 04-20-2007 1341
DSC    A-ADMIN    ADMINISTRATIVE ADMISSION       04-20-2007 1339 04-20-2007 1341




G0002       MORE PAGES TO FOLLOW . . .
```

```
  SCR6G           *         PUBLIC INFORMATION         *      01-04-2008
PAGE 002          *            INMATE DATA             *      08:05:33
                                AS OF 01-04-2008

REGNO..: 80471-038 NAME: QURAISHI, MOHAMMED ABDUL AZ

                   RESP OF: BSC / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 432-264-0060    FAX: 432-267-6522
PRE-RELEASE PREPARATION DATE: 02-10-2008

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  03-10-2008 VIA FT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

COURT OF JURISDICTION...........: MASSACHUSETTS
DOCKET NUMBER...................: 1:04CR 10345-003-NMG
JUDGE...........................: GORTON
DATE SENTENCED/PROBATION IMPOSED: 03-30-2007
DATE COMMITTED..................: 05-25-2007
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $200.00        $00.00          $6,000.00    $00.00

RESTITUTION...:  PROPERTY:  NO   SERVICES:  NO      AMOUNT:  $00.00

----------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....: 172
OFF/CHG: CT2;8USC1324(A)(1)(A)(IV);ENCOURAGING AND INDUCING ALIENS TO
         COME TO,ENTER,AND RESIDE IN THE U.S;CT4;18USC1512(B)(3)
         WITNESS TAMPERING

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   10 MONTHS
 TERM OF SUPERVISION............:   24 MONTHS
 DATE OF OFFENSE................: 10-01-2004




G0002        MORE PAGES TO FOLLOW . . .
```

```
  SCR6G          *          PUBLIC INFORMATION          *    01-04-2008
PAGE 003 OF 003 *            INMATE DATA                *    08:05:33
                           AS OF 01-04-2008
```

REGNO..: 80471-038 NAME: QURAISHI, MOHAMMED ABDUL AZ

```
                RESP OF: BSC / DESIGNATED, AT ASSIGNED FACIL
                PHONE..: 432-264-0060   FAX: 432-267-6522
------------------------CURRENT COMPUTATION NO: 010 --------------------------
```

COMPUTATION 010 WAS LAST UPDATED ON 05-29-2007 AT BSC AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 05-25-2007
TOTAL TERM IN EFFECT............:    10 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    10 MONTHS
EARLIEST DATE OF OFFENSE........: 10-01-2004
```

```
JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     11-19-2004     12-02-2004
```

```
TOTAL PRIOR CREDIT TIME.........: 14
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 0
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: 03-10-2008
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 03-10-2008
```

```
PROJECTED SATISFACTION DATE.....: 03-10-2008
PROJECTED SATISFACTION METHOD...: FT REL
```

S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

```
  SCR2K  535.03 *              INMATE PROFILE              *    01-03-2008
PAGE 001 OF 001                                                 13:25:08
            80471-038              REG
REGNO: 80471-038                 FUNCTION: PRT DOB/AGE.: 05-01-1965 / 42
NAME.: QURAISHI, MOHAMMED ABDUL AZ            R/S/ETH.: A/M/O
RSP..: BSC-BIG SPRING CI                      MILEAGE.: 1795 MILES
PHONE: 432-264-0060      FAX: 432-267-6522
 PROJ REL METHOD: FULL TERM RELEASE          FBI NO..: 777134FC8
 PROJ REL DATE..: 03-10-2008                 INS NO..: 095155445
 PAR ELIG DATE..: N/A                         SSN.....: 521830877
 PAR HEAR DATE..:                PSYCH: NO    DETAINER: YES      CMC..: NO
OFFN/CHG RMKS: ENCOURAGING&INDUCING ALIENS TO COME TO,ENTER,AND RESIDE IN THE
OFFN/CHG RMKS: U.S.,WITNESS TAMPERING;10MOS BOP,24MOS S/R;1:04CR10345-003-NMG
   FACL CATEGORY   - - - -   CURRENT ASSIGNMENT - - - - -   EFF DATE  TIME
   BSC  ADM-REL    A-DES     DESIGNATED, AT ASSIGNED FACIL  05-25-2007 1921
   BSC  CARE LEVEL SCRN1     CCM: HEALTHY/SIMPLE CARE       04-20-2007 1459
   BSC  COR COUNSL FL6       M. BARRIOZ 432-267-7911        12-19-2007 1450
   BSC  CASE MGT   CFSA      CERT FOOD SINCERITY APPROVAL   10-26-2007 1629
   BSC  CASE MGT   IHP PART  INS INST HRNG PGM PARTICIPANT  05-25-2007 1046
   BSC  CASE MGT   PROG RPT  NEXT PROGRESS REPORT DUE DATE  03-10-2008 1559
   BSC  CASE MGT   RPP UNT C RELEASE PREP UNIT PGM COMPLETE 06-15-2007 1557
   BSC  CASE MGT   V94 COA913 V94 CURR OTHER ON/AFTER 91394 05-25-2007 1045
   BSC  CASE MGT   WA NO HIST NO WALSH ACT OFFENSE HISTORY  04-20-2007 1340
   BSC  CASEWORKER FL6       A. ZARATE 432-267-7911         12-19-2007 1449
   BSC  CUSTODY    IN        IN CUSTODY                     04-20-2007 1339
   BSC  DRUG PGMS  DRG I NONE NO DRUG INTERVIEW REQUIRED    05-30-2007 1323
   BSC  DESIG/SENT QUEBEC    TEAM QUEBEC                    06-05-2007 1043
   BSC  EDUC INFO  ESL EXEMPT ESL NEED-PERMANENTLY EXEMPT   06-13-2007 0943
   BSC  EDUC INFO  GED XN    EXEMPT GED NON-PROMOTABLE      06-13-2007 0943
   BSC  FIN RESP   COMPLT    FINANC RESP-COMPLETED          07-06-2007 1032
   BSC  LEVEL      LOW       SECURITY CLASSIFICATION LOW    04-20-2007 1459
   BSC  MED DY ST  REG DUTY  NO MEDICAL RESTR--REGULAR DUTY 06-07-2007 1039
   BSC  MED DY ST  YES F/S   CLEARED FOR FOOD SERVICE       06-07-2007 1039
   BSC  PGM REVIEW FEB       FEBRUARY PROGRAM REVIEW        02-04-2008 1508
   BSC  QUARTERS   F13-083L  HOUSE F/RANGE 13/BED 083L      12-19-2007 1529
   BSC  RELIGION   MUSLIM    MUSLIM                         05-26-2007 1022
   BSC  UNIT       FLIGHTLINE T.TAPIA 432-267-7911 X201     05-25-2007 1921
   BSC  WRK DETAIL UNASSGN F  UNASSIGNED                    07-26-2007 1509




G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

```
  SCR2K  540*23 *          SENTENCE MONITORING        *     01-03-2008
PAGE 001           *         COMPUTATION DATA          *     13:24:04
                              AS OF 01-03-2008

REGNO..: 80471-038 NAME: QURAISHI, MOHAMMED ABDUL AZ


FBI NO...........: 777134FC8         DATE OF BIRTH: 05-01-1965
ARS1.............: BSC/A-DES
UNIT.............: FLIGHTLINE         QUARTERS.....: F13-083L
DETAINERS........: YES               NOTIFICATIONS: NO

PRE-RELEASE PREPARATION DATE: 02-10-2008

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  03-10-2008 VIA FT REL

--------------------CURRENT JUDGMENT/WARRANT NO: 010 --------------------

COURT OF JURISDICTION...........: MASSACHUSETTS
DOCKET NUMBER...................: 1:04CR 10345-003-NMG
JUDGE..........................: GORTON
DATE SENTENCED/PROBATION IMPOSED: 03-30-2007
DATE COMMITTED..................: 05-25-2007
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED..............: NO

            FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $200.00      $00.00        $6,000.00    $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

----------------------CURRENT OBLIGATION NO: 010 ----------------------
OFFENSE CODE....:  172
OFF/CHG: CT2;8USC1324(A)(1)(A)(IV);ENCOURAGING AND INDUCING ALIENS TO
         COME TO,ENTER,AND RESIDE IN THE U.S;CT4;18USC1512(B)(3)
         WITNESS TAMPERING

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   10 MONTHS
 TERM OF SUPERVISION............:   24 MONTHS
 DATE OF OFFENSE................: 10-01-2004




G0002       MORE PAGES TO FOLLOW . . .
```

```
  SCR2K  540*23 *              SENTENCE MONITORING        *    01-03-2008
PAGE 002           *          COMPUTATION DATA            *    13:24:04
                               AS OF 01-03-2008

REGNO..: 80471-038 NAME: QURAISHI, MOHAMMED ABDUL AZ


------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 05-29-2007 AT BSC AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 05-25-2007
TOTAL TERM IN EFFECT............:    10 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    10 MONTHS
EARLIEST DATE OF OFFENSE........: 10-01-2004

JAIL CREDIT.....................:   FROM DATE      THRU DATE
                                    11-19-2004     12-02-2004

TOTAL PRIOR CREDIT TIME.........: 14
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 0
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: 03-10-2008
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 03-10-2008


PROJECTED SATISFACTION DATE.....: 03-10-2008
PROJECTED SATISFACTION METHOD...: FT REL
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

```
  SCR2K  540*23 *          SENTENCE MONITORING          *     01-03-2008
PAGE 003 OF 003 *           COMPUTATION DATA            *     13:24:04
                           AS OF 01-03-2008

REGNO..: 80471-038 NAME: QURAISHI, MOHAMMED ABDUL AZ


---------------------------- CURRENT DETAINERS: ----------------------------

DETAINER NO..: 001
DATE LODGED..: 01-03-2008
AGENCY.......: IMMIGRATION & NATURALIZATION
CHARGES......: DEPORTATION 95155445
```

```
S0055       NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

# CORNELL COMPANIES INC.

{ } Airpark          { } Cedar Hill          { X } Flightline          { } Interstate

## INMATE REQUEST TO A STAFF MEMBER
## PETICION DE INTERNOS PARA UN MIEMBRO INSTITUCIONAL

**RECEIVED** JAN 0 3 2007

TO/PARA: _Mr. Adrian Zarate_
(NAME AND TITLE OF OFFICER/NOMBRE Y TITULO DEL OFFICIAL)

SUBJECT: STATE, COMPLETELY, BUT BRIEFLY, THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE, AND
WHAT YOU THINK SHOULD BE DONE. (GIVE DETAILS)
RAZON: ESTIPULE COMPLETO PERO BREVEMENTE EL PROBLEMA CON EL CUAL DESEA ASSISTANCIA Y LO
QUE DEBE SER HECHO. (DAR DETALLES)

Respected Sir,
This is to inform you that my Mother is in a critical position,
suffering from cancer. She is in her last days of life. I request you
pleasure to kindly grant me Furlough under programme statement 5250.08
so that I can visit her. According to our Religion, we have to perform the
Funeral activity also. So I request you to grant me one week's time to
visit my Mother, as she is in her very last days of life. Please take the
decision Immidiately and grant me permission. I will be very greatful to you

(USE OTHER SIDE OF PAGE IF MORE SPACE IS NEEDED.)
(USE EL ATRO LADO DE LA HOJA IS MAS ESPACIO ES NECESITADO.)

NAME/NOMBRE: _MOHAMMED ABDUL QAIYUM QURAISHI_    No./Numero: _80470-038_

WORK ASSIGNMENT/ASIGNACION DE TRABAJO: _N/0_    UNIT/UNIDAD: _R[F13M-084L_

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be
interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no
action being taken.
NOTA: Si usted sigue las instrucciones en preparar su peticion, puede ser dispuesta mas rapida y inteligentemente. Usted sera
entrevistado si es necesario para poder manejar su peticion satisfactoriamente. Su negligencia en declarar su problema especificamente
puede resultar en que no se tome alguna accion.

DISPOSITION: (DO NOT WRITE IN THIS SPACE)          DATE/FECHA:_____
DISPOSICION: (NO ESCRIBA EN ESTE ESPACIO)

Officer/Official

COPOUT FORM



RECEIVED JAN 0 3 2007

# CORNELL CORRECTIONS
## Flightline Unit

## INMATE REQUEST TO A STAFF MEMBER
## PETICION DE INTERNOS PARA UN MIEMBRO INSTITUCIONAL

TO/PARA: **Mr. Adrian Zarate.**
(NAME AND TITLE OF OFFICER/NOMBRE Y TITULO DEL OFICIAL)

SUBJECT: STATE, COMPLETELY, BUT BRIEFLY, THE PROBLEM ON WHICH YOU DESIRE
ASSISTANCE, AND WHAT YOU THINK SHOULD BE DONE. (GIVE DETAILS)
RAZON: ESTIPULE COMPLETO PERO BREVEMENTE EL PROBLEMA CON EL CUAL DESEA
ASSISTANCIA Y LO QUE DEBE SER HECHO. (DAR DETALLES)

I am writing this cop out to inform you that my mother is termina
ill from cancer and is in her last few days. I request you to grant
me furlough under program statement 5250.08 so that I can visit
her. I am requesting you to grant me a week's time so that I
can perform the last rites as well as see her alive. Please treat
this urgently and grant me permission. I have also written a copy to
Mr. Tapia seperately

(USE OTHER SIDE OF PAGE IF MORE SPACE IS NEEDED.)
(USE EL ATRO LADO DE LA HOJA IS MAS ESPACIO ES NECESITADO.)

NAME/NOMBRE: Mohammad Abdul Aziz Qurraish   No./Numero: 80471-038

UNIT/UNIDAD: R [F137-083L]

WORK ASSIGNMENT/ASIGNACION DE TRABAJO: _____

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be
erviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no
ion being taken.
NOTA: Si usted sigue las instrucciones en preparar su peticion, puede ser dispuesta mas rapida y inteligentemente. Usted sera
revistado si es necesario para poder manejar su peticion satisfactoriamente. Su negligencia en declarar su problema especificamente
ede resultar en que no se tome alguna accion.

DATE/FECHA: _____

DISPOSITION: (DO NOT WRITE IN THIS SPACE)
DISPOSICION: (NO ESCRIBA EN ESTE ESPACIO)

Officer/Official