# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| MOHAMMED ABDUL RASHEED QURAISHI, | ) Cr. No. 04-10345-NMG |
| MOHAMMED ABDUL QAYIUM QURAISHI and | ) |
| MOHAMMED ABDUL AZIZ QURAISHI | ) |
| | ) |

## GOVERNMENT'S MOTION TO REFUND EXPENSES

The United States of America, by Assistant U.S. Attorney Kimberly West, respectfully request this Court to order the defendants to refund the Bureau of Prisons ("BOP") $20,451.98 for costs associated with the defendants' escorted trip from Big Spring, Texas to Massachusetts to see their dying mother. See Attachment A, Declaration of Galen Montanye. As the basis for this request, the government submits that BOP's insistence that escorts be used during the trip was not unreasonable in light of the defendants deportable status and the potential that the defendants would not return to BOP if they were allowed to go on the trip unescorted.

On December 28, 2007, the defendants filed an Emergency Motion for Early Release or, in the Alternative, for Temporary Release from BOP custody due to their mother's impending death.[1]     The government assented to the defendants' temporary release. On the same day, this Court denied the defendant's request for early release, but granted their request for temporary release:

> Emergency motion for early release is denied; emergency motion for temporary release is allowed for a period not to exceed four (4) days and provided that, upon temporary release from Bureau of Prisons custody,

---

[1]   Their mother ultimately passed away on/about February 4, 2008.

defendants shall, at their own expense, proceed forthwith to Massachusetts and return to the designated Bureau of Prisons facility within the allotted time of release.

On January 3, 2008, the defendants filed an <u>Emergency Motion to Compel Enforcement of this Court's Order and for Contempt</u> because BOP had not released the defendants. At the hearing on the same day, the Court inquired whether the defendants had requested their temporary release from BOP pursuant to BOP procedures. Although counsel indicted that "[f]or the past several months we've been also trying to work with the prison to file a request within the prison so that we can go that route," their request was not in fact filed until January 3, 2008, the day of the hearing. (Tr. p.5, January 3, 2008) and <u>see</u> Attachment B. In addition, the government acknowledged that it had mistakenly understood that the Court had jurisdiction under 18 U.S.C. § 3622 and had thereby given its assent to the request for temporary release. (Tr. p. 9, January 3, 2008).

Notwithstanding, BOP agreed to have the defendants in Boston by Saturday, January 5, 2008, within 48 hours of the hearing before the Court. BOP also agreed to remain outside the defendants' mother's room while the defendants visited and agreed not to handcuff the defendants in their mother's presence.[2] Over the course of the next few days and subsequent hearings, BOP also agreed to extend the number of hours the defendants could spend with their mother daily, to notify the defendants immediately if their mother's condition deteriorated, to bring the defendants to their mother immediately to administer her last rites and to move the defendants to a closer facility to her hospital so they could spend more time with her.

---

[2]   Although these provisions are noted in the Court's January 8, 2008 Order, BOP agreed to their implementation beforehand.

On January 8, 2008, the defendants filed a <u>Motion to Extend Massachusetts Visit</u> requesting that they be permitted to extend their release until two days following the death of their mother.  (Their mother ultimately passed away almost one month later.)  The government opposed the motion.  At the hearing on January 9, 2008, the Court offered to order BOP to keep the defendants in Massachusetts until the following Tuesday, a total of six additional days, if the defendant paid $7500 up front to cover their own costs associated with the trip as order by the original December 28, 2007 order.

The defendants declined to pay the $7500.  Consequently, they visited their mother for two more days instead of the additional five days the court had suggested.  During the hearing, the Court noted, not for the first time, that Aziz Quraishi's presentencing report indicated that his net value was over $500,000.  <u>See</u> Attachment C, ¶ ¶ 83-85.

**A.      BOP's decision to use escorts was not unreasonable and the defendants should pay for the escorts' expense.**

In recognition that the defendants represented a risk of flight, the parties came to an agreement regarding their initial release at the beginning of the litigation of the underlying criminal case:  in December 2004, Qayium Quraishi was released on a $250,000 unsecured bond with electronic monitoring (in October 2005 the electronic monitoring was removed), and Aziz Quraishi was released on a $250,000 secured bond.  However, now that both defendants have been convicted, they face almost certain deportation to India.  Indeed, Qaiyum Quraishi requested a stipulated order of removal from the United States in May 2007 before he was placed in BOP custody.  <u>See</u> Attachment D.  As a result, once Qaiyum Quraishi is released from BOP custody on March 10, 2008, he will be placed into ICE custody and will be removed without a hearing.

Aziz Quraishi's immigration hearing is scheduled for March 10, 2008, the day of his release from BOP custody. His crime of conviction, 18 U.S.C. 1324(a)(1)(A)(iv), encouraging and inducing aliens to come to, and reside in the United States, is an aggravated felony. See 8 U.S.C. 1101(a)(43)(N). Consequently, Aziz is deportable and enjoys very few avenues of relief from removal. For example, as a felon convicted of an aggravated felony, he is ineligible to apply for asylum. See 8 U.S.C. 1158(b)(2)(A)(ii) and 1158(b)(2)(B)(i). However, Aziz might avoid removal if he could show that his life would be threatened in his home country because of his race, religion, nationality, membership in a particular political group or his political opinion. See 8 U.S.C. 1231(b)(3)(A). This is theory of relief would unlikely be unsuccessful for Aziz as one of his brothers has already been removed to India[3] and his other brother, Qayium, voluntarily stipulated to removal to India. There is no information suggesting that Aziz is uniquely situated in this regard from his brothers.

Finally, the only other avenue of relief from removal is if Aziz could qualify under the Convention Against Torture by showing that he would be tortured if removed to his home country. See 8 C.F.R. 208.16(c)(2). Again, this is also an unlikely claim.

Both defendants represented risks of flights due to their impending removal from the United States and BOP was not unreasonable in its insistence on the use of escorts during the defendants' trip to see their mother. Had the defendants processed their request properly pursuant to BOP's policy, they would not have even been considered for a non-escorted trip. As deportable aliens, the defendants were classified as "In" custody inmates. "In" custody inmates are not eligible for unescorted trips outside the BOP facility because of the higher likelihood of

---

[3]     Rasheed Quraishi was deported on February 7, 2008.

escape as compared to inmates who are not deportable aliens. <u>See</u> Program Statement 5280.08, Furloughs.

Once it was clear that although the defendants had not made their request through the proper channels but were suffering from a serious family crisis, BOP responded quickly and generously. Considering the serious risk of flight the defendants presented, it was not unreasonable for BOP to insist on escorted trips. Furthermore, BOP's request for reimbursement is not inconsistent with the spirit of the original court order and reasonable under the circumstances.

<div style="margin-left: 40%;">

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

</div>

By:     <u>/s/ Kimberly P. West</u>
        KIMBERLY P. WEST
        Assistant U.S. Attorney

DATE: January 15, 2008

<div style="text-align: center;">5</div>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>/s/ Kimberly P. West</u>
Kimberly P. West
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| V. | ) |
| | ) |
| MOHAMMED ABDUL RASHEED | ) |
| QURAISHI, MOHAMMED ABDUL | )    Cr. No.   04-10345-MLW |
| QAYIUM QURAISHI, MOHAMMED | ) |
| ABDUL AZIZ QURAISHI | ) |
| | ) |
| Defendants | ) |
| | ) |

**DECLARATION OF GALEN MONTANYE**

I, Galen Montanye, hereby declare and state the following:

1. I am the Assistant Comptroller of the South Central Region of the Federal Bureau of Prisons. I have held this position since November 2002. I have been employed with the Federal Bureau of Prisons (BOP) since June 1990. As the Assistant Comptroller for the South Central Region of the BOP I am responsible for the oversight of 17 institution business offices throughout Texas, Oklahoma, New Mexico, Arkansas, and Louisiana.

2. I am familiar with the court ordered bedside visits that inmates Mohammed Abdul Aziz Quraishi, Register Number 80471-038, and Mohammed Abdul Qayium Quraishi, Register Number 80470-038, had in the Boston, Massachusetts area from January 5, 2008 through January 13, 2008. I have computed costs incurred by the BOP as a result of this trip based upon receipts and other

1

financial documents compiled by BOP staff.

3.   The costs attributable to BOP escorts that were provided for
the Quraishis' trip from the Federal Correctional Institution
(FCI) at Big Spring, Texas to Boston, Massachusetts are as
follows:

| | | |
|---|---|---|
| A. | Staff Airfare[1] | $4,203.00 |
| B. | Mileage Expenses[2] | $538.66 |
| C. | Per Diem and Other Expenses | |
| | Related to Staff Travel[3] | $3,881.00 |
| D. | Salaries[4] | $11,829.32 |
| Total Costs: | | $20,451.98 |

4.   The above calculations account for all escort expenses

---

[1]    This consists of the cost of the airline tickets of the
three FCI Big Spring escorting staff members.  The costs of the
Quraishis' airfare is excluded from the calculations articulated
in this declaration.

[2]    This figure represents the costs associated with the
ground transportation of the Quraishis and escorting staff
members.

[3]    This particular calculation is impacted by the one-day
return trip delay caused by airline policy concerning inmate
transportation and seat availability.

[4]    This figure accounts for staff salary time used for the
escorted trip.  This includes the salaries for the three
escorting staff members from FCI Big Spring, as well as the
salary costs for staff members from the Federal Medical Center at
Devens, Massachusetts that assisted with escort duties and
transportation of the Quraishis while they were in Massachusetts.

resulting from the Quraishis' bedside visit as ordered by the court. For bedside visits authorized and conducted pursuant to BOP policies and procedures, the subject inmates are not responsible for staff salary expenses for the first eight hours of each day. See 28 C.F.R. § 570.42. Accordingly, if agency officials would have approved a bedside escorted trip of this exact magnitude, despite this trip's duration, the escort costs responsible to the inmates would have been $13,819.02, with the government retaining responsibility for the first eight hours of staff salary time for each day.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 5th day of February 2008 in Dallas, Texas.


_____
Galen Montanye
Assistant Comptroller
South Central Regional Office
Federal Bureau of Prisons
Dallas, Texas

# CORNELL COMPANIES, INC.

{ } Airpark        { } Cedar Hill        {X} Flightline        { } Interstate

## INMATE REQUEST TO A STAFF MEMBER
## PETICION DE INTERNOS PARA UN MIEMBRO INSTITUCIONAL

**RECEIVED** JAN 0 3 2007

TO/PARA: _Mr. Adrian Zarate_
(NAME AND TITLE OF OFFICER/NOMBRE Y TITULO DEL OFFICIAL)

SUBJECT: STATE, COMPLETELY, BUT BRIEFLY, THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE, AND WHAT YOU THINK SHOULD BE DONE. (GIVE DETAILS)

RAZON: ESTIPULE COMPLETO PERO BREVEMENTE EL PROBLEMA CON EL CUAL DESEA ASSISTANCIA Y LO QUE DEBE SER HECHO. (DAR DETALLES)

Respected Sir,

This is to inform you that my Mother is in a critical position, suffering from cancer. She is in her last days of life. I request you please to kindly grant me furlough under programme statement 5250.08 so that I can visit her. According to our Religion, we have to perform the Funeral activity also. So I request you to grant me one week's time to visit my Mother, as she is in her very last days of life. Please take the decision immidiately and grant me permission. I will be very grateful to you

(USE OTHER SIDE OF PAGE IF MORE SPACE IS NEEDED.)
(USE EL ATRO LADO DE LA HOJA IS MAS ESPACIO ES NECESITADO.)

NAME/NOMBRE: _MOHAMMED ABDUL QAIYUM QURAISHI_    No./Numero: _80470-038_

WORK ASSIGNMENT/ASIGNACION DE TRABAJO: _N/o_    UNIT/UNIDAD: _R [F13M-084L_

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

NOTA: Si usted sigue las instrucciones en preparar su peticion, puede ser dispuesta mas rapida y inteligentemente. Usted sera entrevistado si es necesario para poder manejar su peticion satisfactoriamente. Su negligencia en declarar su problema especificamente puede resultar en que no se tome alguna accion.

DISPOSITION: (DO NOT WRITE IN THIS SPACE)    DATE/FECHA: _____
DISPOSICION: (NO ESCRIBA EN ESTE ESPACIO)

Officer/Official

COPOUT FORM

# CORNELL CORRECTIONS
## Flightline Unit



## INMATE REQUEST TO A STAFF MEMBER
## PETICION DE INTERNOS PARA UN MIEMBRO INSTITUCIONAL

**TO/PARA:** Mr. Adrian Zarate.
(NAME AND TITLE OF OFFICER/NOMBRE Y TITULO DEL OFFICIAL)

**SUBJECT:** STATE, COMPLETELY, BUT BRIEFLY, THE PROBLEM ON WHICH YOU DESIRE
ASSISTANCE, AND WHAT YOU THINK SHOULD BE DONE. (GIVE DETAILS)

**RAZON:** ESTIPULE COMPLETO PERO BREVEMENTE EL PROBLEMA CON EL CUAL DESEA
ASSISTANCIA Y LO QUE DEBE SER HECHO. (DAR DETALLES)

I am writing this cop out to inform you that my mother is terminally ill from Cancer ~~and~~ and is in her last few days. I request you to grant me furlaugh under program statement 5250.08 so that I can visit her. I am requesting you to grant me a week's time so that I can perform the last rites as well as see her alive. Please treat this urgently and grant me permission. I have also written a copy to Mr Tapia seperately

(USE OTHER SIDE OF PAGE IF MORE SPACE IS NEEDED.)
(USE EL OTRO LADO DE LA HOJA IS MAS ESPACIO ES NECESITADO.)

**NAME/NOMBRE:** Mohammad Abdul Aziz Qurishi  **No./Numero:** 80471-038

**UNIT/UNIDAD:** R [F13M-083L]

**WORK ASSIGNMENT/ASIGNACION DE TRABAJO:** _____

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.
NOTA: Si usted sigue las instrucciones en preparar su peticion, puede ser dispuesta mas rapida y inteligentemente. Usted sera revistado si es necesario para poder manejar su peticion satisfactoriamente. Su negligencia en declarar su problema especificamente puede resultar en que no se tome alguna accion.

**DISPOSITION: (DO NOT WRITE IN THIS SPACE)**  **DATE/FECHA:** _____
**DISPOSICION: (NO ESCRIBA EN ESTE ESPACIO)**

(81) Quraishi reports that he has never collected unemployment or social security benefits.

### Financial Condition - Ability to Pay

(82) The following information regarding the financial status of the defendant was obtained from the financial statement submitted by the defendant.

(83) The financial statement requests that the defendant provide the Probation Office with information regarding individual assets and liabilities as well as the assets and liabilities which the defendant holds jointly with a spouse or significant other, the assets and liabilities which are held by the defendant's spouse or significant other, and the assets and liabilities of the defendant's dependents of which the defendant enjoys the benefit or to which the defendant makes occasional contributions. These items are identified as follows: Individual "(I)"; Joint "(J)"; Spouse/Significant Other "(S)"; and Dependent "(D)". The necessary family expenses are those of the entire family unit.

## NET WORTH ANALYSIS

ASSETS

Bank Accounts
| | | |
|---|---|---|
| (J) Checking Account | $ 35,000 |

Motor Vehicle
| | | |
|---|---|---|
| (I) 2001 Mitsubishi Monteiro | $ 8,000 |
| (S) 2006 Mercedes C280 | $ 32,500 |

Real Estate

38 Kevin Clancy Way in Stoughton, MA    $401,758
    Fair Market Value: $600,000
    Mortgage Balance: $198,242
    Equity: $401,756

Real Estate (Subject to Forfeiture)

80 Walnut Street #401 in Canton, MA    $117,241
    Fair Market Value: $200,000
    Mortgage Balance: $82,759
    Equity: $117,041

Other Assets
Jewelry    $ 3,000

Total Assets: $597,499

18

LIABILITIES

(84) The defendant reports that his only liabilities are the two mortgages which have already been included above to determine the equity of his home.

(85) A check of the defendant's credit history reveals that the defendant's only two open and active accounts are his mortgages.

Total Liabilities:  $0

**NET WORTH:  $597,499**

**CASH FLOW ANALYSIS**

MONTHLY CASH INFLOW
| | |
|---|---|
| Defendant's Monthly Net Income | $3,835 |
| Spouse's Monthly Net Income | $2,977 |

Total Monthly Cash Inflow:  $6,812

NECESSARY MONTHLY CASH OUTFLOW

| | |
|---|---|
| Mortgage #1 | $2,541 |
| Mortgage #2 | $ 648 |
| Groceries/Incidentals (Family of 7) | $ 306 |
| Electric | $ 264 |
| Heating Gas | $ 575 |
| Clothing | $ 24 |
| Telephone | $ 65 |
| Internet | $ 41 |
| Medical | $ 200 |

Total Necessary Monthly Cash Outflow:  $4,664

**TOTAL MONTHLY CASH FLOW: $2,148**

(86) Note: Documentation for the below-indicated expenses has not been received. As such, the following reported expenses have not been included in the financial analysis:

| | |
|---|---|
| Groceries/Incidentals (Family of 7) | $1,194 |
| Water/Sewer | $ 42 |
| Transportation (Fuel and Auto Maintenance) | $ 250 |
| Auto Insurance | $ 140 |
| Homeowner Insurance | $ 125 |
| Clothing | $ 176 |
| Other | $ 293 |

19

UNITED STATES IMMIGRATION COURT
JFK FEDERAL BLDG., ROOM 320
BOSTON, MA 02203-0002

*STIPULATED ORDER*

IN THE REMOVAL CASE OF                         CASE NO.: A95-440-130
QURAISHI, MOHAMMED ABDUL QAIYUM
RESPONDENT

## ORDERS

[X] This is a memorandum of the Court's Decision and Orders entered on
_____June 1, 2007_____. This memorandum is solely for the
convenience of the parties. The ~~written~~ written Findings, Decision
and Orders *are* the official opinion in this case. (X) Both parties
waived issuance of a formal oral decision in the case.

[X] The respondent was ordered REMOVED from the United States to
_____India_____ ( ) in absentia.

[ ] Respondent's application for VOLUNTARY DEPARTURE was DENIED and
respondent was ordered removed to _____, in the
alternative to _____.

[ ] Respondent's application for VOLUNTARY DEPARTURE was GRANTED until
_____, upon posting a voluntary departure bond in the amount
of $_____ to INS within five business days from the date of this
Order, with an alternate Order of removal to _____
or _____. Respondent shall present to INS within
( ) thirty days ( ) sixty days from the date of this Order, all
necessary travel documents for voluntary departure.

[ ] Respondent's application for ASYLUM was ( ) granted ( ) denied
( ) withdrawn with prejudice.
( ) subject to the ANNUAL CAP under the INA section 207(a)(5).
( ) Respondent knowingly filed a FRIVOLOUS asylum application.

[ ] Respondent's application for WITHHOLDING of removal under INA
section 241(b)(3) was ( ) granted ( ) denied ( ) withdrawn with
prejudice.

[ ] Respondent's application for WITHHOLDING of removal under the Torture
Convention was ( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ] Respondent's application for DEFERRAL of removal under the Torture
Convention was ( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ] Respondent's application for CANCELLATION of removal under section
( ) 203(b) of NACARA, ( ) 240A(a) ( ) 240A(b)(1) ( ) 240A(b)(2)
of the INA, was ( ) granted ( ) denied ( ) withdrawn with prejudice.
If granted, it was ordered that the INS issue all appropriate documents
necessary to give effect to this Order. Respondent ( ) is ( ) is not
subject to the ANNUAL CAP under INA section 240A(e).

[ ] Respondent's application for a WAIVER under the INA section
_____ was ( ) granted ( ) denied ( ) withdrawn or
( ) other _____. ( ) The conditions imposed by
INA section 216 on the respondent's permanent resident status were removed.

[ ] Respondent's application for ADJUSTMENT of status under section _____
of the ( ) INA ( ) NACARA ( ) _____ was
( ) granted ( ) denied ( ) withdrawn with prejudice. If granted,
it was ordered that INS issue all appropriate documents necessary to
give effect to this Order.

NLC

CASE NUMBER: 95-440-130                    RESPONDENT: QURAISHI, MOHAMMED ABDUL QAIYUM

[ ] Respondent's status was RESCINDED pursuant to the INA section 246.
[ ] Respondent's motion to WITHDRAW his application for admission was
    ( ) granted ( ) denied.  If the respondent fails to abide by any of
    the conditions directed by the district director of INS, then the
    alternate Order of removal shall become immediately effective without
    further notice or proceedings:  the respondent shall be removed from
    the United States to _____.
[ ] Respondent was ADMITTED as a _____ until
    _____.  As a condition of admission, the respondent was
    ordered to post a $ _____ bond.
[ ] Case was ( ) TERMINATED ( ) with ( ) without prejudice
    ( ) ADMINISTRATIVELY CLOSED.
[ ] Respondent was orally advised of the LIMITATION on discretionary
    relief and consequences for failure to depart as ordered.
    [ ] If you fail to voluntarily depart when and as required, you shall
    be subject to civil money penalty of at least $1,000, but not more than
    $5,000, and be ineligible for a period of 10 years for any further
    relief under INA sections 240A, 240B, 245, and 248 (INA Section 240B(d)).
    [ ] If you are under a final order of removal, and if you willfully fail
    or refuse to 1) depart when and as required, 2) make timely application
    in good faith for any documents necessary for departure, or 3) present
    yourself for removal at the time and place required, or, if you conspire
    to or take any action designed to prevent or hamper your departure, you
    shall be subject to civil money penalty of up to $500 for each day under
    such violation.  (INA section 274D(a)).  If you are removable pursuant
    to INA 237(a), then you shall further be fined and/or imprisoned for up
    to 10 years.  (INA section 243(a)(1)).
[X] Other:
    _The Repondent, through Counsel, has entered_
    _into a stipulated order pursuant to 8 CFR 1003. 25(b)_
    _See stipulated request for removal at Exhibit 1A. This Court_
    _has reviewed the record of proceedings and is familiar with that record._

Date:  May 29, 2007

                                        _____
                                        MATTHEW J. D'ANGELO, Judge

APPEAL: (X) waived ( ) reserved    by ( ) Respondent ( ) INS (X) Both

DUE BY:

_____

                    CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: [ ✓ ] MAIL      [ ] PERSONAL SERVICE
TO: [ ✓ ] INS [ ] ALIEN [ ] Alien's ATT/REP [ ] ALIEN c/o Custodial Officer
DATE:  5/31/07  BY: [ ✓ ] COURT STAFF [ ] JUDGE _____
_____

                                                          Y2
                                                          Y2

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
BOSTON, MASSACHUSETTS

---

IN THE MATTER OF:

| | |
|---|---|
| **Mohammed Abdul Qaiyum QURAISHI** | IN REMOVAL PROCEEDINGS |
| **AKA, Mohammed A. QURAISHI; Mohammed A.** | FILE NO. **A95 440 130** |
| **Q. QURAISHI; Mohd Abdul QURAISHI; Farees** | |

---

**CHARGES:** Section(s) **237 (a) (1) (C) (i)** of the Immigration and Nationality Act

**RELIEF APPLICATION:** None

ON BEHALF OF RESPONDENT:                     ON BEHALF OF SERVICE:

Daniel P. Harrington, Esq.                                            Helen Moore
171 Milk Street                                            Assistant Chief Counsel
Suite 24
Boston, MA 02109

### DECISION AND ORDER OF THE IMMIGRATION JUDGE

Pursuant to the Notice to Appear issued on June 25, 2004, the respondent is charged with being removable as indicated above. The respondent has submitted a statement wherein he/she waives a personal hearing before the Immigration Judge, and admits the truthfulness of the allegations and the charges contained in the Notice to Appear. The respondent concedes that he/she is ineligible for or has made no application for relief from removal proceedings, which would allow him/her to remain in the United States, but instead requests issuance of an order by this Court for his/her removal to the country of **INDIA**. The U.S. Immigration and Customs Enforcement concur with the request.

A stipulated order shall constitute a conclusive determination of the alien's removability from the United States. Based upon the respondent's admissions, the charges of removal are sustained by evidence that is clear and convincing. The parties have waived appeal.

Accordingly, the following Order shall be entered:

ORDER: IT IS HEREBY ORDERED that the respondent be REMOVED from the United States to **INDIA** on the charges contained in the Notice to Appear.

JUN 0 1 2007
_____                     _____
**Date**                                            **Immigration Judge**
                                                      Judge Matthew J. D'Angelo

3