UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 04-10345-NMG |
| | ) | |
| MOHAMMED ABDUL RASHEED QURAISHI, | ) | |
| MOHAMMED ABDUL QAYIUM QURAISHI, | ) | |
| MOHAMMED ABDUL AZIZ QURAISHI, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## DECLARATION OF LAURA B. ANGELINI

I, Laura Angelini, declare as follows:

1.      I am counsel for Mohammed Abdul Aziz Quraishi ("Aziz"). I submit this Declaration on behalf of Aziz Quraishi and his brother, Mohammed Abdul Qayium Quraishi ("Farees") in support of their Opposition to the Government's Motion to Refund Expenses.

2.      On December 28, 2007, I faxed a copy of Defendants' Emergency Motion for Early Release Or, in the Alternative, For Temporary Release, to the Government in advance of filing it in order to obtain the Government's position on the motion.

3.      Attached hereto as Exhibit A is a true and accurate copy of excerpts from the transcript of the hearing on January 3, 2008.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 27th day of February 2008.

  /s/ Laura B. Angelini_____
Laura B. Angelini

*#725243v1*

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February 2008, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/  Laura B. Angelini
Laura B. Angelini

1

1      UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
2

3

4    UNITED STATES OF AMERICA,              )
                        Plaintiff,          )
5                                           )
                                            )
6    vs.                                    )    1:04-cr-10345-NMG
                                            )
7                                           )
     MOHAMMED ABDUL RASHEED                  )
8    QURAISHI, MOHAMMED ABDUL QAYIUM         )
     QURAISHI, MOHAMMED ABDUL AZIZ          )
9    QURAISHI,                              )
                        Defendants.         )
10

11
     BEFORE:   THE HONORABLE MARK L. WOLF
12

13
                    MOTIONS HEARING
14

15

16
              John Joseph Moakley United States Courthouse
17                     Courtroom No. 10
                       One Courthouse Way
18                     Boston, MA 02210
                   Thursday, January 3, 2008
19                      2:30 p.m.

20

21

22              Brenda K. Hancock, RMR, CRR
                   Official Court Reporter
23        John Joseph Moakley United States Courthouse
                    One Courthouse Way
24                  Boston, MA 02210
                     (617)439-3214
25        Mechanical Steno - Transcript by Computer

2

```
 1   APPEARANCES:

 2        UNITED STATES ATTORNEY'S OFFICE
          By:  Kimberly P. West, (Present before recess only)
 3             Assistant United States Attorney
                - and -
 4             Nadine Pellegrini, (Present after recess only)
               Assistant United States Attorney
 5        John Joseph Moakley Federal Courthouse
          1 Courthouse Way
 6        Suite 9200
          Boston, MA 02210
 7
          FEDERAL BUREAU OF PRISONS
 8        By:  Michael D. Frazier,
               Deputy Regional Counsel
 9              - and -
               Darrin Scott, Esq.
10        4211 Cedar Springs Road
          Dallas, TX 75219
11

12                      *   *   *   *   *   *

13        DONNELLY, CONROY & GELHAAR, LLP
          By:  Jill Brenner Meixel, Esq.
14        One Beacon Street
          33rd Floor
15        Boston, MA 02108
          On behalf of the Defendant
16        Mohammed Abdul Qayium Quraishi

17        HINCKLEY, ALLEN & SNYDER, LLP
          By:  Laura B. Angelini, Esq.
18        28 State Street
          30th Floor
19        Boston, MA 02109
          On behalf of the Defendant
20        Mohammed Abdul Aziz Quraishi

21

22

23

24

25
```

9

1   of minutes a month.  Talk to your clients.  Ms. West, what's

2   the government's position, please?

3            MS. WEST:  Your Honor, I came on the scene about a

4   week ago, when I got the phone call in regard to the request in

5   front of Judge Gorton, and the request was that there be either

6   an early release or a temporary release.  I indicated to Ms.

7   Angelini that, frankly, I did not disagree with the early

8   release, I thought it was the right thing to do.  To my

9   embarrassment yesterday, I got a phone call from Mr. Frazier,

10  who's on the phone right now, who indicated that, under 3622,

11  it was their position that the Court didn't have jurisdiction

12  to do so.  I have now looked at 3622, I've spoken to Mr.

13  Frazier and some of the people in my office, and, indeed, I

14  think that's true, I think the order can impose jurisdiction on

15  this Court and the jurisdiction can't be waived.  So, in regard

16  to --

17           THE COURT:  Well, right now, actually, though, what we

18  have is Judge Gorton's Order.

19           MS. WEST:  Right.

20           THE COURT:  Let me ask you this.  Did you get notice

21  of the defendants' Emergency Motion to Compel -- oh, not that

22  one -- the Emergency Motion for Early Release that was filed on

23  December 28?

24           MR. WEST:  They called me about that, and I agreed to

25  it under --

11

1       THE COURT:  Well, have your colleague there start
2    making your plane reservations, because there's a possibility
3    you're going to need to be here tomorrow morning.  Tell me the
4    cite again, please.
5       MR. FRAZIER:  78 F.3d, 589.
6       THE COURT:  Okay, I'll read it.
7       MR. FRAZIER:  I also have another case, your Honor,
8    that's *United States versus Gigante*.  That would be 2002 West
9    Law 720347.
10      THE COURT:  Okay.
11      MR. FRAZIER:  And also with respect to these two
12   inmates, recent information has come to my attention that both
13   of these inmates are actually deportable aliens, and if we had
14   been presented with this information, I would have been able to
15   tell counsel that normally under our policy, inmates who are
16   deportable aliens would not be released on a medical furlough.
17   It is within the discretion of the Bureau of Prisons to do
18   that, but normally a warden would not release an inmate who is
19   a deportable alien.
20      THE COURT:  But right now you've got something of an
21   abnormal -- have you checked to see whether anybody has told
22   these defendants they had to come to court and has failed to
23   process their request?
24      MR. FRAZIER:  No one from the Federal Bureau of
25   Prisons has told that.  I don't know if somebody from the

1    Vietnam War.  It was not as broad as some people would have
2    liked, and it was carefully written out and sent to the U.S.
3    Attorney, and the United States Attorney in Boston made a very
4    broad pronouncement describing that limited amnesty, and some
5    people who were not eligible came back to Massachusetts in
6    reliance on what the U.S. Attorney said that exceeded what the
7    President of the United States had authorized him to say.  So,
8    the question came to Attorney General Levi, Well, now we've got
9    them, should we prosecute them, they weren't authorized
10   amnesty, and the Attorney General said, No, of course not, that
11   would be dishonorable, that's not the way the United States
12   behaves.

13          I mean, here's the question.  Judge Gorton, who knows
14   this case, who sentenced these prisoners, perhaps relying, in
15   part, on the assent of the prosecutor, who also knows these
16   people, or the office knows the people, agreed a week ago this
17   was appropriate.  Right now, you've got an order, not a request
18   from an inmate, you've got an order from a United States
19   District Judge, who happens to be in Washington today
20   discharging his duties as a member of the Foreign Intelligence
21   Security Court, to let them out, and they should have been let
22   out now.

23          So, the way you have to test that order and test your
24   thinking that there's no jurisdiction, even when the government
25   assents, which is what the Department of Justice did, and

14

1   you're in the Department of Justice, is to go into contempt,
2   and as far as I know, Harley Lappin's the Director of the
3   Bureau of Prisons, and, so, your options, Mr. Frazier, are
4   either to have the Bureau of Prisons agree to release these
5   fellows temporarily so they can come see their mother on
6   appropriate conditions, and maybe there's some other condition
7   that could be added, if it's a feasible and fair condition, or
8   you'll participate in this hearing tomorrow, Mr. Lappin will,
9   on why he shouldn't be held in civil contempt.  If he's held in
10  civil contempt because you've got Judge Gorton's Order, and I
11  don't think it's appropriate for me to reconsider his order,
12  the government didn't file anything even challenging the order
13  or asking that it be reconsidered, now, I would hold him in
14  civil contempt.  I'll have to go check the rule.  I think I
15  have to wait 48 hours before he can be locked up on civil
16  contempt, so I'd enter the order tomorrow afternoon, and he
17  wouldn't have to be locked up until Monday morning.  That's the
18  landscape on which we're operating, and the First Circuit might
19  extend the time to consider the issue, but if you lose the
20  issue and the defendant's mother dies so they never get to see
21  her, then civil contempt is no longer possible, because, as you
22  know, that's intended to compel compliance with an order, but
23  criminal contempt proceedings are conceivable.
24        So, we're not talking about a bureaucratic issue.
25  We're talking about the proper ways to respond to Court Orders,

15

1    which is not to ignore them, you could move for
2    reconsideration, for example, and we're talking about something
3    that's urgent and of the greatest human importance.
4           So, I'm prepared, based on what I know, to sign the
5    order I drafted, and, as I said, Mr. Frazier, and I understand
6    the Department of Justice's desire to protect its prerogatives,
7    but there's a proper way to do that, and that's why I wrote it
8    this way.  I mean, if you want to let them come back here and
9    say you're doing it in the exercise of the Bureau of Prison's
10   discretion, that's okay, I'm sure, with the defendants, but
11   they want to come back.  If you want to say that even when the
12   government has assented the Court has no authority, then you'll
13   have to file the affidavit and memorandum by 9:00 tomorrow
14   morning, seeking to show cause why Mr. Lappin shouldn't be held
15   in civil contempt, and I'll have a hearing at 2:00 tomorrow
16   afternoon.  Mr. Frazier, is there anything further you'd like
17   to say at this point?
18          MR. FRAZIER:  No, your Honor.  I have nothing further
19   to add at this point.
20          THE COURT:  All right.  But, you know, I wish I had
21   more time so this could be dealt with more deliberately.  I
22   didn't know I was going to drop everything about two hours ago
23   and focus on this.  But I've got to go into my sentencing.  You
24   may want to talk to Ms. West.  I see her supervisor, I think
25   James Farmer's in the courtroom, which is welcome.  Perhaps you

16

1   ought to talk him about how you want to respond under the

2   circumstances.  There was no request or perceived requirement

3   by Judge Gorton that the defendants be escorted, and I don't

4   know whether they have the means to pay for somebody to escort

5   them, but you all can talk a bit about that.

6          But let me read the order that I'm signing, because

7   it's the order I think I'm compelled to enter under the

8   circumstances.  It says, "After an emergency hearing on January

9   3, 2008, it is hereby ORDERED that:  1.  The Director of the

10  Bureau of Prisons, ("BOP"), Harley Lappin, shall, by January 4,

11  2008, at 9:00 a.m., file an affidavit stating whether or not he

12  will, as an exercise of his direction under 18 U.S.C. § 3622,

13  authorize the immediate release of the defendants in this case

14  on the conditions established by Judge Nathaniel Gorton in his

15  December 28, 2007 Order or on substantially similar conditions.

16  2, if Mr. Lappin is not willing to do so, he shall, by January

17  4, 2008, at 9:00 a.m., file an affidavit and memorandum seeking

18  to show cause why he should not be held in civil contempt for

19  failing to obey Judge Gorton's December 28, 2007 order.  3.  If

20  necessary, a hearing to determine whether Mr. Lappin, as the

21  Director of the BOP, should be held in civil contempt shall be

22  held on January 4, 2007, at 2:00 p.m.  4, If the defendants'

23  request that Mr. Lappin be held in civil contempt becomes moot

24  because their mother has died before the BOP complied with

25  Judge Gorton's December 28, 2007 order, the issue of possible

1    and didn't hear me.  I had ordered that you stay here to get
2    copies of the order, which I'll have Mr. O'Leary distribute
3    momentarily, and, Ms. Pellegrini, one is to be e-mailed or
4    faxed to Mr. Frazier immediately.

5                MS. PELLEGRINI:  Yes, your Honor.

6                THE COURT:  Two, I'm ordering the government to order
7    the transcript of this hearing on an expedited basis; it's
8    conceivable the First Circuit will need this this weekend.
9    Third, by this time tomorrow it may be more apparent why I have
10   this so clearly in mind.  While, as a practical matter, I
11   wanted Mr. Frazier on the phone, the Attorney General
12   represents the Department of Justice in court, and the statute
13   delegates the authority to represent the United States in court
14   in Massachusetts to the United States Attorney.  The United
15   States Attorney agreed to Judge Gorton's Order.  The government
16   has an obligation to speak with one clear, candid and
17   consistent voice, and I appreciate Ms. West pointing out, since
18   I didn't get the original motion a week ago, that she, on
19   behalf of the United States, had assented to the entry of Judge
20   Gorton's Order, but if we're litigating this tomorrow, I expect
21   to be hearing from the United States Attorney on behalf of the
22   Department of Justice and the United States, and if the
23   position is different on Friday, January 4th than it was on
24   Friday, December 28, when the defendants, the moving parties
25   here, could have taken a timely appeal, I'm going to be

1    searching in my inquiry as to why, and I'm going to be

2    disappointed and disturbed at having another occasion in this

3    District where the Department of Justice has not been

4    consistent in its positions.  Now you've got the order.  I hope

5    it won't be necessary to have further litigation tomorrow, but,

6    as always, I wanted to be as clear with you as I possibly can

7    be about my state of mind, and by this time tomorrow, you may

8    have some context to the last of those observations.  Okay.

9    Court is in recess, counsel in this case are excused, and we'll

10   shortly proceed to the next case.

11            MS. BRENNER MEIXEL:  Thank you, your Honor.

12            MS. ANGELINI:  Thank you, your Honor.

13            THE CLERK:  All rise for the Honorable Court.

14            (Hearing concluded at 3:20 p.m.)

15

16                  C E R T I F I C A T E

17            I, Brenda K. Hancock, RMR, CRR and Official Reporter

18   of the United States District Court, do hereby certify that the

19   foregoing transcript, from Page 1 to Page 19, constitutes, to

20   the best of my skill and ability, a true and accurate

21   transcription of my stenotype notes taken in the matter of

22   United States of America v. Quraishi, et al, 1:04-cr-10345-NMG.

23                  /s/ Brenda K. Hancock

24                  Brenda K. Hancock, RMR, CRR

25                  Official Court Reporter